MORRISON & FOERSTER LLP
James E. Hough (JH 1066)
David S. Brown (DB 5276)
1290 Avenue of the Americas
New York, NY 10104-0050
212-468-8000
Attorneys for Plaintiff
Media Development Equity Fund LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



07 CV 3624

------------------------------------------------------------x
Media Development Equity Fund, a New York  :   COMPLAINT FOR
Limited Liability Company,                 :   DECLARATORY JUDGMENT
                                           :
                 Plaintiff,                :
                                           :   2007 Civ.
         -against-                         :
                                           :
Novi List d.d., a joint stock company organized under :
the laws of the Republic of Croatia        :
                                           :
                 Defendant.                :
------------------------------------------------------------x

Plaintiff Media Development Equity Fund LLC ("MDEF"), by and through its undersigned counsel, for its complaint against Novi List d.d., ("Novi List") alleges, on knowledge with respect to its own acts, and on information and belief with respect to all other matters:

### INTRODUCTION

1.      Through this action, MDEF seeks to enforce contractual rights that are integral to the mission it shares with its owner, Media Development Loan Fund ("MDLF"), a charitable New York corporation dedicated to supporting independent news media in developing democracies, including the states of the former Yugoslavia and the former Soviet Union, as well as in Africa, Asia and Latin America.

2. MDLF is an important source of funds for besieged news media in transitioning democracies, and MDLF also provides its clients with support, guidance and oversight needed to ensure that their affairs are conducted in conformity with the general practice of independent, non-partisan, pluralistic, tolerant and responsible media, and in accordance with the norms of good corporate governance. The contractual rights at issue in this case are essential to MDLF's effort to provide this critical oversight to defendant Novi List.

3. Consistent with IRS guidelines, MDLF's focus is making Program Related Investments ("PRIs") in the forms of loans, finance leases and equity investments in clients. (*See* 26 C.F.R. 53.4944-3.) These investments are intended to further MDLF's charitable mission. However, when income and/or capital appreciation is realized from PRIs, the additional funds are used to further MDLF's charitable mission.

4. In 1999, MDLF (and MDEF) entered into a series of agreements designed to safeguard the economic stability and editorial independence of defendant Novi List, the only independent newspaper in Croatia at the time. The parties agreed, among other things, that in exchange for vital financial assistance, Novi List would adhere to certain governance standards to ensure independence, transparency and accountability.

5. The financial package also included a loan to a related entity, Rijecki List, which was formed by Novi List's management and top journalists for the express purpose of consolidating and stabilizing the ownership of Novi List so that it would not be vulnerable to a takeover by parties which might interfere with its editorial independence. Rijecki List now owns just over 50% of Novi List's shares, largely acquired with funds provided by MDLF.

6. Both Rijecki List and Novi List agreed to specific obligations to ensure that MDEF would have an on-going role in management and oversight of Novi List, including,

2

significantly, certain unqualified shareholder rights for MDEF to guarantee this participation. These rights include the right to receive a Proxy (the "Proxy") from Rijecki List that permits MDEF to have equal voting rights with Rijecki List at any meeting of Novi List shareholders.

7. The financial assistance provided to Novi List included an equity investment, which resulted in MDEF's ownership of approximately 30% of Novi List's shares. MDEF granted Novi List an option to repurchase a portion of these shares, at below market prices, under specific circumstances set forth in an Option Agreement between MDEF and Novi List dated October 28, 1999 (the "Option Agreement") (Exh. A). The Option Agreement was designed to incentivize Novi List and its controlling shareholder Rijecki List to abide by their contractual obligations because, under the express terms of the Option Agreement, any breach of the related agreements automatically terminates the Option Agreement.

8. Novi List and Rijecki List have engaged in multiple breaches, including: (i) removal of an experienced and successful CEO who was respected by the journalists at Novi List; (ii) installation of a successor CEO who has no relevant experience and lacks the support of Novi Lists' journalists; (iii) giving a "no show" job to Zdenko Mance, a former Novi List employee who now chairs Novi List's Supervisory Board (which is the Croatian equivalent to the Board of Directors of a U.S corporation), and controls Rijecki List; and, ultimately but most significantly, (iv) failure to provide MDEF with the Proxy in connection with a critical shareholder meeting scheduled for May 11, 2007.

9. Failure to provide MDEF the Proxy is the most recent, and arguably the most egregious, violation. The Proxy is a key element of the oversight granted to MDLF because it assures MDEF equal voting rights with Rijecki List at any meeting of Novi List's shareholders. Indeed, MDLF would not have invested in Novi list or funded Rijecki List's purchase of Novi

List shares if Rijecki List did not agree to ensure MDEF would always enjoy equal voting rights at Novi List shareholder meetings.

10. By this action, MDEF seeks a declaration that the Option Agreement has been automatically terminated due to contractual breaches by Novi List and Rijecki List. The declaration sought will ensure that MDEF is not further victimized by the wrongful actions of Novi List and Rijecki List, and that the wrongdoers will not obtain an undeserved windfall, which would result if Novi List were permitted to purchase MDEF's shares at below market prices.

## JURISDICTION

11. This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. This Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1332 (diversity of citizenship).

12. An actual and justiciable controversy exists between MDEF and Novi List regarding whether the Option Agreement has been properly terminated due to recent conduct by Novi List's management. MDEF sent a notice of termination of the Option Agreement to Novi List on January 29, 2007, but Novi List disputes that the Option Agreement has been terminated. MDEF is informed and believes that Novi List intends to exercise its perceived rights under the Option Agreement within 12 months.

13. The amount in controversy exceeds $75,000.00.

## VENUE

14. Venue is proper in this judicial district under Title 28 of the United States Code, §§ 1391(a)(3).

## PARTIES AND INTERESTED NON-PARTIES

15.     Plaintiff MDEF is a New York LLC with its principal place of business at 37 West 20th Street, Suite 801, New York, NY 10011. It is wholly owned by MDLF, and is a vehicle used by MDLF to further its charitable mission.

16.     Non-party MDLF is a public charity providing low-cost financing to independent news media in emerging democracies. MDLF seeks to secure a strong and independent press in countries with a history of media oppression, and has provided loans and other financial assistance in Africa, Asia, Latin America, the former Soviet Union, and Eastern Europe. Through low-cost capital, in-depth training and long-term advice and support, MDLF helps news outlets committed to responsible journalism strengthen their operations and become commercially sustainable. MDLF has been funded by major U.S. private foundations, including the John D. and Catherine T. MacArthur Foundation, the Open Society Institute, and Calvert Social Investment Foundation, and major European private foundations, including OXFAM-Novib and the Foundation for Democracy and Media. Public agencies also fund MDLF's activities, including the U.S. Department of State, Bureau of Democracy, Human Rights and Labor, United Nations Development Program, and the development agencies of the Netherlands, Sweden and Switzerland. MDLF is a New York-registered 501(c)(3) non-profit corporation with its principal place of business at 37 West 20th Street, Suite 801, New York, NY 10011.

17.     Defendant Novi List d.d. ("Novi List") is the largest independent newspaper in Croatia, headquartered in Rijeka, the third largest city in Croatia. Novi List is a joint stock company organized under the laws of the Republic of Croatia, and it has irrevocably consented

to personal jurisdiction in this Court. *See* Section 8.2.1 of the Option Agreement. Novi List's principal place of business is at Zvonimirova 20a Street, Rijeka, Croatia, MBS 010000340.

18. Non-Party Rijecki List d.o.o. ("Rijecki List") is a limited liability company organized under the laws of the Republic of Croatia. Rijecki List was formed as part of the financial package described below as a vehicle for consolidating and stabilizing the ownership of Novi List. Rijecki List owns approximately 50.002% of the stock of Novi List.

### THE FINANCIAL PACKAGE PROVIDED TO NOVI LIST

19. Like all businesses, media companies in emerging democracies need capital to grow. Yet in many countries, credit often comes at the price of compromising editorial independence. MDLF financing is often the only way a media company can access capital while preserving its autonomy. MDLF provides resources that enable its clients to make the most of their dedication to objectivity and accuracy, building solid businesses around the core values of independent journalism.

20. In 1999, Croatia was ruled by Franjo Tudjman, the former communist turned fierce nationalist, leader of the Croatian nationalist party HDZ. Unlike Serbia's President Slobodan Milosevic, Tudjman's ethnic cleansing campaigns in Bosnia and in Croatia and his brand of nationalism were not met with widespread Western condemnation. But in reality, his domestic policy included closing down newspapers and television news shows that offended him, and manipulation of the electoral process to extend his rule. While he was in power, a small oligarchy, including members of his own family, amassed a high concentration of political and economic power. Tudjman was the commander-in-chief of the Croatian Army that is responsible for numerous war crimes and other violations of humanitarian laws both in Croatia

and Bosnia. A number of his generals and high ranking officers are sought by or awaiting trials at the War Crimes Tribunal for the Former Yugoslavia in the Hague.

21. In this atmosphere, in 1999 Novi List approached MDLF for financial assistance. At the time, Novi List faced critical financial problems and considerable pressure from Tudjman and his allies.

22. Novi List's diverse ownership structure made it particularly vulnerable to takeover. After Croatia declared independence from Yugoslavia in 1991, Novi List (as well as other former state-owned enterprises) was privatized through distribution of shares to all company employees. As a result, Novi List had close to 300 small shareholders. A shareholders agreement regarding Novi List's governance was set to expire in 2000, at which point the Novi List shares could be publicly sold. Tudjman and his allies threatened to take advantage of the situation by conducting a takeover of the company. To avoid that possibility, Novi List requested MDLF's assistance to create Rijecki List, and fund its acquisition of Novi List shares that might otherwise have been sold to Tudjman's allies, other political interests in Croatia, or multi-national media corporations that had entered the market.

23. Novi List was also hampered by aging and outmoded equipment and required considerable capital to enable it to purchase a modern color printing press. Ordinary banks approached by Novi List for financing the purchase of a printing press typically required Novi List's shares as security for the loan, and Novi List feared, rightly, that collateralizing the shares could compromise editorial independence.

24. Despite these financial and political pressures, as the only independent newspaper in Croatia, Novi List was extremely popular, even in cities like Zagreb, the capital of Croatia,

where readers bought Novi List for its non-partisan news coverage, even though its coverage of local events (like movie schedules and times) was limited to the city of Rijeka.

25. MDLF worked closely with Zdenko Mance, then CEO and Editor-in-Chief of Novi List, to resolve these issues. On the eve of these agreements, Mance declared that "goals of the project that we are about to venture on is in the best interest of the shareholder: securing stable operation and profitability of the company, professional and social security of its employees, and additional funding for development of Novi List. Small shareholders are aware that, if they were to deny support for the project, Novi List could have the destiny of many companies — anarchic privatization and hostile acquisition of the company. In the case of Novi List, due to political reasons, this destiny would be even more likely." (Press release announcing the creation of Rijecki List, dated September 22, 1999) (Exh. B.)

26. The complex financial package that emerged from this process involved the following elements:

    a. A Memorandum of Understanding dated October 28, 1999 (the "MoU") (Exh. C.) outlined the various agreements that were to be executed, and emphasized that the different agreements were all part of an overall comprehensive plan to address the financial needs of Novi List.

    b. Novi List borrowed funds from an Austrian bank to fund the purchase of a modern printing press, and that loan was guaranteed by Soros Economic Development Fund ("SEDF"), another U.S. charity. MDLF guaranteed to reimburse SEDF for any payments it made due to its status as guarantor of the loan. This loan has been repaid.

    c. MDEF was formed with capital invested by MDLF. Novi List issued 18,190 new shares, bringing the total number of issued Novi List shares to 60,000. MDEF purchased all of the newly issued shares pursuant to a Share Subscription Agreement dated October 28, 1999 (the "Share Subscription Agreement") (Exh. D.).

    d. Rijecki List was formed for the limited purpose of purchasing Novi List shares, both from the Novi List treasury, and from small shareholders. MDLF loaned Rijecki List money to fund those purchases, and the parties

       to that loan entered into a Credit Agreement dated October 28, 1999 (the "Credit Agreement") (Exh. E.). Rijecki List's effort to purchase shares was supported by Novi List's management and top journalists, and Rijecki List succeeded, resulting in its (then) ownership of 54% of Novi List's issued and outstanding shares.

  e.  Rijecki List (with 54% of Novi List's stock) and MDEF (with 30% of Novi List's stock) entered into a Shareholders' Agreement dated October 28, 1999 (the "Shareholders' Agreement") (Exh. F) to ensure the company would be managed in accordance with the highest standards of good governance as appropriate for a newspaper dedicated to core values of independent journalism. The Shareholders' Agreement requires Rijecki List to provide MDEF a Proxy to ensure MDEF would always have equal voting rights at any Novi List shareholder meeting. (*See* Shareholders' Agreement, Section 5.4.) These shareholder rights, above all, guaranteed MDEF an equal voice in determining Novi List's direction and ensuring that it continued to serve the interests of independent media and not those of a narrow faction of stakeholders.

  f.  The Option Agreement between MDEF and Novi List — designed to further incentivize Novi List and Rijecki List to adhere to good governance standards — provided Novi List with the right to purchase two-thirds of MDEF's shares (the "Option Shares") at below market prices. But this right was expressly contingent on Novi List's and Rijecki List's, respectively, performing certain conditions as set forth in the Share Subscription, Option and Shareholders' Agreements.

27.    Significantly, each of the contracts described above sets forth certain affirmative covenants (the "Governance Covenants") that Novi List or Rijecki List, respectively, were obligated to abide by and which were designed to ensure sound corporate governance and MDEF's continued involvement in Novi List's affairs. (*See, e.g.*, Option Agreement, Article V; Shareholders' Agreement, Section 5; Credit Agreement, Article V; and Share Subscription Agreement, Section 7.)

28.    The Option Agreement expressly provided that a breach of any of the aforementioned agreements would result in automatic termination of the Option Agreement. (Option Agreement, Section 7.1.3.) The Option Agreement further provided that, with regard to

breaches of the Credit Agreement, notice of default by MDEF to Rijecki List "shall constitute sufficient evidence of any such breach." (Option Agreement, Section 7.2.)

29. Through these carefully-structured interlocking agreements, MDEF was able to provide Novi List with much-needed equity to enable it to maintain and protect its journalistic independence, while also allowing MDEF to play a significant and continuing role in Novi List's management.

**BREACHES RESULTING IN TERMINATION OF THE OPTION AGREEMENT**

30. Initially, the financial package offered by MDLF and MDEF was a success. Novi List repaid the funds borrowed to purchase the printing press, and Rijecki List was on schedule with its payment obligations until January 2007, when its debt was accelerated due to some of the breaches described herein.

31. Recently, however, Novi List's former CEO Mance has orchestrated a series of improper maneuvers designed to consolidate and maximize his influence over Novi List while marginalizing MDEF's role in Novi List's management. The motivation for these breaches is unclear. Rumors have circulated in Croatia that Mance has engaged in discussions to sell Novi List, and although no such discussions have been authorized by Novi List's Supervisory Board or MDEF, it is possible Mance may be engaged in an effort to sell Novi List. Whatever the motive, Mance has been the primary beneficiary of the improper conduct, and he would benefit even more if Novi List were permitted to purchase MDEF's shares at below market prices. The recent breaches include:

*Improper Termination of Novi List's CEO*
- At a meeting of Novi List's Supervisory Board meeting held on December 8, 2006, Zdenko Mance, President of Novi List's Supervisory Board and a representative of Rijecki List, made an unexpected and improper effort to terminate Zoran Borcic as the chief executive officer of the Company. This effort violated Rijecki List's obligation to consult with MDEF on all important matters relating to the business of

10

Novi List. (Shareholders' Agreement, Section 5.) Indeed, one day earlier, Mance assured MDEF representatives that he would continue close cooperation with MDEF, and he made no mention of his planned effort to remove Borcic as CEO at the next day's Supervisory Board meeting. At the Supervisory Board meeting, Novi List's counsel raised strong procedural objections to the proposed removal and opined that under Croatian law a CEO could only be terminated for specific and limited reasons. MDEF's representative on the Board requested an opinion by counsel as to whether any grounds for termination existed, and because Mance and the rest of the Board agreed to that suggestion, no action was taken on Borcic's removal at the December 8, 2006 meeting. A further meeting was held on December 21, 2006, and the Supervisory Board decided to obtain a legal opinion from an independent counsel before taking action on Mance's request to terminate Borcic.

- Mance's improper effort to remove Borcic was unexpected. Borcic was hand picked by Mance to be his successor as CEO of Novi List less than two years earlier. Mance was forced to vacate the CEO position due to health reasons, and, in accordance with the Shareholders' Agreement, sought and obtained MDEF's consent to Borcic's appointment as successor CEO. Borcic was a natural choice, since he had spent several years acting as Mance's deputy at Novi List, and was well known to, and respected by, Novi List's journalists.

- Novi List performed extremely well in 2006, Borcic's first full year as CEO. In fact, Novi List was the only major Croatian newspaper that did not suffer a decline in circulation during 2006.

- On January 5, 2007, without obtaining any opinion from independent counsel on whether Borcic's termination was permitted under Croatian law, Novi List's Supervisory Board voted 3 to 2 to terminate Borcic. MDEF's representative voted against termination. On January 27, 2007, Boric sued Novi List for terminating him, in violation of Croatian law, from his position as CEO. That suit is now pending in the Croatian courts.

*Appointment of Unqualified Successor CEO*

- At the January 5, 2007 meeting, the Supervisory Board of Novi List voted to appoint Franjo Butorac as successor CEO. Butorac is plainly not qualified for the job. He has never managed, nor even worked for, a newspaper, and he has no support among the journalists at Novi List. Prior to his appointment, he ran a small, academic book publisher. His primary qualification appears to be a willingness to follow instructions given by Mance.

- No supporting materials were provided to the Supervisory Board in support of his appointment, not even Butorac's resume or biographical information. Although Croatian law does not impose any particular requirements on this type of appointment process, it is common for a company of Novi List's size to explore several different candidates before undertaking an appointment of this level of importance.

*Improper Payments to Mance and Improper Mance Influence*

- For nearly two years following his resignation as CEO, Mance was paid by Novi List even though he was not performing any jobs or services for Novi List other than in

11

his role as a Supervisory Board Chair, for which he was separately compensated. Novi List also provided him with a company car during this period.

- Upon appointment of Butora as CEO, Mance arranged to be "hired" by Novi List as an "advisor" to Butorac. In this position, Mance earns more than the CEO himself.

- As a member of Novi List's Supervisory Board, Mance is not eligible, under Croatian law, to be a member of Novi List's Management Board. Mance's orchestration of the appointment of an unqualified candidate (Butorac) as CEO, followed by his own appointment as "advisor" to the CEO, appears to be an effort to evade these requirements of Croatian law. In effect, Mance has assumed the powers of a CEO while retaining his position as Chair of the Supervisory Board. Although perhaps technically permitted under Croatian law, this practice is not recommended by leading Croatian commentaries on corporate governance, and this arrangement gives the appearance of impropriety inconsistent with Novi List's obligation to "conduct its business (i) with due diligence and efficiency, (ii) in compliance with all applicable laws, regulations and orders of any governmental authority, (iii) in conformity with the general practice of independent, non-partisan, pluralistic, tolerant and responsible media; and (iv) in accordance with sound financial and accounting practices." (Option Agreement, Section 5.1.1)

### *Notices of Default*

- Following the CEO termination and appointment, on January 29, 2007, MDLF sent a notice of default to Rijecki List (Default Notice, Exh. G) pursuant to the terms of the Credit Agreement. Also on January 29, 2007, MDEF sent a notice of termination (Termination Notice, Exh. H) to Novi List, informing Novi List that the Option Agreement had been terminated. Ten days later, on February 12, Rijecki List paid the outstanding amounts due under the Credit Agreement as required by the Default Notice.

- The parties have agreed that MDEF's Default Notice is sufficient evidence of a breach of the Credit Agreement by Rijecki List to effect an automatic termination of the Option Agreement. (Option Agreement, Section 7.2.)

### *Failure to Deliver Proxy*

- To prevent further harm to Novi List, MDEF and other small shareholders called for an extraordinary shareholders meeting on May 11, 2007, where Novi List shareholders are scheduled to vote on several critical issues facing Novi List: evaluation of the work of the Supervisory Board; vote of no-confidence regarding the CEO; and appointment of additional members to the Supervisory Board.

- On April 12, 2007, MDEF wrote to Rijecki List, pursuant to the express terms of the Shareholders' Agreement, requesting a power of attorney granting MDEF a proxy to vote the number of shares required to achieve parity with the number of votes held by Rijecki List. (Shareholders' Agreement, Section 5.4; H. Mandel Ltr. to Rijecki List, dated April 12, 2007) (Exh. I.) MDEF informed Rijecki List that the power of attorney needed to be delivered to MDEF no later than April 19 and a failure to make such a delivery would constitute a breach of the Shareholders' Agreement.

- On April 19, 2007, counsel for Rijecki List — the same attorney that negotiated the Shareholders' Agreement on Rijecki List's behalf — wrote to MDEF stating that the proxy contemplated by the Shareholders' Agreement was not permitted by Croatian law because such a proxy would entail an impermissible separation of voting rights from the bundle rights associated with share ownership. Rijecki List refused to deliver the proxy based on its counsel's opinion. (T. Dolicki Ltr. to H. Mandel, dated April 19, 2007) (Exh. J.)

- On April 23, 2007, Croatian counsel for MDEF wrote to counsel for Rijecki List disputing its analysis of the validity of the proxy and again requesting that Rijecki List issue a power of attorney as required by the Shareholders' Agreement. (D. Grujic Ltr. to T. Dolicki, dated April 23, 2007) (Exh. K.)

- On April 26, 2007, MDEF met with Rijecki List and its outside counsel and requested the power of attorney. Rijecki List, again, refused to provide the authorization but on new and curious grounds: that an unavoidable conflict would arise if the shareholder and their power of attorney voted differently at the same meeting. This argument ignores the obvious fact that a proxy would be pointless if the parties intended to vote their shares identically. On May 3, 2007, MDEF sent Rijecki List a letter memorializing the actions occurring at this meeting. (H. Mandel Ltr. to Z. Mance, dated May 3, 2007.) (Exh. L.)

- Without this proxy, MDEF will lose the right provided in the Shareholders' Agreement to have equal voting power with Rijecki List at any meeting of Novi List's shareholders, and, as a minority shareholder, MDEF will be powerless to prevent Mance from further exploiting Novi List for personal gain.

- Despite MDEF's request, and the clear obligation set forth in the Shareholders' Agreement to provide MDLF a proxy, Rijecki List failed to provide the requested power of attorney.

- Rijecki List's actions are in bad faith. By failing to provide the power of attorney as required by the Shareholders' Agreement on the basis of dubious legal positions, Rijecki List is acting in bad faith. Alternatively, if the proxy contemplated by the Shareholders' Agreement is indeed invalid under Croatian law, Rijecki List acted in bad faith by drafting an unenforceable proxy provision and by inducing MDEF to enter into an agreement with an unenforceable proxy provision.

32. These breaches deprive MDEF of important rights, and provide multiple grounds for concluding that the Option Agreement is terminated.

### COUNT ONE
### (Declaratory Judgment – Failure to Deliver Proxy)

33. Paragraphs 1 through 32 of MDEF's complaint for declaratory judgment are realleged and incorporated by reference as if fully set forth herein.

13

34. Under the express terms of Section 5.4 of the Shareholders' Agreement, Rijecki List is required to provide MDEF a proxy (the "Proxy") to vote a sufficient number of Rijecki List shares as are necessary to achieve parity in the number of votes held by Rijecki List and MDEF.

35. On April 12, 2007, MDEF wrote to Rijecki list, pursuant to the express terms of the Shareholders' Agreement, requesting a power of attorney granting MDEF the Proxy.

36. Rijecki List failed to provide the requested power of attorney. Failure to provide the Proxy is a breach of the Shareholders' Agreement.

37. The Option Agreement expressly provides that a breach of the Shareholders' Agreement results in an automatic termination of the Option Agreement. (Option Agreement, Section 7.1.3.)

38. Accordingly, MDEF respectfully requests that the Court enter judgment declaring that the Option Agreement is terminated, and that MDEF is thereby relieved of any obligation to sell Novi List shares at below market prices and any other limitations on its right to sell Novi List shares contained therein.

## COUNT TWO
### (Declaratory Judgment – Notice of Default Under Credit Agreement)

39. Paragraphs 1 through 32 of MDEF's complaint for declaratory judgment are realleged and incorporated by reference as if fully set forth herein.

40. On January 29, 2007, MDLF sent a notice of default under the Credit Agreement to Rijecki List. (Option Agreement, Section 7.2)

41. The Option Agreement expressly provides that a breach of the Credit Agreement results in an automatic termination of the Option Agreement, and that a notice of default sent by

MDLF is sufficient evidence of any such breach to effect an automatic termination of the Option Agreement. (Option Agreement, Section 7.1.3 and 7.2.)

42. Accordingly, MDEF respectfully requests that the Court enter judgment declaring that the Option Agreement is terminated, and that MDEF is thereby relieved of any obligation to sell Novi List shares at below market prices.

## COUNT THREE
### (Declaratory Judgment – Breach of Governance Covenants)

43. Paragraphs 1 through 32 of MDEF's complaint for declaratory judgment are realleged and incorporated by reference as if fully set forth herein.

44. The Credit, Option and Shareholders' Agreements each contain express affirmative covenants (the "Governance Covenants") that obligate Novi List and Rijecki List, respectively, to abide by and exercise sound corporate governance principles and to ensure MDEF's continued involvement in Novi List's affairs. (*See, e.g.*, Option Agreement, Article V; Shareholders' Agreement, Section 5; Credit Agreement, Article V; and Share Subscription Agreement, Section 7.)

45. The improper termination of Novi List's CEO, appointment of an unqualified successor CEO, improper payments to Mance and Mance's continued improper influence, among other abuses, violate the Governance Covenants.

46. Accordingly, MDEF respectfully requests that the Court enter judgment declaring that the Option Agreement is terminated, and that MDEF is thereby relieved of any obligation to sell Novi List shares at below market prices.

## PRAYER FOR RELIEF

WHEREFORE, MDEF respectfully requests that this Court enter judgment against defendant Novi List as follows:

(a) On Count One: declaring that the Option Agreement is terminated;

(b) On Count Two: declaring that the Option Agreement is terminated;

(c) On Count Three: declaring that the Option Agreement is terminated;

(d) awarding MDEF the costs of this action; and

(e) granting such other and further relief as this Court deems just and proper.

Dated: New York, NY  
       May 7, 2007

MORRISON & FOERSTER LLP

By: _____  
James E. Hough (JH 1066)  
David S. Brown (DB 5276)

Attorneys for Plaintiff  
Media Development Equity Fund LLC  
1290 Avenue of the Americas  
New York, NY 10104-0050  
212.468.8000

ny-747346