Rijeka, Croatia                                                    October 28, 1999

## SHARES SUBSCRIPTION AGREEMENT

( *TRANSLATION* )

This agreement (the "Agreement") is made by and between the following parties (the "Parties"):

**Novi List, d.d.,** a joint stock company formed under Croatian law, having its address at Zvonimirova 20a, Rijeka, Croatia, as represented by Zdenko Mance, Director (the "Company"); and

**Media Development Equity Fund, LLC,** a limited liability company duly registered under the laws of the State of New York, USA, having its address at 45 West 21st Street, New York, NY 10010, USA, as represented by Kenneth Anderson, Chairman (the "Equity Fund").

WHEREAS, the Company is purchasing a new printing press and upgrading its printing facility;

WHEREAS, in order to fund the upgrading of the Company's printing facility and to facilitate the consolidation of ownership in the Company, the Company wishes to issue new shares for purchase by the Equity Fund;

WHEREAS, the Equity Fund wishes to provide the Company financial assistance in achieving the goals described above;

WHEREAS, to effectuate the above purposes, the Company, the Equity Fund, Media Development Loan Fund ("MDLF") and Riječki list, d.o.o. ("Riječki list"), have entered into a Memorandum of Understanding dated October 28, 1999, a copy of which is attached hereto as Exhibit A (the "MoU"), and, in accordance therewith, a series of inter-locking agreements, namely this Agreement, an Option Agreement between the Equity Fund and Novi List, a Credit Agreement between MDLF and Riječki list, and a Shareholders' Agreement between Riječki list and the Equity Fund, all dated October 28, 1999 (collectively, including the MoU, the "Agreements");

NOW, THEREFORE, the Parties hereby agree as follows:

1.    <u>Purchase of New Shares</u>.    Subject to the terms and conditions of this Agreement and specifically upon the satisfaction of the conditions set forth in Section 2, the Equity Fund agrees to purchase and the Company agrees to issue and sell to the Equity Fund eighteen thousand one hundred ninety (18,190) new shares of common stock of the Company to be issued by the Company and to be approved by the General Meeting of Shareholders on December 15, 1999, a par value of which shall be three hundred (300) Croatian Kuna per share (the "New Shares"), which shall represent thirty percent (30%) of all outstanding voting shares of the Company, for an aggregate purchase price of one million eight hundred nineteen thousand (1,819,000) Deutsche Marks to be satisfied by payment by the Equity Fund to the Company's bank account.

2.    <u>Conditions Precedent to Closing</u>.  The obligation of the Equity Fund to subscribe the New Shares shall be subject to the fulfillment of the following conditions precedent on or prior to the Closing, it being understood that such conditions may be waived in writing in whole or in part by the Equity Fund at any time:

2.1.    The New Shares have been duly and validly authorized, issued and registered, and all other legal requirements in connection therewith have been duly satisfied;

2.2.    The sale of the New Shares to the Equity Fund by the Company shall have been duly authorized by all corporate action under its Charter;

2.3.    The representations and warranties specified in Section 6 hereof shall each be true and correct in all material respects as of the date of this Agreement and the Closing;

2.4.    The Charter of the Company shall be in full force and effect and in form and substance satisfactory to the Equity Fund, and the Company shall have obtained and/or maintained in force or renewed all governmental, corporate, shareholders' and other necessary licenses, approvals, consents, registrations or filings relating to: (i) the purchase of the New Shares by the Equity Fund, (ii) the carrying on of the business of the Company as it is presently carried on, (iii) the due execution and delivery of, and performance under, this Agreement, and (iv) the ability of the Company to remit to the Equity Fund, in convertible currency, all monies that are or may be payable in respect of the Equity Fund's New Shares, such as dividends, distributions in the event of the Company's liquidation, and proceeds from the sale of the Equity Fund's shares (including the amounts originally invested and any gains or distributions thereon);

2.5.    All the Agreements shall have been duly executed and none of the Agreements has terminated for any reason other than performance in full of any and all obligations by the parties thereto;

2.6.    All the conditions precedent set forth in the Agreements shall have

occurred;

      2.7.    The government or governmental authority has not taken any action for the dissolution or disestablishment of the Company or any action which would prevent the Company or its officers from carrying on its business or operations or substantial part thereof, nor any proceedings have been commenced against or by the Company seeking to declare the Company bankrupt or insolvent, or for the reorganization, administration, relief or liquidation of the Company under any applicable law, regulation, or requirement; and

      2.8.    The management of the Company has not been replaced or new management appointed without prior written consent of the Equity Fund.

      3.    Closing. The Parties agree that, following the execution of this Agreement by the Parties and satisfaction of the Conditions Precedent, the Company shall transfer the New Shares to the Equity Fund. The New Shares shall be delivered free from any security interests, options, claims or other third party rights or encumbrances, including rights of preemption, of any nature whatsoever, together with all rights attached to them. The Company shall add the Equity Fund to the register of its shareholders, and deliver to the Equity Fund an excerpt from the register stating that the Equity Fund holds a valid title to the New Shares. If the Closing has not taken place by December 31, 1999, the Equity Fund shall have the right to terminate this Agreement.

      4.    Payment. The payment for the New Shares shall be effectuated by a single wire transfer to the Company's bank account within ten (10) days after the completion of all steps identified in Section 3 hereof.

      5.    Redemption of New Shares at the Option of the Equity Fund.

      5.1.    As long as the Equity Fund owns any New Shares and at any time after the occurrence of a Trigger Event as defined in Section 5.2 hereof, the Equity Fund at its option may cause that the Company redeem all of the New Shares held by the Equity Fund by the provision of notice to the Company (the "Redemption Notice"). The redemption price shall equal the purchase price increased by 15% per annum and shall be payable in US Dollars. The Company shall, within thirty (30) days of its receipt of the Redemption Notice, pay to the Equity Fund the redemption purchase price for the New Shares referred to in such notice. The Company agrees that it will unconditionally redeem the New Shares upon the exercise of the Equity Fund's option under the terms of this Section.

      5.2. The Equity Fund shall be entitled to exercise its right pursuant to Section 5.1 at any time after the occurrence of one or more of the following events (the "Trigger Event"):

5.2.1. this Agreement is terminated, amended, modified or revoked, without the express prior written consent of the Equity Fund;

5.2.2. the Company fails to perform any of its obligations, or is in breach of any representation and warranty that it has made, under this Agreement or under the MoU;

5.2.3. if at any time, any government or governmental authority condemns, nationalizes, seizes or otherwise expropriates all or any substantial part of the property or other assets of the Company or of its share capital, or assumes custody or control of such property or other assets or the business or operations of the Company or of its share capital, or acquires majority ownership of the Company, or takes any action for the dissolution or disestablishment of the Company or any action which would prevent the Company or its officers from carrying on its business or operations or a substantial part thereof;

5.2.4. if any of the Agreements has terminated for any reason other than performance in full of any and all obligations by the parties thereto;

5.2.5. if any provision of any of the Agreements has been breached by any party thereto;

5.2.6. if the Company has defaulted under the Foreign Exchange Loan Facility and Guarantee Agreement dated August 19, 1999, between the Company, Raiffeisenbank Austria d.d., Soros Economic Development Fund, Karlovački List d.o.o. and Adamić d.o.o.; or

5.2.7. proceedings are commenced against or by the Company seeking to adjudicate the Company bankrupt or insolvent, or for the reorganization, administration, relief or liquidation of the Company under any applicable law, regulation or requirement.

5.3.    The exercise by the Equity Fund of the right under Section 5.1 shall not preclude the Equity Fund from exercising any of its other rights under this Agreement and shall not limit any other provision of this Agreement.

6.    Representations and Warranties of the Company.

6.1. The Company represents and warrants to the Equity Fund as of the date of this Agreement:

6.1.1. There are no options or other agreements outstanding which call for the transfer of the New Shares to any person or accord any

4

person the right to call for or require the transfer of the New Shares. There are no options or other agreements outstanding which accord any person the right to call for or require the issue or the creation of any pledge, lien or other security or encumbrance over any of the New Shares.

6.1.2. There is no power of attorney issued by the Company to any person authorizing that person to vote the New Shares on behalf of the Company.

6.1.3. This Agreement has been duly and validly executed and delivered by the Company. This Agreement constitutes the valid and binding obligation of the Company, enforceable in accordance with its terms.

6.1.4. The Financial Statements of the Company heretofore delivered constitute its Financial Statements and present fairly its financial position, assets and liabilities as of the date set forth therein. Since the date of the most recent financial statements, there has been no material adverse change in the financial or other conditions of the Company.

6.1.5. There is no fact which the Company has not disclosed in writing to the Equity Fund which materially adversely affects or, as far as the Company can now foresee, will materially adversely affect the properties, affairs, prospects, or condition (financial or otherwise) of the Company.

6.1.6. There is no action, suit or proceeding pending against, or to the knowledge of the Company threatened against or affecting, the Company before any court or arbitrator or any governmental body, agency or official in which there is a reasonable possibility of an adverse decision which could materially adversely affect the business, financial position or results of operations of the Company or which in any manner draws into question the validity of this Agreement.

6.1.7. All tax returns and other reports required by applicable law to be filed by the company have been filed, and all taxes, assessments and other governmental charges imposed upon the Company or any property of the Company and which have become due and payable on or prior to the date hereof have been paid, except to the extent contested in good faith by proper proceedings which stay the imposition of any penalty, fine or lien resulting from the non-payment thereof and with respect to which adequate reserves have been set aside for the payment thereof.

6.1.8. The Company has good and marketable title to all of its properties and assets, free and clear of all liens, security interests and other

5

charges and encumbrances and other types of preferential arrangements.

6.2. The Equity Fund declares and the Company acknowledges that the Equity Fund relies solely on the matters represented and warranted in Section 6.1 and has entered into this Agreement on the basis of such representations and warranties.

7.    <u>Affirmative Covenants</u>.  As long as the Equity Fund will remain a shareholder of the Company and commencing from the date on which the Equity Fund becomes a shareholder, the Company shall, unless the Equity Fund shall otherwise agree:

7.1.    conduct its business (i) with due diligence and efficiency; (ii) in compliance with all applicable laws, regulations and orders of any governmental authority; (iii) in conformity with the general practice of independent, non-partisan, pluralistic, tolerant and responsible media; and (iv) in accordance with sound financial and accounting practices;

7.2.    obtain and maintain in force or, where appropriate, renew all governmental, corporate, shareholders' and other necessary licenses, approvals, consents, registrations and filings required for the purposes described in Section 2.4 hereof, and fully perform and observe all the conditions and restrictions contained in, or imposed on the Company by, such licenses, approvals or consents;

7.3.    make changes and improvements to its accounting department, accounting practices and accounting system to the Equity Fund's satisfaction;

7.4.    promptly inform the Equity Fund of (i) any proposed change in the nature or scope of the business or operations of the Company; and (ii) any event or condition, including, without limitation, any pending or threatened litigation, arbitration or administrative proceeding, which might have an adverse effect on the Company's business, operations or financial or other condition or the ability of the Company to perform any of its obligations under this Agreement;

7.5.    furnish promptly to the Equity Fund copies of all notices, reports and other communications of the Company to its shareholders and the minutes of all shareholders' meetings; without limiting the foregoing, the Company shall, on or before the date that it gives official notice to its shareholders of any shareholders' meeting, furnish the Equity Fund, by facsimile transmission, with notice of such meeting and the agenda thereof;

7.6.    maintain financial accounting records in accordance with accounting standards applicable in Croatia, and upon reasonable notice, at all reasonable times and as often as the Equity Fund may request, permit any authorized representative designated by the Equity Fund to visit the Company and inspect the financial accounting records of the Company relating to this Agreement, and the financial condition of the

company for the purpose of determining compliance with this Agreement, and permit any authorized representative designated by the Equity Fund to discuss the affairs, finances and condition of the Company with the Company's authorized financial officer or representative as the Equity Fund shall deem appropriate;

7.7.    submit to the Equity Fund the following reports, accurate and complete:

7.7.1.    monthly financial statements within 25 days after the end of each month for as long as the Equity Fund remains a shareholder of the Company, in the form determined by the Equity Fund,

7.7.2.    annual financial statements of the Company audited and certified by an independent certified public accountant as fairly presenting the Company's financial position and results of its operation for such fiscal year, prepared in accordance with internationally accepted accounting standards, and

7.7.3.    such additional financial and other information as the Equity Fund may reasonably request from time to time.

8.    <u>Negative Covenants</u>.    As long as the Equity Fund will remain a shareholder of the Company, the Company shall not, unless the Equity Fund shall otherwise agree:

8.1.    issue any voting shares;

8.2.    enter into a transaction or a series of transactions in an amount in excess of DEM 500,000 other than transactions described in the Business Plan submitted to and approved by the Equity Fund on the date first above written (the "Business Plan");

8.3.    create or suffer to exist any debt, mortgage, pledge, lien, security interest or other charge or encumbrance, the value of which is DEM 500,000 or more, whether in one transaction or in a series of transactions, with respect to its assets;

8.4.    take any action which in any manner would be inconsistent with this Agreement, including but not limited to the making of changes, or permitting changes to be made, to the Company's Charter; provided that with respect to any proposed changes to the Charter, the decision by the Equity Fund as to whether or not to consent to such change shall not be unreasonably withheld;

8.5.    enter into any management contract or similar arrangement whereby its business or operations are managed by any other person;

7

8.6. make changes, or permit changes to be made, to the nature of its present business;

8.7. merge or consolidate with any person or entity, or sell, assign, lease or otherwise transfer or dispose of, whether in one transaction or in a series of related transactions, all or a substantial portion of its assets; or

8.8. change its capital, including any increase or decrease in its share capital, redenomination, or splits of shares, or any action which might result in the dilution of the value of the New Shares.

9. Covenants Related to the Program-Related Investments. As long as the Equity Fund will remain a shareholder of the Company and commencing from the date in which the Equity Fund becomes a shareholder, the Company shall, unless the Equity Fund shall otherwise agree:

9.1. use all the proceeds of the Equity Fund New Shares subscription solely for the purposes described in and permitted by the Business Plan;

9.2. furnish to the Equity Fund, within 120 days after the end of each fiscal year of the Company, a full and complete narrative report, signed by the Director, describing the use of the proceeds of the Equity Fund New Shares subscription during the preceding fiscal year, and evaluating the progress of the Company toward achieving the goals of the Business Plan;

9.3. maintain books and records adequate to enable independent certified public accountants to certify the financial statements, and retain such books and records and copies of the reports and statements referred to in Section 9.2 for a period of at least four years after the completion of the use of the proceeds of the Equity Fund New Shares subscription;

9.4. not use any of the proceeds of the Equity Fund New Shares subscription to carry on propaganda, or otherwise attempt to influence legislation; and

9.5. not use any of the proceeds of the Equity Fund New Shares subscription to participate in, or intervene in (including publishing or distributing of any statements), any political campaign on behalf of any political candidate for public office or attempt to influence the outcome of any specific public election, or to carry on, directly or indirectly, any voter registration drive.

10. Sale of Shares by Equity Fund. The sale of any of the Company's shares held by Equity Fund, shall be regulated by a separate option agreement by and between

the Parties.

11.    Notices. Any notices, requests and other communications to any Party hereunder shall be in writing and shall be given to such Party at its address or facsimile number set forth herein or such other address or facsimile number as such Party may hereafter specify by a written notification to the other Party. Each such notice, request or other communication shall be effective (i) if given by facsimile transmission, when transmitted to the proper address and confirmed by telephone, (ii) if given by certified or registered air mail, when received or 72 hours after such communication is deposited in the mail, whichever is earlier, or (iii) if given by any other means, when delivered.

12.    Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the Republic of Croatia.

13.    Jurisdiction. Any dispute, controversy or claim which may arise out of or in connection with this Agreement, or in the execution, breach, termination or invalidity thereof, shall be settled by a competent court in Croatia.

14.    Severability.    If any of the provisions of this Agreement are deemed invalid or unenforceable by an authority of competent jurisdiction, such provisions shall not apply but the remainder of the Agreement shall have full force and effect.

15.    Force and Effect of Language.  This Agreement is being executed in four Croatian copies, and each of the Parties shall have two copies.  Any version of this Agreement in the English language shall be for translation purposes only, and in case of any discrepancies between the English and Croatian versions, the Croatian version shall prevail.


IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives on the date first above written.

Signed for and on behalf of            Signed for and on behalf of
Novi List, d.d., Rijeka, Croatia          Media Development Equity Fund,
                                          Equity Fund, New York, New York


By: _____            By: _____
       Zdenko Mance                            Kenneth Anderson
       Director                                Chairman

# EXHIBIT A

## MEMORANDUM OF UNDERSTANDING

Media Development Loan Fund ("MDLF"), Media Development Equity Fund, LLC ("Equity Fund"), Novi List d.d. ("Novi List") and Riječki list, d.o.o. ("Riječki list") (together, the "Parties") hereby agree as follows:

WHEREAS, Novi List is purchasing a new printing press and upgrading its printing facility;

WHEREAS, in order to consolidate the ownership of Novi List, the management of Novi List has established Riječki list to collect shares in Novi List;

WHEREAS, the members of Riječki list will transfer or have transferred all their shares of Novi List to Riječki list;

WHEREAS, Riječki list has purchased or will purchase the treasury shares held by Novi List;

WHEREAS, Riječki list intends to make an open offer to all other Novi List shareholders to purchase their shares in Novi List (the "Open Offer");

WHEREAS, in order to facilitate said consolidation of ownership, Riječki list wishes to borrow funds from MDLF for the purchase of Novi List shares;

WHEREAS, Equity Fund is fully owned and controlled by MDLF;

WHEREAS, in order to fund the upgrading of Novi List's printing facility and to further facilitate the consolidation of ownership in Novi List, Novi List wishes to issue new shares for purchase by Equity Fund, and possibly by Riječki list;

WHEREAS, MDLF wishes to provide Novi List the assistance described above in the form of two program related investments, one a loan to Riječki list from MDLF and the other an equity investment in Novi List by Equity Fund;

WHEREAS, to effectuate the two program related investments, the Parties intend to finalize a Credit Agreement between Riječki list and MDLF attached hereto as Exhibit 1 (the "Credit Agreement"), a Shareholders Agreement between Riječki list and Equity Fund attached hereto as Exhibit 2 (the "Shareholders Agreement"), a Share Subscription Agreement between Novi List and Equity Fund attached hereto as Exhibit 3 (the "Share Subscription Agreement"), and an Option Agreement (the "Option Agreement") between Novi List and Equity Fund attached hereto as Exhibit 4;

WHEREAS, to fund the purchase of the printing press, Novi List has entered into a Foreign Exchange Loan Facility and Guarantee Agreement dated August 19, 1999, with Raiffeisenbank Austria d.d, Soros Economic Development Fund ("SEDF"), Karlovački List d.o.o. and Adamić d.o.o. (the "RBA Agreement"); and

WHEREAS, for the benefit of Novi List, MDLF has guaranteed to SEDF that MDLF will reimburse to SEDF any funds it must pay pursuant to the guarantee provisions of the RBA Agreement;

THEREFORE,

A.      **Capital Increase**

1.      **Subscription of Shares:** Pursuant to a Share Subscription Agreement to be negotiated by Novi List and MDLF, Novi List will issue and Equity Fund will purchase 18,190 new shares (which will bring the total number of Novi List shares to 60,000). Equity Fund will pay 100 DEM per share, for a total of 1,819,000 DEM. The nominal value of the shares shall be 300 Croatian kunas.

2.      **Option to Repurchase Shares:** Equity Fund and Novi List will enter into an Option Agreement to be negotiated by the Parties, which will give Novi List an option to purchase up to 2/3 of the shares in Novi List to be purchased by Equity Fund under Section A.1 above. Novi List will not be able to exercise this option before the later of (a) one year after Riječki list completes repayment of its loan from MDLF (described below) or (b) Novi List satisfying all its obligations under the RBA Agreement. The option will expire on December 31, 2010. Equity Fund will not be permitted to sell this portion of the shares until expiration of the option, unless the Option Agreement has terminated earlier. The purchase price for those shares shall be determined by the Parties on the following basis:

   a.      Novi List and Equity Fund will agree on the market value of the shares at the time of Equity Fund's purchase and at the time Novi List exercises its option. The percentage change in market value over that period of time (the "Multiplier") will then be calculated.

   b.      The Multiplier then will be multiplied by the actual price paid by Equity Fund for the shares to arrive at the Calculated Option Share Value, which shall be the Exercise Price to be paid by Novi List for the shares, except that the Exercise Price shall in no case fall below a Minimum Option Share Value or above a Maximum Option Share Value.

   c.      To arrive at the Minimum Option Share Value, the actual price paid by Equity Fund per share shall be increased at a rate equal to LIBOR plus 2%, compounded annually over the period of Equity Fund's ownership. To arrive at the Maximum Option Share Value, the actual price paid by Equity Fund per share shall be increased at a rate equal to 10% compounded annually over that period.

3.      **Sale of Shares:** The Option Agreement shall provide that Equity Fund will be free to keep its ownership of the remaining 1/3 of its shares or to sell them as it sees fit. However, the Option Agreement will provide that Equity Fund may not sell before the earlier of (a) the date on which Novi List begins to exercise its option to purchase shares from Equity Fund or (b) June 30, 2009. Riječki list will have a right to approve the purchaser. Riječki list shall not unreasonably withhold such approval.

4.      **Access to Financial Records:** The Option Agreement shall provide that Equity Fund shall on demand be given reasonable access to Novi List's books and other financial records.

5.      **Approval of Equity Fund:** The Option Agreement shall provide that, until the earlier of (a) Equity Fund selling all its shares in Novi List or (b) two years after Novi List has fully exercised the option, but in any case no later than December 31, 2012, Novi List must obtain the written approval of Equity Fund and Riječki list in order to do any of the following:

   i)      amend the Charter of Novi List;

      ii)     reorganize Novi List;

      iii)    liquidate Novi List;

      iv)    increase Novi List's charter capital;

      v)     issue additional voting shares in Novi List;

      vi)    engage in transactions above 500,000 DEM which were not included into the Business Plan accepted by MDLF;

      vii)   enter into debts, liens, and other obligations above 500,000 DEM;

6.    <u>Termination of Option</u>:  The Option Agreement shall provide that, if Riječki list or Novi List breaches the Credit Agreement, Shareholders Agreement or Option Agreement, or defaults under the RBA Agreement, Novi List's option and all restrictions on Equity Fund's sale of its shares will immediately terminate, and Equity Fund will be free to sell 100% of its shares as it sees fit.

7.    <u>Improvements to Accounting System</u>:  The Option Agreement will require Novi List to change and improve its management accounting system to MDLF's satisfaction.

**B.**    **Loan to Riječki list**

1.    <u>Loan Amount; Loan Purpose</u>:  MDLF will loan up to EURO 970,000 to Riječki list (the "Loan") for the purchase of Novi List shares as follows:

      a.    Prior to the Open Offer, Riječki list shall be acquiring from its members their shares in Novi List (the "Member Shares"), as well as all the treasury shares currently held by Novi List (the "Treasury Shares").  Payment for those share acquisitions shall not be due until after completion of the Open Offer.

      b.    Riječki list initially shall use the entire Loan proceeds for part of the deposit for the Open Offer required under the Croatian Law on Takeover.  The Loan proceeds then shall be drawn down for the purchase of Novi List shares pursuant to the Open Offer.

      c.    Following conclusion of the Open Offer, Riječki list shall use any remaining Loan proceeds to pay for the Member Shares and the Treasury Shares.

      d.    After conclusion of all the above purchases, the remainder of the Loan proceeds shall be used for the purchase of additional shares to be newly issued by Novi List (the "Additional Shares").  The Additional Shares shall be priced at 100 kuna per share, and their total cost shall be equal to the remainder of the Loan proceeds.  To the extent the issuance of the Additional Shares would reduce Equity Fund's ownership in Novi List below 30%, the Additional Shares shall be divided among Riječki list and Equity Fund so as to maintain Equity Fund's 30% ownership interest.  In such case, Riječki list shall immediately repay to MDLF the portion of the Loan proceeds equal to the cost of the Additional

Shares to be purchased by Equity Fund.

2.      Interest Rate:  The loan will bear interest at a rate of 2% per annum.

3.      Repayment Schedule:  Assuming the full EURO 970,000 is borrowed, the principal repayment schedule will be:

|  |  |
|---|---|
| June 30, 2002 | EURO  48,500 |
| June 30, 2003 | EURO 145,500 |
| June 30, 2004 | EURO 194,000 |
| June 30, 2005 | EURO 194,000 |
| June 30, 2006 | EURO 194,000 |
| June 30, 2007 | EURO 194,000 |

This repayment schedule is intentionally coordinated with the timing of Novi List's option to purchase shares from Equity Fund, so that Novi List will not be able to exercise its option until after the loan has been fully repaid.  The funds for Riječki list's repayment of principal and interest will come from dividends paid to Riječki list by Novi List, which will require Novi List to issue sufficient dividends to Riječki list to cover the repayments. The Credit Agreement will require Riječki list to obtain MDLF's approval before borrowing funds in any manner from any sources or increasing its capital.

4.      Early Repayment:  Riječki list will have the right to repay the loan early without penalties. All prepayments shall be applied first to installment payments of principal on the Loan in the inverse order of maturity and then to interest accrued but unpaid to the date of such prepayment.  The minimum prepayment amount shall equal 20% of the full loan amount.

5.      Timing of Loan Disbursal:  Prior to the Open Offer.

6.      Security:  The loan will be secured by a pledge of the following Riječki list's shares in Novi List: (a) the shares purchased with the proceeds of the Loan, and (b) any shares transferred to Riječki list by its members.

7.      Default:  In addition to standard events of default, the Credit Agreement shall provide that a breach of the Option Agreement or Shareholders Agreement by Novi List or Riječki list, respectively, or default by Novi List under the RBA Agreement, shall constitute an Event of Default.

8.      Standard Credit Agreement Terms:  The Credit Agreement shall be in the form of MDLF's standard credit agreement, similar to that previously executed by Novi List and MDLF.

C.      **Formation of Riječki list**

1.      Form:  Riječki list will be formed as a Croatian Limited Liability Company.

2.      Controlling Transfers of Stock:  Riječki list's Charter (the "Charter") shall provide that upon a member notifying Riječki list of an intent to sell or otherwise transfer stock, a meeting of members will be called to decide whether (a) to allow the sale or other transfer, (b) to have Riječki list purchase the stock, (c) to require that the stock be sold on a pro rata basis to all existing members who will meet the offered price, or (d) to a different third party than the one proposed by the seller.

3.      Pledge of Shares:  The Charter shall prohibit members from pledging or otherwise hypothecating

13

their shares without written authorization of Riječki list.

4.   Distribution of Revenues: The Charter shall provide that there will be no payment of dividends or other distribution of revenues (such as loans) to members and employees before payment of all currently due debts, and that distributions to members may be carried out only from net profits.

5.   Power to Decide How to Vote Shares in Novi List: The Charter shall provide that this power will rest with a simple majority of the Meeting of Members.

**D.   Shareholders Agreement**

1.   Shareholders Agreement: Riječki list and Equity Fund shall enter into a binding Shareholders Agreement that will govern their votes as shareholders of Novi List as set forth below.

2.   Editorial Policy: The Shareholders Agreement shall provide that Equity Fund will not interfere in the editorial policy of Novi List, but will support and vote for any editorial decisions of Riječki list.

3.   Voting: The Shareholders Agreement shall provide that Equity Fund and Riječki list shall consult on all other matters requiring the vote of Novi List's shareholders, shall only vote their shares by mutual agreement, and shall always vote in unison. The Shareholders Agreement shall, however, provide a mechanism for avoiding deadlock.

4.   Purchase of Shares Coming to Market: The Shareholders Agreement shall provide that, following completion of the Open Offer, when opportunities arise for purchasing additional shares from other shareholders, Riječki list and Equity Fund shall each have the right to purchase 50% of the offered shares. Equity Fund's right to participate in these purchases shall terminate when it has sold all its shares in Novi List. Equity Fund's sale of these shares will be subject to the same restrictions as in Paragraph A.3 above.

5.   Sale of Shares by Riječki list: The Shareholders Agreement shall provide that, until the earlier of (a) Equity Fund selling all its shares in Novi List or (b) two years after Novi List has fully exercised the option, but in any case no later than December 31, 2012, Riječki list will be prohibited from selling, pledging or otherwise transferring or hypothecating any shares it holds or comes to hold in Novi List without written authorization from Equity Fund.

6.   Voting Rights in Novi List: It is intended that Equity Fund will have at least the same number of voting rights in Novi List as Riječki list. However, depending on the number of Novi List shares that Riječki list is able to collect as Treasury Shares and from its shareholders, and purchase by means of the Open Offer, it is possible that Riječki list will hold more shares than Equity Fund. The Shareholders Agreement shall provide that, in such a case, Riječki list will give Equity Fund a proxy to vote whatever number of Riječki list's shares in Novi List is required to achieve parity.

7.   Nomination of Supervisory Board: The Shareholders Agreement shall provide that Riječki list and Equity Fund will use their votes as shareholders of Novi List to ensure that the Supervisory Board of Novi List shall have five members, that four members thereof, including the President, shall be nominated by Riječki list, and that one member thereof shall be nominated by Equity Fund.

E.   **General**
1.   Additional Terms: The Parties agree that the purpose of this Memorandum of Understanding is to set forth their mutual understanding of the central elements of the matters addressed herein, and

that the other details of these matters remain to be negotiated and finalized. The Parties will enter into negotiations on the detailed terms of the Share Subscription, Option, Credit and Shareholders Agreements referenced herein. Unless and until the Parties negotiate and agree on all the terms of said Agreements and execute them, neither party is bound by this agreement to effectuate any of the matters addressed herein.

2.    Timing:  The Parties agree to use their best efforts to finalize the terms of the Subscription, Option, Credit and Shareholders Agreements referenced herein no later than October 10, 1999. All the attached agreements and any related documents shall be executed concurrently by Novi List, Riječki list, MDLF, and Equity Fund following any required approvals from the shareholders of Novi List and members of Riječki list.

MEDIA DEVELOPMENT LOAN FUND            NOVI LIST D.D.


By _____            By _____
    Harlan M. Mandel                        Zdenko Mance
    Deputy Managing Director                    Director


Date:  October ____, 1999                Date:    October _____, 1999



MEDIA DEVELOPMENT EQUITY FUND            RIJEČKI LIST D.O.O.



By _____            By _____
    Kenneth Anderson                        Zdenko Mance
    Chairman                            Director
Date:    October ____, 1999            Date:    October _____, 1999

*PHARE SUBSCRIPTION AGREEMENT 28 oct*

Rijeka, Hrvatska                                                                28. listopada 1999.

# UGOVOR O UPISU DIONICA

Ovaj ugovor ("Ugovor") je sklopljen između slijedećih stranaka ("Stranke"):

**Novi List d.d.**, dioničko društvo osnovano u skladu sa zakonima Hrvatske, sa sjedištem u Zvonimirovoj 20a, Rijeka, Hrvatska, a kojega zastupa Zdenko Mance, direktor ("Društvo" ili "Novi list"); i

**Media Development Equity Fund, LLC,** društvo s ograničenom odgovornošću registrirano u skladu sa zakonim države New York, SAD, sa sjedištem u 45 West 21st Street, New York, NY 10010, SAD, a kojega zatupa odvjetnik Mirko Franceschi po punomoćju ("Equity Fund").

S OBZIROM DA Novi list kupuje novi tiskarski stroj i unaprijeđuje svoj tiskarski pogon;

S OBZIROM DA radi financiranja unaprijeđenja tiskarskog pogona Novog lista te konsolidacije vlasništva Novog lista, Novi list izdaje nove dionice radi kupnje od strane Equity Funda;

S OBZIROM DA Equity Fund želi pružiti Društvu financijsku pomoć radi postizanja gore navedenih ciljeva;

S OBZIROM DA su Društvo, Equity Fund, Media Development Loan Fund ("MDLF") i Riječki list d.o.o. ("Riječki list"), radi realizaciie gornjih namjera, sklopili Memorandum o razumjevanju od dana 28. listopada 1999., čija kopija je ovdje Priložena kao Prilog A ("Memorandum"), te da je, u skladu s tim, sklopljen i niz međusobno povezanih ugovora i to ovaj Ugovor i Ugovor o opciji između Equity Funda i Novog lista, Ugovor o kreditu između MDLF-a i Riječkog lista, te Dioničarski ugovor između Riječkog lista i Equity Funda, svi od dana 28. listopada 1999. (svi zajednički, uključujući i Memorandum dalje "Ugovori");

SADA Stranke ugovaraju kako slijedi:

1.    Kupnja novih dionica. Pod ovdje utvrđenim uvjetima, a posebno pod uvjetom ispunjenja uvjeta utvrđenih u Čl. 2, Equity Fund pristaje kupiti a Društvo pristaje izdati i prodati Equity Fundu osamnaest tisuća sto devedeset (18,190) novih redovnih dionica Društva koje će Društvo izdati u skladu sa suglasnošću Skupštine dioničara koja će se održati dana 15. prosinca 1999., čija će nominalna vrijednost biti 300 kuna po dionici ("Nove dionice"), a što će predstavljati trideset posto (30%) svih dionica s pravom glasa u Društvu, za ukupnu kupoprodajnu cijenu od jednog milijuna osamsto devetnaest tisuća (1,819,000) njemačkih maraka, a što će Equity Fund uplatiti na bankovni račun Društva.

1

2.     Preduvjeti Zatvaranja. Obaveza Equity Funda da upiše Nove dionice važi pod uvjetom ispunjenja slijedećih preduvjeta u trenutku ili prije Zatvaranja, pri čemu se podrazumijeva da se Equity Fund može u bilo kojem trenutku u pisanom obliku odreći, u cijelini ili djelomično, prava da zahtjeva te preduvjete:

2.1.     Nove dionice su na propisan način ovlaštene, izdane i registrirane, a zadovoljeni su i svi ostali pravni uvjeti u vezi s njihovim izdavanjem;

2.2.     Prodaja Novih dionica od strane Društva Equity Fundu mora biti dopuštena na način predviđen Drušvenim ugovorom Društva;

2.3.     Izjave i jamstva navedeni u Čl. 6 ovog Ugovora moraju biti točni i istiniti u svakom materijalnom pogledu na dan potpisivanja ovog Ugovora kao i na dan Zatvaranja;

2.4.     Društveni ugovor Društva mora biti u cijelosti na snazi te oblika i sadržaja koji zadovoljava Equity Fund. Društvo mora pribaviti i/ili održavati na snazi ili obnavljati sve državne, privredne, dioničarske i druge potrebne dozvole, odobrenja, suglasnosti, registracije ili izvještaje u vezi: (i) kupnje Novih dionica od strane Equity Funda, (ii) vođenja poslovanja Drušva na način na koji se ono sada vodi, (iii) pravovaljanog sklapanja i ovjere ovog Ugovora te njegova ispunjenja, i (iv) sposobnosti Društva da Equity Fundu doznači, u konvertibilnoj valuti, sve iznose koji jesu ili mogu postati plativi u vezi Novih dionica, poput dividendi, raspodjele u slučaju likvidiranja Društva, te novca od prodaje dionica Equity Funda (uljučujući i novac inicijalno investiran te eventualne dobiti ili raspodjele u vezi s njim);

2.5.     Svi Ugovori moraju biti zaključeni na propisan način i ni jedan Ugovor neće prestati iz bilo kojeg razloga osim potpunog izvršenja obaveza od strane ugovornih stranaka;

2.6.     Svi preduvjeti predviđeni u Ugovorima moraju biti ispunjeni;

2.7.     Država ili državno tijelo nisu poduzeli nikakvu radnju s ciljem gašenja i zatvaranja Društva ili bilo kakvu drugu radnju koja bi onemogućila Društvu ili njegovim službenicima da obavljaju svoje poslovanje ili njegove bitne dijelove, niti je od strane Društva ili protiv njega pokrenut bilo kakav postupak radi proglašenja stečaja ili nesolventnosti Društva, ili radi reorganizacije, upravljanja ili likvidacije Društva u skladu s nadležnim zakonima i drugim propisima; i

2.8.     Uprava Društva nije zamijenjena niti nova uprava imenovana bez prethodne suglasnosti Equity Funda.

3.     Zatvaranje. Stranke su suglasne da će, nakon što one ovjere ovaj Ugovor i nakon što se ispune Preduvjeti, Društvo prenijeti Nove dionice na Equity Fund. Nove dionice će se prenijeti na Equity Fund zajedno sa svima njima pripadajućim pravima te neopterećene bilo kakvim osiguranjima, opcijama, zahtjevima ili pravima trećih osoba ili teretima,

2

uključujući i pravo prvokupa bilo koje prirode. Društvo će upisati Equity Fund u knjigu dioničara, te će Equity Fundu izdati izvod iz knjige dioničara u kojem će biti navedeno da je Equity Fund punopravni vlasnik Novih dionica. Ako do Zatvaranja ne dođe do 31. prosinca 1999., Equity Fund će imati pravo raskinuti ovaj Ugovor.

    4.    <u>Plaćanje</u>. Plaćanje Novih dionica će se izvršiti jednokratnom brzojavnom doznakom na bankovni račun Društva u roku deset (10) dana od ispunjenja svih radnji navedenih u Čl. 3. ovog Ugovora.

    5.    <u>Ponovni otkup Novih dionica prema opciji Equity Funda.</u>

    5.1    Dok god je Equity Fund vlasnik makar jedne Nove dionice, Equity Fund može, u bilo kojem času nakon nastupa Povoda definiranog u Čl. 5.2. ovog Ugovora, zahtijevati od Društva da otkupi natrag sve Nove dionice u vlasništvu Equity Fund i to upućivanjem Društvu obavijesti ("Obavijest o ponovnom otkupu"). Cijena prilikom ponovnog otkupa će biti jednaka kupovnoj cijeni uvećanoj za 15% godišnje i bit će plativa u USD. Društvo će, u roku od trideset (30) dana od prijema Obavijesti o ponovnom otkupu, platiti Equity Fundu otkupnu cijenu za Nove dionice navedene u takvoj obavjesti. Društvo je suglasno da će, ako Equity Fund iskoristi svoje pravo u skladu sa odredbama ovog članka, bezuvjetno otkupiti Nove dionice.

    5.2.    Equity Fund će imati pravo realizacije svog prava iz Čl. 5.1. bilo kada nakon nastupa jednog ili više od slijedećih događaja ("Povod"):

    5.2.1.    raskid, izmjena, modifikacija ili opoziv ovog Ugovora bez prethodne izričite pisane suglasnosti Equity Funda;

    5.2.2.    propust Društva da ispuni bilo koju svoju obavezu, ili kršenje bilo koje izjave ili jamstva koje je Društvo dalo u skladu s ovim Ugovorom ili s Memorandumom;

    5.2.3.    ako u bilo kojem trenutku neka dražva ili državni organ nacionalizira, zaposjedne ili na drugi način eksproprira svu ili bitan dio imovine Društva ili njenog osnovnog kapitala, ili preuzme kontrolu nad takvom imovinom, poslovanjem ili kapitalom Društva, ili stekne većinsko vlasništvo nad Društvom, ili poduzme radnje radi prestanka Društva ili radnje koje mogu spriječiti Društvo ili njegovo rukovodstvo da vode poslovanje ili neki njegov bitan dio;

    5.2.4.    ako je bilo koji od Ugovora prestao iz bilo kojeg razloga osim potpunog izvršenja svih obaveza ugovornih stranaka;

    5.2.5.    ako bilo koja ugovorna stranka prekršila bilo koju odredbu bilo kojeg Ugovora;

5.2.6.  ako je Društvo prekršilo svoje obaveze iz Ugovora o deviznom kreditu i jamstvu od 19. kolovoza 1999., sklopljenog između Društva, Raiffeisenbank Austria d.d., Soros Economic Development Fund, Karlovačkog lista d.o.o. i Adamić d.o.o.; ili

5.2.7.  ako je pokrenut postupak protiv ili od strane Društva a kojim se traži proglašenje stečaja ili nelikvidnosti Društva, ili reorganizacija, prinudna uprava ili likvidacija Društva u skladu s nadležnim zakonima i propisima.

5.3.    Posezanje Equity Funda za pravima iz Čl. 5.1. neće prekludirati druga prava Equity Funda iz ovog Ugovora niti će ograničiti bilo koju drugu odredbu ovog Ugovora.

6.      Izjave i jamstva Društva.

6.1.    Društvo na dan ovog Ugovora izjavljuje i jamči Equity Fundu:

6.1.1.    Ne postoje opcije niti drugi ugovori koji bi zahtijevali prijenos Novih dionica na bilo koju osobu ili dali bilo kojoj osobi pravo da zahtijeva njihov prijenos.  Ne postoje opcije niti drugi ugovori koji daju pravo bilo kojoj osobi da zahtijeva izdavanje ili stvaranje bilo kakvog tereta ili drugog osiguranja nad bilo kojom Novom dionicom.

6.1.2.    Društvo nije izdalo nikakvu punomoć kojom bi opunomoćilo nekoga da glasa u ime Društva na osnovu Novih dionica.

6.1.3.    Društvo je ovaj Ugovor zaključilo i ovjerilo na propisan način. Ovaj Ugovor predstavlja pravovaljanu obavezu Društva, koja se može prisilno ovršiti u skladu s njegovim odredbama.

6.1.4.    Financijski izvještaji Društva, predani Equity Fundu u vezi s ovim Ugovorom, čine njegove financijske izvještaje i realno prikazuju njegov fnancijski položaj, aktivu i pasivu na u njima navedene dane.  Od dana poslednjeg financijskog izvieštaja, nije bilo nepovoljnih promjena u financijskim i drugim položajima Društva.

6.1.5.    Ne postoji nikakva činjenica koju Društvo nije Equity Fundu priopćilo u pisanom obliku a koja bi nepovoljno utjecala ili, koliko to Društvo može sada predvidjeti, će nepovoljno utjecati na imovinu, poslove, izglede ili stanja (financijska i druga) Društva.

6.1.6.    Nije u toku niti, po znanju Društva, prijeti nikakav postupak, tužba ili slično, pred bilo kojim sudom ili arbitražom ili bilo kojim državnim organom, agencijom ili službenom osobom, a u vezi čega postoji razumna mogućnost nepovoljne odluke koja bi mogla materijalno nepovoljno utjecati na

poslovanje, financijski položaj ili rezultate poslovanja Društva ili koji na bilo koji način dovode u pitanje pravomoćnost ovog Ugovora.

6.1.7.    Sve poreske i druge prijave koje zakon zahtijeva od Društva su podnesene, a svi porezi i druga davanja prema državi koja Društvo ili njegova imovina moraju podmiriti i koja su dospjela na dan ili prije dana ovog Ugovora su podmirena, osim onoga što je u dobroj vjeri osporeno u odgovarajućem postupku koji odlaže nametanje bilo kakvih kazni, globi ili tereta za neplaćanje takvih davanja te za čije plaćanje su rezervirana adekvatna sredstva.

6.1.8.    Društvo ima punopravno i utuživo vlasništvo nad svom svojom imovinom, slobodno od bilo kakvih zaloga, osiguranja i drugih tereta te drugih preferencijalnih aranžmana.

6.2.    Equity Fund izjavljuje a Društvo potvrđuje da se Equity Fund rukovodi isključivo onim što se izjavljuje i jamči u Čl. 6.1. i da je stupilo u ovaj Ugovor na osnovu tih izjava i jamstava.

7.    Obaveze. Dok god Equity Fund bude dioničar Društva i počevši od dana kada Equity Fund postane dioničar, Društvo mora, osim ako Equity Fund ne pristane na drugačije:

7.1.    voditi svoje poslovanje (i) pažljivo i djelotvorno, (ii) u skladu s odgovarajućim zakonima, propisima, i rješenjima nadležnih organa, (iii) u skladu s općom praksom nezavisnih, nestranačkih, pluralističkih, tolerantnih i odgovornih medija, i (iv) u skladu s primjenljivim financijskim i računovodstvenim običajima;

7.2.    pribaviti i/ili održavati na snazi ili obnavljati sve državne, privredne, dioničarske i druge potrebne dozvole, odobrenja, suglasnosti, registracije ili izvještaje kako je to opisano u Čl. 2.4. ovog Ugovora, te su u cijelosti pridržavati svih uvjeta i ograničenja koje su u njima sadržane ili su nametnute Društvu takvim dozvolama, odobrenjima ili suglasnostima;

7.3.    izvršiti izmjene i unaprijeđenja u svojoj knjigovodstvenoj službi, knjigovodstvenoj praksi i knjigovodstvenom sustavu na zadovoljstvo Equity Funda;

7.4.    odmah obavijestiti Equity Fund o (i) namjeravanim promjenama prirode ili obima poslovanja Društva; i (ii) svakom slučaju ili okolnosti, uključujući između ostaloga i trenutni ili najavljeni sudski, arbitražni ili upravni postupak, koji bi mogli imati štetan utjecaj na poslovanje, financijske ili druge okolnosti Društva ili mogućnost Društva da ispuni bilo koju od svojih obaveza iz ovog Ugovora;

7.5.    odmah dostaviti Equity Fundu kopije svih obavijesti, izvještaja i drugih saopćenja Društva svojim dioničarima kao i zapisnika svih skupština dioničara; bez ograničavanja gornjega, Društvo će, na dan ili prije slanja službenog poziva dioničarima na skupštinu dioničara, dostaviti Equity Fundu telefaksom poziv na takvu skupštinu te njen dnevni red;

7.6.     voditi svoje poslovne knjige u skladu s računovodstvenim standardima koji se primjenjuju u Hrvatskoj, te će na osnovu razumne obavijesti, u svakom razumnom času i svaki put kada to Equity Fund zatraži, omogućiti svakom ovlaštenom predstavniku Equity Funda posjet Društvu i inspekciju financijskih računovodstvenih knjiga Društva vezanih za ovaj Ugovor, te financijskog stanja Društva, a radi provjere pridržavanja ovog Ugovora, te će dopustiti svakom ovlaštenom predstavniku Equity Funda razgovor o poslovanju, finacijama i stanju Društva s ovlaštenim financijskim rukoviteljima ili predstavnicima Društva, kako to Equity Fund bude smatrao uputnim;

7.7.     dostaviti Equity Fundu slijedeće izvještaje, točne i kompletne:

7.7.1.  mjesečne financijske izvještaje u roku od 25 dana od kraja svakog pojedinog mjeseca, dok god Equity Fund bude dioničar Društva, i u obliku kojega odredi Equity Fund,

7.7.2.  godišnje financijske izvještaje Društva, pregledane i ovjerene od strane nekog neovisnog ovlaštenog knjigovođe, a koji vijerno prikazuju financijski položaj i rezultate poslovanja Društva u toj fiskalnoj godini, pripremljene u skladu s međunarodno prihvaćenim računovodstvenim standardima, i

7.7.3.  dodatne financijske i druge informacije koje Equity Fund razumno povremeno zatraži.

8.     Zabrane.     Dok god Equity Fund bude dioničar Društva, Društvo ne smije, osim ako Equity Fund ne pristane na drugačije:

8.1.     izdavati nikakve dionice s pravom glasa;

8.2.     stupiti u transakciju ili seriju transakcija čija vrijednost prelazi 500.000 DEM, osim transakcija opisanih u Poslovnom planu Društva koji je podnesen na odobrenje i kojega je Equity Fund odobrio na dan ovog Ugovora ("Poslovni plan");

8.3.     stvoriti ili pretrpiti bilo kakva dugovanja, hipoteke, zaloge, osiguranja ili druge terete u vezi svoje imovine, u vrijednosti 500.000 DEM ili više, u jednoj ili seriji transakcija;

8.4.     poduzimati radnje koje bi na bilo koji način bile u suprotnosti s ovim Ugovorom, uključujući između ostaloga i mijenjanje ili dopuštanje promjena Društvenog ugovora; s tim da Equity Fund neće nerazumno uskratiti svoju odluku o davanju suglasnosti na predložene izmjene;

8.5.     sklopiti ikakav ugovor o upravljanju ili slični aranžman na osnovu kojega bi njegovim poslovanjem upravljala neka druga osoba;

8.6.     mijenjati ili dopustiti izmjene prirode svog sadašnjeg poslovanja;

6

8.7.    spojiti ili konsolidirati se s drugom osobom ili prodati, ustupiti, iznajmiti ili na drugi način prenijeti ili otuđiti, u jednoj ili više transakcija, cijelu ili bitan dio svoje imovine, ili dio svoje imovine; ili

8.8.    mijenjati svoj kapital, uključujći bilo koje povećanje ili smanjenje dioničkog kapitala, redenominaciju ili cijepanje dionica, ili bilo kakvu radnju koja bi mogla izazvati smanjenje vrijednosti Novih dionica.

9.    <u>Obaveze koje proizilaze iz programskih investicija.</u> Dok god Equity Fund bude dioničar Društva i počevši od dana kad Equity Fund postane dioničar, Društvo mora, osim ako Equity Fund ne pristane na drugačije:

9.1.    upotrijebiti cjelokupna sredstva dobivena od Equity Funda za Nove dionice isključivo u svrhe određene Poslovnim planom;

9.2.    dostaviti Equity Fundu, u roku 120 dana od završetka fiskalne godine Društva, cjeloviti narativni izvješaj, potpisan od strane direktora, u kojem se opisuje korištenje sredstava stečenih iz Equity Fundovih upisa Novih dionica za vrijeme protekle fiskalne godine, te se iznosi procjena napredovanja Društva prema ispunjenju ciljeva Poslovnog plana;

9.3.    voditi odgovarajuće knjige i zapise koji će omogućiti neovisnom ovlaštenom knjigovođi da ovjeri financijske izvještaje, te zadržati takve knjige i zapise kao i kopije izvještaja i izjava navedenih u Čl. 9.2, najmanje četiri godine nakon prestanka korištenja sredstava stečenih iz Equity Fundovog upisa Novih dionica;

9.4.    neće koristiti bilo kakva sredstva stečena iz Equity Fundovog upisa Novih dionica radi provođenja propagande ili drugog utjecanja na zakonodavstvo; i

9.5.    neće koristiti bilo kakva sredstva stečena iz Equity Fundovog upisa Novih dionica radi učestvovanja ili uplitanja (uključujući izdavanje ili distribuciju bilo kakvih izjava) u političku kampanju u korist bilo kojeg kandidata za javne funkcije niti će pokušati utjecati na ishode bilo kakvih javnih izbora, niti će provoditi, posredno iii neposredno, pritisak na upis glasača.

10.    <u>Prodaja dionica od strane Equity Funda.</u>    Prodaja bilo kojih dionica Društva u vlasništvu Equity Funda Stranke će regulirati posebnim ugovorom o opciji.

11.    <u>Obavijesti.</u>    Sve obavijesti, zahtjevi i druge komunikacije prema bilo kojoj Stranci ovog Ugovora moraju biti u pisanom obliku i dotičnoj Stranci moraju biti uručeni na njenu adresu ili broj telefaksa navedenima u ovom Ugovoru ili na drugu adresu ili broj telefaksa koje bi ta Stranka naknadno saopćila drugoj Stranci putem pisane obavijesti. Svaka takva obavijest, zahtjev ili druga komunikacija ima učinak (i) pri slanju telefaksom: kada je poslana na odgovarajuću adresu i potvrđena telefonom, (ii) u slučaju slanja preporučenom

zračnom poštom: kada je primljena ili 72 sata nakon što je takva pošiljka predana pošti, što od toga nastupi ranije, ili (iii) u slučaju drugih sredstava: kada je dostavljena.

12. <u>Nadležno pravo</u>.     Ovaj Ugovor je sačinjen i tumačiti će se u skladu sa zakonima Republike Hrvatske.

13. <u>Nadležnost suda</u>.     Sve sporove, nesporazume, ili zahtjeve koji bi proizašli iz ili u vezi ovog Ugovora, ili u vezi njegove primjene, kršenja, raskida ili ništavosti, rješavat će stvarno nadležni sud u Hrvatskoj.

14. <u>Izdvojivost</u>.     Ako bi neko nadležno tijelo smatralo bilo koju odradbu ovog Ugovora nevažećom ili neovršivom takva odredba se neće primjeniti ali će preostali dijelovi Ugovora ostati u potpunosti na snazi.

15. <u>Klauzula o jeziku</u>.     Ovaj Ugovor je sastavljen u četiri primjerka na hrvatskom jeziku, od kojih svaka Stranka dobiva po dva.  Bilo koja verzija ovog ugovora na engleskom jeziku služi samo radi prijevoda, i u slučaju spora između engleske i hrvatske verzije, prevladat će hrvatska verzija.

POTVRĐUJUĆI GORNJE, Stranke ovjeravaju ovaj Ugovor putem svojih ovlaštenih gore navederih predstavnika.


Potpisano u ime i za                                    Potpisano u ime i za
Novi List d.d. Rijeka, Hrvatska             Media Development Equity Fund, LLC,
                                                                New York, N.Y.

_____                    _____
Zdenko Mance                                         Mirko Franceschi
                    Direktor                                               Po punomoćju

»NOVI LIST« d.d.
        Rijeka          1



## **Prilog A**

### MEMORANDUM O RAZUMJEVANJU

Media Development Loan Fund ("MDLF"), Media Development Equity Fund, LLC ("Equity Fund"), Novi list d.d. ("Novi List") i Riječki list, d.o.o. ("Riječki list") (zajednički: "Stranke"), ovim ugovaraju kako slijedi:

S OBZIROM DA Novi list kupuje novi tiskarski stroj i unaprijeđuje svoj tiskarski pogon;

S OBZIROM DA je, radi konsolidacije vlasništva Novog lista, uprava Novog lista osnovala Riječki list radi stjecanja dionica Novog lista;

S OBZIROM DA će dioničari Riječkog lista prenijeti ili su već prenijeli sve svoje dionice u Novom listu na Riječki list;

S OBZIROM DA je Riječki list kupio ili će kupiti vlastite dionice Novog lista;

S OBZIROM DA Riječki list namjerava svim drugim dioničarima Novog lista uputiti otvorenu ponudu za kupnju njihovih dionica u Novom listu ("Otvorena ponuda");

S OBZIROM DA, radi omogućavanja konsolidacije vlasništva, Riječki list želi od MDLF-a pozajmiti sredstva za kupnju dionica u Novom listu;

S OBZIROM DA je Equity Fund u cijelosti u vlasništvu i pod kontrolom MDLF-a;

S OBZIROM DA, radi financiranja unaprijeđenja tiskarskog pogona Novog lista te konsolidacije vlasništva Novog lista, Novi list želi izdati nove dionice radi kupnje od strane Equity Funda, i možda od Riječkog lista;

S OBZIROM DA MDLF želi pomoći Novom listu na gore opisani način u obliku dvije programske investicije – kredita Riječkom listu od MDLF-a, te investicije u dionički kapital Novog lista od strane Equity Funda;

S OBZIROM DA radi realizacije ove dvije programske investicije, Stranke namjeravaju sklopiti Ugovor o kreditu između Riječkog lista i MDLF-a koji je priložen ovom Memorandumu kao Prilog 1 ("Ugovor o kreditu"), Dioničarski ugovor između Riječkog lista i Equity Funda, priložen ovdje kao Prilog 2 ("Dioničarski ugovor"), Ugovor o upisu dionica između Novog lista i Equity Funda priložen ovdje kao Prilog 3 ("Ugovor o upisu dionica"), i Ugovor o opciji ("Ugovor o opciji") između Novog lista i Equity Funda priložen ovdje kao Prilog 4;

S OBZIROM DA je Novi list radi financiranja kupnje novog tiskarskog stroja stupio u Ugovor o deviznom kreditu i jamstvu od 19 kolovoza 1999, s Raiffeisenbank Austria d.d.. Soros Economic Development Fund "SEDF"), Karlovačkim listom d.o.o. i Adamić d.o.o. ("RBA Ugovor"); i

S OBZIROM DA u korist Novog lista MDLF jamči SEDF-u da će MDLF naknaditi SEDF-u svaki iznos koji ovaj bude morao platiti u skladu s odredbama jamstva iz RBA Ugovora;

ZATO,

A.     Povećanje kapitala

1.     Upis dionica: U skladu s Ugovorom o upisu dionica koji se treba dogovoriti između Novog lista i MDLF-a, Novi list će izdati a Equity Fund kupiti 18.190 novih dionica (što će ukupni broj dionica Novog lista dovesti

do 60.000). Equity Fund će platiti 100 DEM po dionici, ili ukupno 1.819.000 DEM. Nominalna vrijednost dionica će biti 300 hrvatskih kuna.

2. Opcija ponovnog otkupa dionica. Equity Fund i Novi list će sklopiti Ugovor o opciji, koji će Novom listu dati pravo opcije kupnje do 2/3 dionica Novog lista koje Equity Fund će kupiti u skladu s Čl. A.1 ovog Memoranduma. Novi list neće moći realizirati ovu opciju pre kasnijega od (a) godine dana nakon što Riječki list u potpunosti vrati kredit koji je uzeo od MDLF-a (opisan niže), ili (b) kada Novi list ispuni sve svoje obaveze iz RBA Ugovora. Ova opcija će prestati važiti 31. prosinca 2010. Equity Fund neće smjeti prodati dionice na koje se opcija odnosi do isteka opcije, osim ukoliko Ugovor o opciji nije ranije prestao važiti. Kupovnu cijenu za te dionice će Stranke utvrditi na slijedeći način:

   a. Novi list i Equity Fund će dogovoriti tržišnu cijenu dionica u trenutku kada ih bude Equity Fund kupovao i kada Novi list realizira svoju opciju. Tada će se izračunati međuvremena promjena tržišne vrijednosti u postotcima ("Multiplikator").

   b. Zatim će se Multiplikator pomnožiti s cijenom koju je Equity Fund zaista platio za dionice, čime će se dobiti Kalkulativna vrijednost opcijskih dionica, što će biti Cijena izvršenja koju će za dionice platiti Novi list, osim što Cijena izvršenja ne može biti ispod Minimalne vrijednosti opcijske dionice niti iznad Maksimalne vrijednosti opcijske dionice.

   c. Za dobiti Minimalnu vrijednost opcijske dionice, cijena koju je za dionice platio Equity Fund će se povećati za stopu LIBOR-a plus 2%, što će se pribrajati godišnje za cijelo vrijeme Equity Fundovog vlasništva. Za dobiti Maksimalnu vrijednost opcijske dionice, cijena koju je za dionice platio Equity Fund će se povećati za 10%, što će se pribrajati godišnje za cijelo to vrijeme.

3. Prodaja Dionica. Ugovorom o opciji će se utvrditi da Equity Fund može zadržati vlasništvo nad preostalom 1/3 svojih dionica ili ih može prodati, kako to on bude smatrao uputnim. Međutim, Ugovorom o opciji će se utvrditi da ih Equity Fund ne smije prodavati prije (a) dana kada Novi list počne realizirati svoju opciju ponovnog otkupa dionica od Equity Funda, ili (b) 30. lipnja 2009. Riječki list će imati pravo odobravanja kupca. Riječki list takvo odobrenje neće uskratiti bez razumne osnove.

4. Pristup financijskim knjigama. Ugovorom o opciji će se utvrditi da će se Equity Fundu, na njegov razuman zahtjev, omogućiti pristup poslovnim knjigama i drugim financijskim zapisima Novog lista.

5. Suglasnost Equity Funda. Ugovorom o opciji će se utvrditi da do ranijega od (a) trenutka kada Equity Fund proda sve svoje dionice u Novom listu ili (b) dvije godine nakon što je Novi list u potpunosti realizirao opciju, ali nikako nakon 31. prosinca 2012., Novi list mora pribaviti pisanu suslasnost Equity Funda i Riječkog lista radi izvršenja bilo čega od niže navedenoga:

   i) promjena Društvenog ugovora Novog lista;
   ii) reorganizacija Novog lista;
   iii) likvidacija Novog lista;
   iv) povećanje osnovnog dioničkog kapitala Novog lista;
   v) izdavanje novih dionica Novog lista s pravom glasa;
   vi) transakcija iznad 500.000 DEM a koje nisu predviđene Poslovnim planom kojega je prihvatio MDLF;
   vii) ulaženje u dugove, zaloge i druge obaveze iznad 500.000 DEM.

6. Prestanak opcije. Ugovorom o opciji će se utvrditi da ako Riječki list prekrši Ugovor o kreditu ili Dioničarski ugovor, ili Novi list prekrši Ugovor o opciji ili prekrši RBA Ugovor, pravo opcije Novog lista i sva ograničenja Equity Funda će odmah prestati, a Equity Fund će biti slobodan prodati 100% svojih dionica kako to bude smatrao uputnim.

7. Poboljšanja računovodstvenog sustava. Ugovorom o opciji će se utvrditi da Novi list mora promijeniti i unaprijediti upravljanje svojim računovodstvenim sustavom na zadovoljstvo MDLF-a.

**B.     Kredit Riječkom listu**

1.   **Iznos kredita; svrha kredita.**  MDLF će odobriti Riječkom listu kredit do 970.000 eura za kupnju dionica Novog lista.

    a.   Prije otvorene ponude, Riječki list će od svojih članova otkupljivati njihove dionice u Novom listu ("Dionice članova") kao i sve vlastite dionice Novog lista ("Vlastite dionice").  Plaćanja za te dionice neće dospjeti prije okončanja Otvorene ponude.

    b.   Riječki list će u početku iskoristiti sva sredstva Kredita kao dio sredstava potrebnih za realiziranje Otvorene ponude u skladu sa hrvatskim Zakonom o preuzimanju.  Zatim će se sredstva Kredita koristiti za kupnju dionica Novog lista u skladu s Otvorenom ponudom.

    c.   Po okončanju Otvorene ponude, Riječki list će iskoristiti preostala sredstva Kredita za isplatu Dionica članova i Vlastitih dionica.

    d.   Po okončanju svih gore navedenih kupnji, preostala sredstva Kredita će se iskoristiti za kupnju dodatnih dionica koje će Novi list izdati ("Dodatne dionice"). Cijena Dodatnih dionica će iznositi 100 kuna po dionici, a njihova ukupna cijena će biti ravna ostatku sredstava Kredita.  Za onoliko koliko će izdavanje Dodatnih dionica smanjiti vlasništvo Equity Funda nad Novim listom ispod 30%, toliko će se Dodatne dionice podijeliti između Riječkog lista i Equity Funda na način da Equity Fund zadrži 30% vlasništva.  U tom slučaju će Riječki list odmah vratiti MDLF-u dio sredstava Kredita jednak cijeni Dodatnih dionica koje treba kupiti Equity Fund.

2.   **Kamatna stopa.**  Kamate na kredit će se obračunati po stopi od 2% godišnje.

3.   **Dinamika vraćanja.**  Pod pretpostavkom da je kredit preuzet u cijelom iznosu od 970.000 eura, dinamika vraćanja će biti kako slijedi.
        30. lipnja 2002.    48.500 eura
        30. lipnja 2003.   145.500 eura
        30. lipnja 2004.   194.000 eura
        30. lipnja 2005.   194.000 eura
        30. lipnja 2006.   194.000 eura
        30. lipnja 2007.   194.000 eura

Dinamika otplate je namjerno usklađena s opcijom Novog lista za kupnju dionica od Equity Funda, tako da Novi list neće biti u mogućnosti realizirati svoju opciju prije potpunog povrata kredita od strane Riječkog lista.  Sredstva za povrat glavnice i kamata Riječki list će steći iz dividendi koje Novi list plati Riječkom listu, zbog čega će Novi list morati isplatiti Riječkom listu dovoljne dividende za pokriće ovog povrata.  Ugovor o kreditu će od Riječkog lista zahtijevati pribavljanje suglasnosti MDLF-a prije uzimanja bilo kakvog kredita od bilo koje osobe ili prije povećanja svoga kapitala.

4.   **Prijevremena otplata.**  Riječki list će imati pravo prijevremene otplate kredita bez penala.  Svim prijevremenim plaćanjima će se najprije podmirit obroci glavnice kredita redoslijedom suprotnim od dospjevanja a zatim kamate koje su dospjele a nisu plaćene do dana plaćanja.  Najmanji iznos akontacije će iznositi 20% iznosa cijelog kredita.

5.   **Vrijeme isplate kredita.**  Prije Otvorene ponude.

6.   **Osiguranje.**  Kredit će biti osiguran zalogom na slijedećim dionicama Riječkog listu u Novom listu: (a) dionice kupljene sredstvima Kredita, i (b) dionice koje su na Riječki list prenijeli njegovi članovi.

11

7.  **Kršenje.**  Pored standardnih slučajeva kršenja, Ugovorom o kreditu će se utvrditi da Slučaj predstavlja i kršenje Dioničarskog ugovora od strane Riječkog lista, ili Ugovora o opciji ili RBA Ugovora od strane Novog lista.

8.  **Standardni uvjeti Ugovora o kreditu.**  Ugovor o kreditu će biti u obliku MDLF-ovog standardnog ugovora o kreeditu, sličnog onom kojega su Novi list i MDLF već sklopili.

## C.    Osnivanje Riječkog lista

1.  **Oblik.**  Riječki list će se osnovati kao hrvatsko trgovačko društvo s ograničenom odgovornošću.

2.  **Nadzor nad prijenosom dionica.**  Društvenim ugovorom Riječkog lista ("Društveni ugovor") će se utvrditi da kada neki član obavijesti Riječki list o namjeri prodaje ili drugog prenošenja udjela, da će se sazvati skupština članova na kojoj će se odlučiti da li će: (a) se dopustiti prodaja odnosno drugi prijenos, (b) Riječki list kupiti udjele, (c) se zatražiti da se udjeli prodaju na pro rata osnovi ostalim članovima koji prihvate ponuđenu cijenu, ili (d) udjele prodati drugoj osobi a ne onoj koju je predložio prodavatelj.

3.  **Zalog udjela.**  Društvenim ugovorom će se zabraniti članovima zalaganje ili drugo opterećenje udjela bez pisanog dopuštenja Riječkog lista.

4.  **Distribucija dobiti.**  Društvenim ugovorom će se utvrditi da se neće isplaćivati dividende niti da se dobit na drugi način distribuirati (npr. putem kredita/pozajmica) članovima i zaposlenicima prije isplate svih trenutno dospjelih dugovanja, i da se raspodjele prema članovima mogu vršiti isključivo iz neto dobiti.

5.  **Ovlaštenje o odlučivanju o glasanju dionica Novog lista.**  Društvenim ugovorom će se utvrditi da će skupština članova donositi odluke natpolovičnom većinom.

## D.    Dioničarski ugovor

1.  **Dioničarski ugovor.**  Riječki list i Equity Fund će sklopiti Dioničarski ugovor koji će odrediti njihova dioničarska prava glasa u Novom listu kako je to ovdje niže navedeno.

2.  **Uređivačka politika.**  Dioničarskim ugovorom će se utvrditi da se Equity Fund neće miješati u uređivačku politiku Novog lista već da će podržavati i glasati za svaku uređivačku odluku Riječkog lista.

3.  **Glasanje.**  Dioničarskim ugovorom će se utvrditi da će se Equity Fund i Riječki list konzultirati o svim drugim pitanjima koja zahtijevaju glasanje dioničara Novog lista, da će pravo glasa svojih dionica koristiti isključivo sporazumno i uvijek de glasati jednako.  Dioničarski ugovor će, međutim, predvidjeti mehanizam za slučaj da Equity Fund i Riječki list ne postignu sporazum.

4.  **Kupnja dionica koje se pojave na tržištu.**  Dioničarskim ugovorom će se utvrditi da, nakon okončanja Otvorene ponude, kada se ukaže prilika otkupa dodatnih dionica od drugih dioničara, Riječki list i Equity Fund će imati pravo kupnje po 50% ponuđenih dionica.  Pravo Equity Funda da učestvuje u takvim kupnjama će prestati kada ovaj proda sve svoje dionice u Novom listu.  Na prodaju tih dionica od strane Equity Funda će se odnositi ograničenja iz Čl. Λ.3 ovog Memoranduma.

5.  **Prodaja dionica od strane Riječkog lista.**  Dioničarskim ugovorom će se utvrditi da do ranijega od (a) kada Equity Fund proda sve svoje dionice u Novom listu ili (b) dvije godine nakon što je Novi list u potpunosti realizirao opciju, ali nikako nakon 31. prosinca 2012., Riječki list neće smjeti prodavati, zalagati ili na drugi način prenositi ili opteretiti bilo koje dionice Novog lista koje posjeduje ili ih bude posjedovao a bez pisane suglasnosti Equity Funda.

6.  **Pravo glasa u Novom listu.**  Namjera je da Equity Fund ima najmanje isti broj dionica s pravom glasa u Novom listu kao i Riječki list.  Međutim, ovisno o broju dionica Novog lista koje Riječki list bude u stanju

steći iz Vlastitih dionica, skupiti od članova i otkupiti ih putem Otvorene ponude, moguće je da Riječki list bude imao više dionica nego Equity Fund. Dioničarskim ugovorom će se utvrditi da će Riječki list u takvom slučaju dati Equity Fundu punomoć za glasanje na osnovu onolikog broja Riječki listovih dionica u Novom listu koliko je potrebno da se dostigne paritet.

7.   Imenovanje Nadzornog odbora.  Dioničarskim ugovorom će se utvrditi da će Riječki list i Equity Fund koristiti svoja dioničarska prava glasa u Novom listu za osigurati da Nadzorni odbor Novog lista ima pet članova, da četvero njih uključujući i predsjedavajućega imenuje Riječki list, a da jednoga od njih imenuje Equity Fund.

E.   Opće

1.   Dodatne odredbe.  Stranke su složne da je svrha ovog Memoranduma utvrđivanje njihovog dogovora o središnjim elementima ovdje iznesenih pitanja, a da su drugi detalji tih pitanja predmet daljnih pregovora i utanačenja. Stranke su složne da će započeti pregovore o detaljnim odredbama ovdje spomenutih Ugovora o upisu dionica, Ugovora o opciji, Ugovora o kreditu i Dioničarskog ugovora. Ukoliko i sve dok Stranke pregovorima ne utvrde sve odredbe ovih Ugovora i ne ugovore ih, ovaj Memorandum ne obavezuje ni jednu stranku da postupa po njemu.

2.   Vremenski rokovi.  Stranke su složne da ulože maksimalne napore da utvrde odredbe ovdje spomenutih Ugovora o upisu dionica, Ugovora o opciji i Dioničarskog ugvora do 10. listopada 1999. Svi priloženi ugovori i bilo kakve dodatne isprave će Novi list, Riječki list, MDLF i Equity Fund potpisati istovremeno nakon dobivanja potrebnih suglasnosti dioničara Novog lista i članova Riječkog lista.


MEDIA DEVELOPMENT LOAN FUND                  NOVI LIST D.D.


———————————————                              ———————————————
Harlan M. Mandel                             Zdenko Mance
Zamjenik izvršnog direktora                  Direktor

Datum: ___ listopada 1999.                   Datum: ___ listopada 1999.


MEDIA DEVELOPMENT EQUITY FUND                RIJEČKI LIST, d.o.o.


———————————————                              ———————————————
Kenneth Anderson                             Zdenko Mance
Predsjednik                                  Direktor

Datum: ___ listopada 1999.                   Datum: ___ listopada 1999.