# SHAREHOLDERS' AGREEMENT
(the "Agreement")

by and between

**Riječki list, d.o.o., Rijeka, Croatia**
("Riječki list")

and

**MEDIA DEVELOPMENT EQUITY FUND**
(the "Equity Fund")

in relation to

**NOVI LIST d.d., Rijeka, Croatia**
(the "Company")

## PARTIES

**Riječki list**, d.o.o., a limited liability company duly organized and validly existing under the laws of the Republic of Croatia, with its registered office at Zvonimirova 20a Street, Rijeka, Croatia, MBS 040149534 (hereinafter referred to as: "Riječki list")

and

**MEDIA DEVELOPMENT EQUITY FUND**, a limited liability company duly organized under the laws of the State of New York, USA, with its registered office at 45 West 21st Street, New York, NY 10010, United States of America, (hereinafter referred to as: the " Equity Fund")

(hereinafter sometimes collectively referred to as the "Parties")

in relation to **NOVI LIST d.d.** having its registered office at Zvonimirova 20a, Rijeka, Croatia, MBS 010000340 (hereinafter referred to as "Novi List" or the "Company")

## RECITALS

*Whereas*, the Company is purchasing a new printing press and upgrading its printing facility;

*Whereas*, to fund the purchase of the printing press, Novi List has entered into a Foreign Exchange Loan Facility and Guarantee Agreement dated August 19, 1999, with Raiffeisenbank Austria d.d., Soros Economic Development Fund ("SEDF"), Karlovački List d.o.o. and Adamić d.o.o. (the "RBA Agreement");

*Whereas*, for the benefit of Novi List, Media Development Loan Fund (the "MDLF"), owner of the Equity Fund, has guaranteed to SEDF that MDLF will reimburse to SEDF any funds it must pay pursuant to the guarantee provisions of the RBA Agreement;

*Whereas*, in order to consolidate the ownership of the Company, the management of Novi List has established Riječki list to collect shares in Novi List;

*Whereas*, in order to facilitate said consolidation of ownership, Riječki list is borrowing funds from MDLF for the purchase of shares in the Company;

*Whereas*, in order to fund the upgrading of the Company's printing facility and to further facilitate the consolidation of ownership in the Company, the Company is issuing new shares for purchase by the Equity Fund; and

*Whereas*, to effectuate the above, the Company, Riječki list, MDLF and the Equity Fund have entered into a Memorandum of Understanding (the "MoU"), attached hereto as Exhibit 1, and, in accordance therewith, are entering into a series of inter-locking agreements, namely a Credit Agreement between Riječki list and MDLF, a Share Subscription Agreement between the Company and the Equity Fund, an Option Agreement between the Company and the Equity Fund

(the "Option Agreement"), and this Shareholders' Agreement (collectively, the "Agreements"); and

*Whereas*, the Company is a joint-stock company duly organized and existing under the laws of the Republic of Croatia, whose share capital will be HRK 12,543,000 (twelve million five hundred forty-three thousand Croatian kunas); and

*Whereas*, Riječki list is a registered holder and legal and beneficial owner of 18,139 (eighteen thousand one hundred thirty-nine) shares of the Company and shall be purchasing additional shares of the Company; and

*Whereas*, the Equity Fund has entered into the Share Subscription Agreement with the Company, dated October 28, 1999, for the purchase of eighteen thousand one hundred ninety (18,190) new shares of common stock of the Company, having a nominal value of HRK 300 (three hundred) each and the total nominal value of HRK 5,457,000 (five million four hundred fifty-seven thousand); and

*Whereas*, the Parties hereto consider it in their as well as in the Company's best interest to agree and make provisions in advance on certain matters relating to the management of the Company's affairs;

**THEREFORE**, in consideration of the premises above, the Parties have agreed as follows:

**TERMS AGREED**

1    **Conditions Precedent**

The coming into effect of this Agreement is conditional upon the following:

1.1    The Equity Fund shall have:

(i)    completed, to its satisfaction, the financial and accounting and legal due diligence in respect of the Company;

(ii)    completed, to its satisfaction, its examination of the Company's insurance cover;

(iii)    completed, to its satisfaction, an environmental audit of the Company;

(iv)    completed, to its satisfaction, an examination of Riječki list's Articles of Association;

(v)    completed, to its satisfaction, its legal and financial due diligence examination of the provisions of the banking and financial agreements and arrangements to which the Company is a party, or by which its respective assets are bound; and

3

    (vi)    obtained the written approval of the Equity Fund's Board of Directors to enter into this Agreement.

1.2    Riječki list shall have obtained the written approval of its Management Board to enter into this Agreement.

1.3    The representations and warranties specified in Article 2 hereof shall each be true and correct in all material respects as of the date of this Agreement and, to the extent applicable, for as long as this Agreement is in force.

1.4    All the Agreements shall have been duly executed and none of the Agreements has terminated for any reason other than performance in full of any and all obligations by the parties thereto.

1.5    All the conditions precedent set forth in the Agreements shall have occurred.

**2    Representations and Warranties**

2.1    Riječki list's Representations and Warranties: As of the date hereof, Riječki list hereby warrants to the Equity Fund that, *inter alia*:

    (i)    the information given to the Equity Fund with respect to the Company and Riječki list is accurate in all respects and complete;

    (ii)    that the Balance Sheets, Income Statements and Cash Flow of the Company for 1996, 1997 and 1998 are accurate and complete;

    (iii)    that the Company has no undisclosed or hidden liabilities, nor has Riječki list made future commitments which are material to the future financial results of the Company;

    (iv)    that the Company and its subsidiaries has all the licenses, permits and authorities necessary to carry out its business;

    (v)    that the balance sheet as of 30 June 1999, is not materially different than the one identified in Item (ii) above;

    (vi)    that the Company has not materially increased its debt obligations since providing balance sheet information; and

    (vii)    that the Company has met its results, projected in the Business Plan submitted to and approved by the Equity Fund on the date first above written (the "Business Plan"), for the first six months of 1999 in terms of sales and operating profits.

Riječki list hereby acknowledges that the Equity Fund is relying upon the accuracy of each of the Representations and Warranties in connection with entering into this Agreement.

2.2  The Equity Fund's Representations and Warranties: The Equity Fund hereby warrants that it is a limited liability company, duly organized under the laws of the state of its incorporation, and that the subscription and payment by the Equity Fund of the increase of the Company's registered share capital and the resultant acquisition by the Equity Fund of the shares of the Company, as well as the execution of this Agreement, have been approved by the Equity Fund's Board and requires no further approval.

## 3  Corporate Governance

3.1  For as long as the Equity Fund shall have at least 10 % (ten per cent) of the Company's registered share capital, the Equity Fund shall have the right to nominate one person to be appointed to the Company's Supervisory Board and shall have the right to remove the person so nominated and appointed.

3.2  The Parties agree to and shall procure and vote at the Shareholders' Meeting of the Company (the "Shareholder's Meeting") that any person from time to time so nominated by the Equity Fund, shall be duly appointed to the Supervisory Board.

3.3  The Parties agree to procure that the Supervisory Board of the Company shall consist of 5 (five) members. The Parties agree to procure that 4 (four) thereof, including the President, shall be nominated by Riječki list, and 1 (one) by the Equity Fund.

## 4  Covenants

4.1  Each of Riječki list and the Equity Fund, in their capacity as the Company's shareholders, shall procure that any member of the Supervisory Board of the Company appointed pursuant to the nomination by Riječki list and/or the Equity Fund shall act and vote in relation to the affairs of the Company so as to ensure that neither the Equity Fund, Riječki list nor the Company is in breach of any of the undertakings given by it in this Agreement, in any of the Agreements or in the RBA Agreement, or in violation of the Articles of Association of the Company, attached hereto as Exhibit 2.

4.2  Following the completion of the open offer for shares of the Company to be made by Riječki list in accordance with the MoU, should any additional shares of the Company owned by parties other than Riječki list or the Equity Fund be made available for purchase, Riječki list and the Equity Fund shall act so that each purchases 50% of shares offered for sale. If one party declines to purchase all 50% of the shares available, the other party may freely purchase the remainder of the shares.

4.3.  Riječki list shall not sell, pledge, or otherwise transfer or hypothecate any shares of the Company that it presently holds or shall subsequently acquire until the earlier of (i) the

Equity Fund having sold all of its shares in the Company, or (ii) two years after Novi List has fully exercised the option, but in any case no later than December 31, 2012, without the prior written consent of the Equity Fund.

4.4. Any sale, pledge or other transfer or hypothecation of shares by the Equity Fund, other than pursuant to the Option Agreement, shall be subject to Riječki list's approval of the transferee; provided, however, that such approval shall not be unreasonably withheld. This right of approval shall automatically terminate upon the occurrence of any one of the following events:
 (i)   termination or expiration of the Option Ageement;
 (ii)  breach of this Agreement by Riječki list;
 (iii) breach of any of the Agreements; or
 (iv)  default under the RBA Agreement.

5. **Voting Powers**

5.1 The Parties agree that they shall meet at a preliminary meeting at least 15 days before the Shareholders' Meeting of the Company is to be convoked and discuss all the items to be brought before the Shareholders' Meeting (the "Preliminary Meeting"). Participation by means of a telephone conference or similar communications equipment allowing all persons participating in the meeting to hear each other at the same time shall constitute presence in person for the purposes of the Preliminary Meeting.

5.2 The Parties shall try to come to an agreement upon all decisions to be brought before the Shareholders' Meeting (the "Preliminary Decision") with their best efforts and acting in good faith. The prime aim of the Parties shall be the benefit of the Company. The Preliminary Decision binds the representatives of the Parties at the Shareholders' Meeting who shall vote at the Shareholders' Meeting according to the Preliminary Decision.

5.3 Whenever a matter is submitted to the Preliminary Meeting and the Parties are unable to reach the Preliminary Decision on the matter by reason of disagreement between the Parties hereto, then a deadlock shall be deemed to have occurred in relation to that matter. If and whenever a deadlock is deemed to have occurred or in the event of persisting mutual disagreements between the Parties over the Company's policy and the failure to resolve them at a meeting of the Parties called for the purpose of finding an amicable solution to such disagreements, each Party shall be free to cast its votes at the Shareholders' Meeting as it may see fit.

5.4 The Parties hereby acknowledge that they intend to have equal number of votes in the Shareholders' Meeting. Should Riječki list come to hold more voting shares in the Company than the Equity Fund, Riječki list hereby accepts to grant the Equity Fund a proxy to vote whatever number of Riječki list's shares are necessary to achieve parity in the number of votes held by Riječki list and the Equity Fund.

5.5 Except as the Parties may otherwise agree in writing or save as otherwise provided or contemplated in this Agreement, the Parties shall exercise their powers in relation to the Company so as to ensure that:

(a) the Company carries on and conducts its business and affairs in a proper and efficient manner and for its own benefit;

(b) the Company transacts all its business on arm's length terms;

(c) the Company shall not enter into any agreement or arrangement restricting its competitive freedom to provide and take goods and services by such means and from and to such persons as it may think fit;

(d) the Company shall maintain with a well established and reputable insurer adequate insurance against all risks usually insured against by companies carrying on the same or a similar business and (without prejudice to the generality of the foregoing) for the full replacement or reinstatement value of all its assets of an insurable nature;

(e) the Company shall not acquire, dispose of, hire, lease, license or receive licenses of any assets, goods, rights or services otherwise than at the best price reasonably obtainable in the circumstances;

(f) the Company shall keep books of account and therein make true and complete entries of all its dealings and transactions of and in relation to its business;

(g) the Company shall provide each Party with unaudited management accounts for each calendar quarter in a form acceptable to the Shareholders as soon as possible following their preparation;

(h) the Company shall prepare such accounts in respect of each accounting reference period as are required by the Articles of Association and procure that such accounts are audited as soon as practicable and in any event not later than two months prior the Annual Shareholders' Meeting;

(i) each accounting reference period of the Company shall be a period of 12 calendar months;

(j) the Company shall keep each of the Parties fully informed as to all its financial and business affairs;

(k) if the Company requires any approval, consent or license for the carrying on of its business in the places and in the manner in which it is from time to time carried on or proposed to be carried on, the Company will use its best endeavors to maintain the same in full force and effect;

(l) the Company shall make changes and improvements to its accounting department, accounting practices and accounting system to the Equity Fund's satisfaction;

(m) the Company shall not issue any new voting shares for as long as the Equity Fund remains a shareholder unless it shall have obtained the prior written consent of the Equity Fund;

(n) the Company shall not enter into a transaction or a series of transactions in an amount in excess of DEM 500,000 other than transactions described in the Business Plan;

(o) the Company shall not create or suffer to exist any debt, mortgage, pledge, lien, security interest or other charge or encumbrance, the value of which is DEM

500,000 or more, whether in one transaction or in a series of transactions, with respect to its assets;

(p) the Company shall not enter into any management contract or similar arrangement whereby its business or operations are managed by any other person;

(q) the Company shall not make changes, or permit changes to be made, to the nature of its present business;

(r) the Company shall not merge or consolidate with any person or entity, or sell, assign, lease or otherwise transfer or dispose of, whether in one transaction or in a series of related transactions, all or a substantial portion of its assets; and

(s) the Company shall not change its capital, including any increase or decrease in its share capital, redenomination, or splits of shares, or any action which might result in the dilution of the value of the shares.

5.4 The Parties hereto agree that the Equity Fund shall not interfere in the editorial policy of the Company, but it shall support and vote for any editorial decisions of Riječki list.

5.5 Each Party shall use all reasonable and proper means in its power to maintain, improve and extend the business of the Company and its subsidiaries and to further the reputation and interests of the Company and its subsidiaries

## 6   Confidentiality and Exclusivity

Unless otherwise required by law or legal injunction, the Parties shall preserve at all times strict confidentiality regarding the contents and the existence of this Agreement as well as regarding all strategic issues related to the Company.

## 7   Duration

7.1 The terms and conditions set forth in the Agreement shall remain in full force and effect for so long as the Parties continue to hold their shares of the Company. With exception of Section 6, the provisions of the Agreement shall cease to be applicable to such Party which has duly transferred all of its shares pursuant to the Agreement.

7.2 Notwithstanding the foregoing, the Equity Fund shall have the right at its option to terminate this Agreement upon the breach or termination of any of the Agreements or the Company's default under the RBA Agreement.

## 8   Successors and Assigns

This Agreement shall be personal to the Parties hereto and may not be assigned by any party without the prior written consent of the other Party, provided, however, that such consent shall not be unreasonably withheld. Prior to any assignment, the assignee shall agree in writing to be bound by the transferring Party's obligations under this Agreement.

**9    Entire Agreement and Variation**

This Agreement contains the entire agreement between the Parties relating to the subject matter of this Agreement and no variation of this Agreement shall be effective unless in writing and signed by or on behalf of each of the Parties.

**10    Costs**

The Parties agree to procure that the Company shall bear all legal, accountancy, financial advisor, consultant and other fees and costs incurred in the Republic of Croatia in connection with the preparation and negotiation of this Agreement. If the Parties fail to procure that the Company cover such cost, each Party shall bear it own costs in connection with the preparation and negotiation of this Agreement.

**11    Notices**

11.1    All notices which are required to be given in connection with this Agreement or with any arbitration under this Agreement, shall be in writing and shall be sent to the address of the recipient set out in this Agreement or in any such other address as the recipient may designate by a given notice in accordance with the provisions of this Section. Any such notice may be delivered personally or by first class prepaid letter or facsimile transmission and shall be deemed to have been served if by personal delivery when delivered and if by first class post 48 hours after posting and if by facsimile transmission upon confirmation report.

11.2    All notices and other communications between the Parties shall be sent to the following addresses:

in the case of Riječki list:
Address: Zvonimirova 20a, 51000 Rijeka, Croatia
Attn: Zdenko Mance
Tel: (385 51) 65 00 12
Fax: (385 51) 65 00 32

in the case of the Equity Fund:
Media Development Equity Fund
Address: 45 West 21st Street, 4th floor, New York, NY 10010, USA
Attn: Harlan M. Mandel
Tel: 1 (212) 807 1304
Fax: 1 (212) 807 0540

**12    Counterparts**

This Agreement is entered into 3 (three) counterparts, each of which when signed shall be an original, but all counterparts shall together constitute one and the same document.

13   Severability

13.1  Notwithstanding that any provision of this Agreement may prove to be illegal or unenforceable, the remaining provisions of this Agreement shall continue in full force and effect.

13.2  If any of the provisions of this Agreement shall be declared or become null and void or be held invalid or unenforceable, such void, invalid or unenforceable provision, as the case may be, shall immediately be replaced by another provision to be agreed upon by the Parties, valid in form and substance and which shall in a legally correct manner accomplish as nearly as possible the purpose and intent of the void, invalid or unenforceable provision with regard to the interests of the Parties.

14   Governing Law and Settlement of Disputes

14.1  This Agreement shall be governed by and construed in accordance with the laws of the State of New York. The language of this Agreement shall be the English language.

14.2  Riječki list hereby (i) irrevocably submits to the non-exclusive jurisdiction of any New York State Court in the County of New York or United States District Court for the Southern District of New York (the "Federal Court") in any action or proceeding arising out of or relating to this Agreement, (ii) waives any objection or defense based on doctrines of venue or forum nonconvenience or similar rules or doctrines, and (iii) irrevocably agrees that all claims in respect of such an action or proceeding may be heard and determined in such New York State Court or Federal Court. Riječki list and the Equity Fund waive any right to trial by jury in any action, proceeding, or counterclaim arising out of or relating to this Agreement.

14.3.  Riječki list hereby irrevocably and unconditionally appoints National Corporate Research, Ltd. (the "New York Process Agent") with an office on the date hereof at 225 West 34th Street, New York, New York 10122, as its agent to receive on behalf of Riječki list and its property service of copies of the summons and complaint and any other process which may be served in any such action or proceeding in any such New York State Court or Federal Court and agrees promptly to appoint a successor New York Process Agent in the County of New York, State of New York which successor Process Agent shall accept such appointment in writing prior to the termination for any reason of the appointment of initial New York Process Agent and that such Process Agents will accept the appointment in writing and consent to the terms hereof and Riječki list will deliver evidence of the foregoing to the Equity Fund together with the name and address of any successor Process Agent. In any such action or proceeding in such New York State Court or Federal Court, such service may be made on Riječki list by delivering a copy of such process to Riječki list in care of the appropriate Process Agent at such Process Agent's address (such service to be effective upon such receipt by the appropriate Process Agent). Riječki list hereby

irrevocably and unconditionally authorizes and directs such Process Agent to accept such service on its behalf. As an alternate method of service, Riječki list irrevocably and unconditionally consents to the service of any and all process in any such action or proceeding in such New York State or Federal Court by mailing of copies of such process to the Company, by certified or registered air mail at its address referred to in Section 11.2. Riječki list agrees that, to the fullest extent permitted by applicable law, a Final Judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the Judgment or in any other manner provided by law. Nothing herein shall affect the right of the Equity Fund to service of process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against Riječki list in any other jurisdiction.

14.4. The Equity Fund may, in its sole discretion, as an alternative to litigation elect to arbitrate any claim or dispute arising out of or relating to this contract or the validity thereof against Riječki list in accordance with the commercial arbitration rules of the American Arbitration Association by a sole arbitrator. In the event that the lender elects arbitration, Riječki list hereby consents to submit the dispute to such arbitration. Riječki list may not elect arbitration without the consent of the Equity Fund and is bound by the Equity Fund's election as between litigation and arbitration. The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. Section 1-16, and judgment upon the award rendered jurisdiction by the arbitrator may be entered by any court having jurisdiction thereof as limited herein. The place of arbitration shall be in the County of New York, State of New York. The language of arbitration shall be the English language. The arbitrator is empowered to award damages in excess of compensatory damages. Riječki list agrees that, to the fullest extent permitted by applicable law, a final award in any such arbitration shall be conclusive and may be enforced in other jurisdictions by suit on the award or in any other manner provided by law.

14.5 Nothing in this provision shall be deemed to (i) limit the applicability of any otherwise applicable statutes of limitation or repose and any waivers contained in this provision; or (ii) limit the right of the Equity Fund hereto (a) to exercise self help remedies such as (but not limited to) setoff, or (b) to foreclose against any real or personal property collateral, or (c) to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief, writ or possession or the appointment of a receiver. The Equity Fund may exercise such self help rights, foreclose upon such property, or obtain such provisional or ancillary remedies before, during or after the pendency of any arbitration proceeding brought pursuant to this Agreement. Neither this exercise of self help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies shall constitute a waiver of the right of any party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning resort to such remedies.

11

14.6. If Riječki list has or hereafter may acquire any immunity, on the grounds of sovereignty or other similar grounds, from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution or otherwise) with respect to itself or its property, Riječki list hereby irrevocably waives such immunity in respect of its obligations under this Agreement.

**Riječki list**

By: _____

Name: Zdenko Mance

Title: Director

Date: OCTOBER 28, 1999

RIJEČKI LIST d.o.o.
Rijeka, Zvonimirova 20a

**Media Development Equity Fund, LLC**

By: _____

Name: Kenneth Anderson

Title: Chairman

Date: OCTOBER 28, 1999

12

## Exhibit 1

## Memorandum of Understanding

Media Development Loan Fund ("MDLF"), Media Development Equity Fund, LLC ("Equity Fund"), Novi List d.d. ("Novi List") and Riječki list, d.o.o. ("Riječki list") (together, the "Parties") hereby agree as follows:

WHEREAS, Novi List is purchasing a new printing press and upgrading its printing facility;

WHEREAS, in order to consolidate the ownership of Novi List, the management of Novi List has established Riječki list to collect shares in Novi List;

WHEREAS, the members of Riječki list will transfer or have transferred all their shares of Novi List to Riječki list;

WHEREAS, Riječki list has purchased or will purchase the treasury shares held by Novi List;

WHEREAS, Riječki list intends to make an open offer to all other Novi List shareholders to purchase their shares in Novi List (the "Open Offer");

WHEREAS, in order to facilitate said consolidation of ownership, Riječki list wishes to borrow funds from MDLF for the purchase of Novi List shares;

WHEREAS, Equity Fund is fully owned and controlled by MDLF;

WHEREAS, in order to fund the upgrading of Novi List's printing facility and to further facilitate the consolidation of ownership in Novi List, Novi List wishes to issue new shares for purchase by Equity Fund, and possibly by Riječki list;

WHEREAS, MDLF wishes to provide Novi List the assistance described above in the form of two program related investments, one a loan to Riječki list from MDLF and the other an equity investment in Novi List by Equity Fund;

WHEREAS, to effectuate the two program related investments, the Parties intend to finalize a Credit Agreement between Riječki list and MDLF attached hereto as Exhibit 1 (the "Credit Agreement"), a Shareholders Agreement between Riječki list and Equity Fund attached hereto as Exhibit 2 (the "Shareholders Agreement"), a Share Subscription Agreement between Novi List and Equity Fund attached hereto as Exhibit 3 (the "Share Subscription Agreement"), and an Option Agreement (the "Option Agreement") between Novi List and Equity Fund attached hereto as Exhibit 4;

WHEREAS, to fund the purchase of the printing press, Novi List has entered into a Foreign Exchange Loan Facility and Guarantee Agreement dated August 19, 1999, with Raiffeisenbank Austria d.d, Soros Economic Development Fund ("SEDF"), Karlovački List d.o.o. and Adamić d.o.o. (the "RBA Agreement"); and

WHEREAS, for the benefit of Novi List, MDLF has guaranteed to SEDF that MDLF will reimburse to SEDF any funds it must pay pursuant to the guarantee provisions of the RBA Agreement;

THEREFORE,

A.   <u>Capital Increase</u>

13

1. <u>Subscription of Shares</u>: Pursuant to a Share Subscription Agreement to be negotiated by Novi List and MDLF, Novi List will issue and Equity Fund will purchase 18,190 new shares (which will bring the total number of Novi List shares to 60,000). Equity Fund will pay 100 DEM per share, for a total of 1,819,000 DEM. The nominal value of the shares shall be 300 Croatian kunas.

2. <u>Option to Repurchase Shares</u>: Equity Fund and Novi List will enter into an Option Agreement to be negotiated by the Parties, which will give Novi List an option to purchase up to 2/3 of the shares in Novi List to be purchased by Equity Fund under Section A.1 above. Novi List will not be able to exercise this option before the later of (a) one year after Riječki list completes repayment of its loan from MDLF (described below) or (b) Novi List satisfying all its obligations under the RBA Agreement. The option will expire on December 31, 2010. Equity Fund will not be permitted to sell this portion of the shares until expiration of the option, unless the Option Agreement has terminated earlier. The purchase price for those shares shall be determined by the Parties on the following basis:

   a. Novi List and Equity Fund will agree on the market value of the shares at the time of Equity Fund's purchase and at the time Novi List exercises its option. The percentage change in market value over that period of time (the "Multiplier") will then be calculated.

   b. The Multiplier then will be multiplied by the actual price paid by Equity Fund for the shares to arrive at the Calculated Option Share Value, which shall be the Exercise Price to be paid by Novi List for the shares, except that the Exercise Price shall in no case fall below a Minimum Option Share Value or above a Maximum Option Share Value.

   c. To arrive at the Minimum Option Share Value, the actual price paid by Equity Fund per share shall be increased at a rate equal to LIBOR plus 2%, compounded annually over the period of Equity Fund's ownership. To arrive at the Maximum Option Share Value, the actual price paid by Equity Fund per share shall be increased at a rate equal to 10% compounded annually over that period.

3. <u>Sale of Shares</u>: The Option Agreement shall provide that Equity Fund will be free to keep its ownership of the remaining 1/3 of its shares or to sell them as it sees fit. However, the Option Agreement will provide that Equity Fund may not sell before the earlier of (a) the date on which Novi List begins to exercise its option to purchase shares from Equity Fund or (b) June 30, 2009. Riječki list will have a right to approve the purchaser. Riječki list shall not unreasonably withhold such approval.

4. <u>Access to Financial Records</u>: The Option Agreement shall provide that Equity Fund shall on demand be given reasonable access to Novi List's books and other financial records.

5. <u>Approval of Equity Fund</u>: The Option Agreement shall provide that, until the earlier of (a) Equity Fund selling all its shares in Novi List or (b) two years after Novi List has fully exercised the option, but in any case no later than December 31, 2012, Novi List must obtain the written approval of Equity Fund and Riječki list in order to do any of the following:

   i) amend the Charter of Novi List;
   ii) reorganize Novi List;
   iii) liquidate Novi List;
   iv) increase Novi List's charter capital;
   v) issue additional voting shares in Novi List;
   vi) engage in transactions above 500,000 DEM which were not included into the Business Plan accepted by MDLF;
   vii) enter into debts, liens, and other obligations above 500,000 DEM;

6. <u>Termination of Option</u>: The Option Agreement shall provide that, if Riječki list or Novi List breaches the Credit Agreement, Shareholders Agreement or Option Agreement, or defaults under the RBA Agreement, Novi List's option and all restrictions on Equity Fund's sale of its shares will immediately terminate, and Equity Fund will be free to sell 100% of its shares as it sees fit.

14

7. <u>Improvements to Accounting System</u>: The Option Agreement will require Novi List to change and improve its management accounting system to MDLF's satisfaction.

B. <u>Loan to Riječki list</u>

1. <u>Loan Amount; Loan Purpose</u>: MDLF will loan up to EURO 970,000 to Riječki list (the "Loan") for the purchase of Novi List shares as follows:

   a. Prior to the Open Offer, Riječki list shall be acquiring from its members their shares in Novi List (the "Member Shares"), as well as all the treasury shares currently held by Novi List (the "Treasury Shares"). Payment for those share acquisitions shall not be due until after completion of the Open Offer.

   b. Riječki list initially shall use the entire Loan proceeds for part of the deposit for the Open Offer required under the Croatian Law on Takeover. The Loan proceeds then shall be drawn down for the purchase of Novi List shares pursuant to the Open Offer.

   c. Following conclusion of the Open Offer, Riječki list shall use any remaining Loan proceeds to pay for the Member Shares and the Treasury Shares.

   d. After conclusion of all the above purchases, the remainder of the Loan proceeds shall be used for the purchase of additional shares to be newly issued by Novi List (the "Additional Shares"). The Additional Shares shall be priced at 100 kuna per share, and their total cost shall be equal to the remainder of the Loan proceeds. To the extent the issuance of the Additional Shares would reduce Equity Fund's ownership in Novi List below 30%, the Additional Shares shall be divided among Riječki list and Equity Fund so as to maintain Equity Fund's 30% ownership interest. In such case, Riječki list shall immediately repay to MDLF the portion of the Loan proceeds equal to the cost of the Additional Shares to be purchased by Equity Fund.

2. <u>Interest Rate</u>: The loan will bear interest at a rate of 2% per annum.

3. <u>Repayment Schedule</u>: Assuming the full EURO 970,000 is borrowed, the principal repayment schedule will be:

   | | |
   |---|---|
   | June 30, 2002 | EURO 48,500 |
   | June 30, 2003 | EURO 145,500 |
   | June 30, 2004 | EURO 194,000 |
   | June 30, 2005 | EURO 194,000 |
   | June 30, 2006 | EURO 194,000 |
   | June 30, 2007 | EURO 194,000 |

   This repayment schedule is intentionally coordinated with the timing of Novi List's option to purchase shares from Equity Fund, so that Novi List will not be able to exercise its option until after the loan has been fully repaid. The funds for Riječki list's repayment of principal and interest will come from dividends paid to Riječki list by Novi List, which will require Novi List to issue sufficient dividends to Riječki list to cover the repayments. The Credit Agreement will require Riječki list to obtain MDLF's approval before borrowing funds in any manner from any sources or increasing its capital.

4. <u>Early Repayment</u>: Riječki list will have the right to repay the loan early without penalties. All prepayments shall be applied first to installment payments of principal on the Loan in the inverse order of maturity and then to interest accrued but unpaid to the date of such prepayment. The minimum prepayment amount shall equal 20% of the full loan amount.

5. <u>Timing of Loan Disbursal</u>: Prior to the Open Offer.



15

6. <u>Security</u>: The loan will be secured by a pledge of the following Riječki list's shares in Novi List: (a) the shares purchased with the proceeds of the Loan, and (b) any shares transferred to Riječki list by its members.

7. <u>Default</u>: In addition to standard events of default, the Credit Agreement shall provide that a breach of the Option Agreement or Shareholders Agreement by Novi List or Riječki list, respectively, or default by Novi List under the RBA Agreement, shall constitute an Event of Default.

8. <u>Standard Credit Agreement Terms</u>: The Credit Agreement shall be in the form of MDLF's standard credit agreement, similar to that previously executed by Novi List and MDLF.

C. **Formation of Riječki list**

1. <u>Form</u>: Riječki list will be formed as a Croatian Limited Liability Company.

2. <u>Controlling Transfers of Stock</u>: Riječki list's Charter (the "Charter") shall provide that upon a member notifying Riječki list of an intent to sell or otherwise transfer stock, a meeting of members will be called to decide whether (a) to allow the sale or other transfer, (b) to have Riječki list purchase the stock, (c) to require that the stock be sold on a pro rata basis to all existing members who will meet the offered price, or (d) to a different third party than the one proposed by the seller.

3. <u>Pledge of Shares</u>: The Charter shall prohibit members from pledging or otherwise hypothecating their shares without written authorization of Riječki list.

4. <u>Distribution of Revenues</u>: The Charter shall provide that there will be no payment of dividends or other distribution of revenues (such as loans) to members and employees before payment of all currently due debts, and that distributions to members may be carried out only from net profits.

5. <u>Power to Decide How to Vote Shares in Novi List</u>: The Charter shall provide that this power will rest with a simple majority of the Meeting of Members.

D. **Shareholders Agreement**

1. <u>Shareholders Agreement</u>: Riječki list and Equity Fund shall enter into a binding Shareholders Agreement that will govern their votes as shareholders of Novi List as set forth below.

2. <u>Editorial Policy</u>: The Shareholders Agreement shall provide that Equity Fund will not interfere in the editorial policy of Novi List, but will support and vote for any editorial decisions of Riječki list.

3. <u>Voting</u>: The Shareholders Agreement shall provide that Equity Fund and Riječki list shall consult on all other matters requiring the vote of Novi List's shareholders, shall only vote their shares by mutual agreement, and shall always vote in unison. The Shareholders Agreement shall, however, provide a mechanism for avoiding deadlock.

4. <u>Purchase of Shares Coming to Market</u>: The Shareholders Agreement shall provide that, following completion of the Open Offer, when opportunities arise for purchasing additional shares from other shareholders, Riječki list and Equity Fund shall each have the right to purchase 50% of the offered shares. Equity Fund's right to participate in these purchases shall terminate when it has sold all its shares in Novi List. Equity Fund's sale of these shares will be subject to the same restrictions as in Paragraph A.3 above.

5. <u>Sale of Shares by Riječki list</u>: The Shareholders Agreement shall provide that, until the earlier of (a) Equity Fund selling all its shares in Novi List or (b) two years after Novi List has fully exercised the option, but in any case no later than December 31, 2012, Riječki list will be prohibited from selling, pledging or otherwise transferring or hypothecating any shares it holds or comes to hold in Novi List without written authorization from Equity Fund.

6.  <u>Voting Rights in Novi List</u>: It is intended that Equity Fund will have at least the same number of voting rights in Novi List as Riječki list. However, depending on the number of Novi List shares that Riječki list is able to collect as Treasury Shares and from its shareholders, and purchase by means of the Open Offer, it is possible that Riječki list will hold more shares than Equity Fund. The Shareholders Agreement shall provide that, in such a case, Riječki list will give Equity Fund a proxy to vote whatever number of Riječki list's shares in Novi List is required to achieve parity.

7.  <u>Nomination of Supervisory Board</u>: The Shareholders Agreement shall provide that Riječki list and Equity Fund will use their votes as shareholders of Novi List to ensure that the Supervisory Board of Novi List shall have five members, that four members thereof, including the President, shall be nominated by Riječki list, and that one member thereof shall be nominated by Equity Fund.

E.  <u>General</u>

1.  <u>Additional Terms</u>: The Parties agree that the purpose of this Memorandum of Understanding is to set forth their mutual understanding of the central elements of the matters addressed herein, and that the other details of these matters remain to be negotiated and finalized. The Parties will enter into negotiations on the detailed terms of the Share Subscription, Option, Credit and Shareholders Agreements referenced herein. Unless and until the Parties negotiate and agree on all the terms of said Agreements and execute them, neither party is bound by this agreement to effectuate any of the matters addressed herein.

2.  <u>Timing</u>: The Parties agree to use their best efforts to finalize the terms of the Subscription, Option, Credit and Shareholders Agreements referenced herein no later than October 10, 1999. All the attached agreements and any related documents shall be executed concurrently by Novi List, Riječki list, MDLF, and Equity Fund following any required approvals from the shareholders of Novi List and members of Riječki list.

MEDIA DEVELOPMENT LOAN FUND

By _____
Harlan M. Mandel
Deputy Managing Director

Date: October ____, 1999

MEDIA DEVELOPMENT EQUITY FUND

By _____
Kenneth Anderson
Chairman
Date: October ____, 1999

NOVI LIST D.D.

By _____
Zdenko Mance
Director

Date: October ____, 1999

RIJEČKI LIST D.O.O.

By _____
Zdenko Mance
Director
Date: October ____, 1999

17

**Exhibit 2**

**Articles of Association**

attached