UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

MEDIA DEVELOPMENT EQUITY FUND, A NEW
YORK LIMITED LIABILITY COMPANY,

                                        Plaintiff,

                        - against -                                    **07 Civ. 3624 (PKL)**

NOVI LIST D.D., A JOINT STOCK COMPANY
ORGANIZED UNDER THE LAWS OF THE
REPUBLIC OF CROATIA,

                                        Defendant.

-----------------------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

LOVELLS LLP

Edward T. Schorr (ES-0290)
Gonzalo S. Zeballos (GZ-5994)
Derek J. Craig (DC-0999)
590 Madison Avenue
New York, New York 10022
Tel: (212) 909-0600
Fax: (212) 909-0660
*Attorneys for Defendant Novi list d.d.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 4

ARGUMENT ................................................................................................................................ 4

I.    THE LAW AND THE FACTS NEGATE ANY ASSERTION OF DEFAULT UNDER
THE JANUARY 29, 2007 NOTICES ............................................................................... 4

    A.    The Contract Documents Simply Do Not Give MDEF the Rights It Asserts ........ 5

    B.    The January 29, 2007 Notices Were Invalid as a Matter of Fact and Law ............. 9

    C.    The Covenant of Good Faith and Fair Dealing Negates MDEF's and MDLF's
Alleged Default Notices ..................................................................................... 12

II.    MDEF HAS FAILED TO MEET ITS BURDEN OF PROVING THAT THE
EVENTS OF DEFAULT ALLEGED IN ITS SECOND COUNT HAVE EVER
TAKEN PLACE ............................................................................................................. 16

III.    MDEF HAD NOTICE OF THE AUGUST 3, 2007 SHAREHOLDERS' MEETING
AND THERE WAS NO BREACH .................................................................................. 19

CONCLUSION .......................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.,*
No. 02 Civ. 1363 (PKL), 2003 WL 21203503 (S.D.N.Y. May 22, 2003) .............................. 15

*Ashland Mgmt. Inc. v. Janien,*
604 N.Y.S.2d 912 (1993) ......................................................................................................... 15

*Bluffs Homeowners' Assoc., Inc. v. Frador Mktg., Inc.,*
809 N.Y.S.2d 329 (4th Dep't 2006) .......................................................................................... 6

*Carvel Corp. v. Diversified Mgmt. Group, Inc.,*
930 F.2d 228 (2d Cir. 1991) .............................................................................................. 12, 16

*Chertkova v. Conn. Gen. Life Ins. Co.,*
92 F.3d 81 (2d Cir. 1996) .......................................................................................................... 4

*Creative Waste Mgmt., Inc. v. Capitol Envt'l Servs., Inc.,*
429 F. Supp. 2d 582 (S.D.N.Y. 2006) ..................................................................................... 16

*Fabcon E., L.L.C. v. Steiner Bldg. Co. NYC, L.L.C.,*
814 N.Y.S.2d 561, 2005 WL 3592002 (Sup. Ct. Kings Co. 2005) .......................................... 15

*Gibson v. Am. Broad. Cos.,*
892 F.2d 1128 (2d Cir. 1989) .................................................................................................... 4

*Gordon v. Dino De Laurentiis Corp.,*
529 N.Y.S.2d 777 (1st Dep't 1988) ......................................................................................... 22

*Home & City Sav. Bank v. Rose Assocs. I, L.P.,*
572 N.Y.S.2d 458 (3d Dep't 1991) .......................................................................................... 16

*Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.,*
933 F. Supp. 347 (S.D.N.Y. 1996) .......................................................................................... 13

*Kel Kim Corp. v. Central Markets, Inc.,* 524 N.Y.S.2d 384 (1987) ............................................. 17

*Knudsen v. Quebecor Printing (U.S.A.) Inc.,*
792 F. Supp. 234 (S.D.N.Y. 1992) .......................................................................................... 14

*LaSalle Bank Nat. Ass'n v. Merrill Lynch Mortg. Lending, Inc.,*
No. 04 Civ. 5452 (PKL), 2007 WL 2324052 (S.D.N.Y. Aug. 13, 2007) ................................... 4

*Marmer Bros. Constr., LLC v. Midwest Steel, Inc.,*
No. 99 Civ. 11681 (SAS), 2000 U.S. Dist. LEXIS 13381 (S.D.N.Y. Sep. 18, 2000) .............. 13

*McClellan v. Smith,*
439 F.3d 137 (2d Cir. 2006) ...................................................................................................... 4

*Miller v. Forge Mench P'Ship, Ltd.,*
No. 00 Civ. 4314 (MBM), 2001 U.S. Dist. LEXIS 13046 (S.D.N.Y. Aug. 28, 2001) .............. 13

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*,
    182 F.3d 157 (2d Cir. 1999) ...................................................................... 4, 16, 21

*O'Shanter Resources, Inc. v. Niagara Mohawk Power Corp.*,
    915 F. Supp. 560 (W.D.N.Y. 1996) ............................................................... 16

*Point Productions A.G. v. Sony Music Entertainment, Inc.*,
    No. 93 Civ. 4001 (NRB), 2000 U.S. Dist. LEXIS 10066 (S.D.N.Y. July 19, 2000).............. 20

*Travellers Int'l AG v. Trans World Airlines, Inc.*,
    722 F. Supp. 1087 (S.D.N.Y. 1989) ............................................................... 14

*Tripodo v. Chase Manhattan Bank, N.A.*,
    576 N.Y.S.2d 760 (N.Y. City Ct. 1991) ........................................................... 14

*Vineyard v. Martin*,
    29 N.Y.S.2d 935 (Sup. Ct. N.Y. Co. 1941) ...................................................... 13

*Zuckerwise v. Sorceron Inc.*,
    735 N.Y.S.2d 100 (1st Dep't 2001) .............................................................. 9, 14

## Statutes

Fed. R. Civ. P. 56 ........................................................................................ 1

Fed. R. Civ. P. 56(c) .................................................................................... 4

## Other Authorities

*Black's Law Dictionary* (6th ed. 1990) .............................................................. 6

iii

Defendant Novi list d.d. ("Novi list") hereby submits this memorandum of law in opposition to Plaintiff Media Development Fund LLC's ("MDEF") motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Novi list respectfully requests that this Court deny the relief sought by MDEF in its entirety. Although Novi list has not cross-moved for summary judgment, Rule 56 nevertheless allows the Court to search the record and grant partial summary judgment to Novi list for certain of the reasons set forth below.

## PRELIMINARY STATEMENT

This case is a battle for control of a politically significant Croatian newspaper. It is also an attempt by the newspaper's financial backer to reap a windfall, even if it means depriving the newspaper's employee-shareholders of their rights to repurchase their shares at an agreed option price.

The newspaper in question, Novi list, led by Zdenko Mance, was an important independent voice during the politically difficult years following the Yugoslavian civil wars and the Croatian declaration of independence. Leading an opposition newspaper at that time was difficult, and by the end of the semi-authoritarian rule of Croatian president Franjo Tuđman, Novi list was one of the few surviving independent news organizations in Croatia. But Novi list did not emerge unscathed. The Tuđman regime made life difficult for the paper, which found itself lacking modern printing facilities and without access to foreign or domestic capital. It was in this period that the Open Society Institute, a charitable organization funded by George Soros and a client of Novi list, suggested that another Soros entity, the Media Development Loan Fund ("MDLF"), could help Novi list gain access to much-needed financing.

MDLF, through a subsidiary specially created for the purpose of investing in Novi list, MDEF, provided loans to help Novi list acquire new printing facilities and to consolidate ownership of the newspaper into a holding company called Riječki list d.o.o. ("Riječki list").

MDLF loaned money under a Credit Agreement to Riječki list to help finance Riječki list's purchases of shares of Novi list. Additionally, Novi list agreed to allow MDEF to purchase a 30% stake in Novi list at a 60% discount from the audited book value of those shares. An Option Agreement agreed to between Novi list and MDEF provided that Novi list could eventually buy back 2/3 of the same shares it sold to MDEF, at below-market prices, within one year after Riječki list repaid the money borrowed from MDLF.

For seven years the parties' relationship was a model of success. Today, Novi list remains an important independent Croatian newspaper that, despite its provenance from outside the capital region, is read nationally.

Earlier this year, following problems stemming from an unsound business arrangement with a Novi list competitor that embarrassed and alienated Novi list's journalists and editors, as well as harmed the paper's reputation, Novi list's supervisory board[1] dismissed Mr. Mance's successor to the Novi list helm, the underperforming Mr. Zoran Borčić. It was then that the problems between Novi list and MDEF began, as Mr. Borčić had become an ally of MDEF. While MDEF claims to want to foster the independence of Novi List's supervisory board, the opposite is true.

In response to Mr. Borčić's termination, MDEF attempted to terminate the Option Agreement between MDEF and Novi list. MDEF sought to terminate that agreement not on the basis of any actual breach, but on MDEF's self-appointed right to terminate by writing a letter claiming the existence of a breach. Discovery will show that MDEF acted with full knowledge that its claims of a breach were baseless.

MDEF seeks to terminate the Option Agreement after Novi list has complied with all of

---

[1] The supervisory board of a Croatian company is roughly equivalent to the board of directors of a United States company.

2

its obligations under the various agreements with MDEF and MDLF. In so doing, MDEF apparently seeks to punish Novi list for dismissing an employee favored by MDEF. The record to date shows that the actual facts in this case are very different from what MDEF purports them to be. Moreover, neither the plain language of the Option Agreement nor the applicable law supports MDEF's position in this litigation. There has been no breach by Novi list or non-party Riječki list of any of the relevant agreements.

It must also be made clear that this is not a case of a small charity struggling to make good on a deal with a large corporation, as MDEF appears to suggest. MDEF, backed by George Soros and others, enjoys a power and security that could only be dreamt of by Novi list. Indeed, the terms of the various agreements between MDLF and MDEF on the one hand, and Riječki list and Novi list on the other, were more or less ordained by MDLF and MDEF on a "take or leave it" basis.

MDEF has watched the value of its relatively small initial investment in Novi list appreciate more than 1,000% in just over seven years, and that figure is still rising. Having extracted full performance from Novi list and Riječki list of their various contractual obligations, as well as a windfall profit for its below market investment in Novi list, MDEF now seeks to deprive Novi list of Novi list's contractual right to exercise an option to buy back 2/3 of the shares originally sold to MDEF at a below market price. And it does so even though MDEF would still profit handsomely from a sale of shares to Novi list at the option price. MDEF's actions are all the more astonishing in light of the fact that MDLF's loan to Riječki list has been fully repaid—with interest. This Court should not countenance MDEF's attempt to extract an additional windfall profit from Novi list through a pretextual termination effort.

3

## STATEMENT OF FACTS

Defendant Novi list respectfully refers the Court to the declarations of Mr. Zdenko Mance, Mr. Tin Doličkí, and Mr. Goran Drenjak, which set forth the relevant facts, together with Defendant's Counter-Statement in Opposition to Plaintiff's Rule 56.1 Statement and the Rule 56(f) Declaration of Edward T. Schorr.

## ARGUMENT

The standard is well-known:  Summary judgment is appropriate only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).[2]

Any decisions requiring a choice between conflicting versions of events or the weighing of evidence cannot be made on summary judgment and must be left for the fact finder. *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006).  The Court's role is to determine whether triable issues of fact exist based on the record presented by the parties, not to resolve such disputed matters. *Gibson v. Am. Broad. Cos.*, 892 F.2d 1128, 1132 (2d Cir. 1989).

## I.    THE LAW AND THE FACTS NEGATE ANY ASSERTION OF DEFAULT UNDER THE JANUARY 29, 2007 NOTICES

MDEF's principal grounds for asserting default are the two January 29, 2007 notices, one to non-party Riječki list and the other to Defendant Novi list.

On the law, the contract documents do not give MDEF the termination rights it asserts. On the facts, the evidence adduced to date by Novi list shows that no breach in fact occurred.

---

[2]  A dispute regarding an issue of fact is "genuine" if "the evidence is such that a jury could return a verdict for the nonmoving party." *LaSalle Bank Nat. Ass'n v. Merrill Lynch Mortg. Lending, Inc.*, No. 04 Civ. 5452 (PKL), 2007 WL 2324052, *7 (S.D.N.Y. Aug. 13, 2007) (citations and internal quotation marks omitted) (Leisure, J.).  As the moving party, MDEF bears the "heavy burden" of proving the absence of material issues of fact. *See Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2d Cir. 1999).  Any and all ambiguities and inferences must be drawn in favor of the non-moving party. *See Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

The facts further indicate that the key documents—the January 29, 2007 Notices of Default and Termination—were not sent in good faith.  Evidence in the sole possession of MDEF and MDLF is likely to establish that the notices were sent in actual bad faith.

### A.    The Contract Documents Simply Do Not Give MDEF the Rights It Asserts

MDEF bases its motion on Section 7.2 of the Option Agreement (Mandel Decl., Ex. D), which provides that a "notice of default" sent by non-party MDLF to non-party Riječki list under the Credit Agreement is "sufficient evidence" of a breach of that agreement.  According to MDEF, under this "sufficient evidence" clause, the merits and even the good faith of its January 29, 2007 Notice of Termination (Mandel Decl., Ex. F) and MDLF's Notice of Default (Mandel Decl., Ex. E) are beyond the scope of any judge's review.  According to MDEF, the mere sending of MDLF's default notice forecloses judicial inquiry.  (Pl.'s Mem. 14-16.)

As shown below, the contract documents do not give MDEF such rights.  Section 7.2 of the Option Agreement provides in pertinent part:

> For the purposes of this Article 7.2, a copy of the notice of default
> by MDLF to [Riječki list] shall constitute <u>sufficient evidence</u> of
> any such breach.

(Emphasis added.)    The contract says "sufficient evidence."    It does <u>not</u> say "conclusive evidence."  It does <u>not</u> say "irrefutable evidence."  That language would have been easy to write, but it was <u>not</u> chosen and it was <u>not</u> agreed to.  The contract likewise could have been written to provide for termination at will.  It was <u>not</u> so written, and it was <u>not</u> so agreed to.

The language regarding "sufficient evidence" appears to be unique to this contract.  Novi list has found no case law nationwide (and neither has MDEF) construing such language in the context of a contract termination such as that here.  On its face, the term "sufficient evidence" should be construed as equivalent in meaning to the well-known term "prima facie evidence."

5

*Black's Law Dictionary* 1433 (6th ed. 1990) (defining "sufficient evidence" to be synonymous with "prima facie" evidence and stating that the term is "not synonymous with 'conclusive'" evidence).

The concept is well-known that a plaintiff must present "prima facie evidence" or be dismissed at the close of his case. However, it is equally well-known that a plaintiff who has presented prima facie evidence is not therefore entitled to a directed verdict. If the defendant persuasively rebuts the evidence, the plaintiff will lose.

The same is true under these contracts. The contract language about "sufficient evidence" merely allows MDEF to establish a prima facie case by presentation of its default notice. The "sufficient evidence" language does <u>not</u> foreclose judicial review, any more than presentation of prima facie evidence by a plaintiff forecloses presentation of evidence by a defendant refuting that evidence.

Novi list is thus lawfully entitled to refute the factual and legal basis for the January 29, 2007 default notices. *See, e.g., Bluffs Homeowners' Assoc., Inc. v. Frador Mktg., Inc.*, 809 N.Y.S.2d 329, 330 (4th Dep't 2006) (despite contractual provision allowing for termination on written notice of a material breach, "plaintiff was also required to establish in support of its motion that defendant breached a material term of the agreement, inasmuch as that was a condition precedent to plaintiff's right to terminate the agreement"). As shown below, on the law and the facts, Novi list has conclusively refuted the validity of the January 29, 2007 notices.

The improper construction of the "sufficient evidence" clause is only one of the flaws in MDEF's legal arguments. Under the contract pursuant to which MDEF and MDLF sent the January 29, 2007 default notices, *i.e.*, the Credit Agreement with non-party Riječki list, the contract definitions of the terms "Default" and "Notice of Default" do not allow the assertion

that the mere sending of notice is irrefutable evidence of breach. The contract language expressly provides that an Event of Default can be cured, and here any default was cured.

Section 1.01 of the Credit Agreement (Mandel Decl., Ex. B) defines "default" and "event of default" as follows:

> "Default" means any condition or event which, with the giving of notice or lapse of time or both would, unless cured or waived, become an Event of Default.

> "Event of Default" has the meaning set forth in section 7.01.

The section of the Credit Agreement referred to above likewise includes the concept of cure. Section 7.01 is defined as follows:

> Section 7.01. Events of Default. If one or more of the following events ("Events of Default") shall have occurred and be continuing:

The type of default asserted by MDEF in the January 29, 2007 notices supposedly occurred under Section 7.01(c). That section requires Riječki list to observe all covenants under the Credit Agreement. One of those covenants, set forth at Section 5.03, is that Novi list complies with all laws.

The actual terms of Section 7.01(c) are fatal to MDEF's position, for as to the type of default alleged by MDEF in the January 29, 2007 notices, there is an express provision for cure within fifteen days. Section 7.01(c) defines the Event of Default that is pertinent to the January 29, 2007 notices, as follows:

> (c) [Riječki list] shall fail to observe or perform any covenant or agreement contained in this Agreement or any other Loan Document ... for 15 days after written notice thereof ....

(Emphasis added.) The type of Event of Default alleged in the January 29, 2007 notices is an alleged default under a covenant, i.e., the alleged failure of Riječki list under Section 5.03 to insure that Novi list complied with Croatian law. As such, the Event of Default alleged in the

7

January 29, 2007 Notices of Default and Termination is an alleged breach of a covenant and is within the above provision of Section 7.01(c), allowing fifteen days to cure.

Any default under the Credit Agreement was cured. Riječki list responded to the January 29, 2007 Notice of Default by paying off the whole amount of the outstanding loan from MDLF. (Mance Decl. ¶¶ 44-48.) There was only one installment left, and that installment would have come due in a short time anyway, on June 30, 2007. (Mance Decl. ¶ 44.) When MDLF refused to retract its Notice of Default, Riječki list simply paid off the loan. (Mance Decl. ¶¶ 45-46.) The payment was made on February 12, 2007, which was within ten days of the receipt of the notice (February 12, 2007 being a Monday), and well within the fifteen days of notice specified in Section 7.01(c). (Mance Decl. ¶¶ 46-47.)

Under any fair interpretation of the Credit Agreement, paying off the loan in full within the specified period for cure, as a matter of law, cured any possible default that might have occurred. MDLF was no longer a creditor of Riječki list. All obligations under the covenants of the Credit Agreement terminated under the express terms of Section 5.01 (affirmative covenants) and Section 6.01 (negative covenants). MDLF and MDEF could not retain the benefits of any obligations due them under a loan agreement that had been paid in full. In simple terms, when Riječki list paid off the loan within the period allowed, it cured any possible default, as a matter of law.

MDLF's January 29, 2007 Notice of Default to Riječki list, alleging default by Novi list, is invalid as a matter of law. Although to simplify these papers, Novi list has not cross-moved for summary judgment, under the plain language of the contract under which the January 29, 2007 notices were sent, *i.e.* Section 7.07(c) of the Credit Agreement, Novi list is entitled to judgment on the law. Certainly, however, any proper reading of the contract language requires

8

denial of MDEF's motion for summary judgment. *See, e.g, Zuckerwise v. Sorceron Inc.*, 735 N.Y.S.2d 100, 102 (1st Dep't 2001) (denying motion to dismiss where contract did not unambiguously grant defendant unconditional right to terminate without cause).

The January 29, 2007 Notice of Default is the <u>only</u> document that comes within the "sufficient evidence" clause of the Option Agreement. The Credit Agreement was paid in full on February 12, 2007, and all of MDEF's rights thereunder terminated. (Mance Decl. ¶ 46.) All the other alleged breaches came <u>after</u> the Credit Agreement was paid off, and are not even arguably within the "sufficient evidence" clause. The failure of the January 29, 2007 notices effectively ends MDEF's motion for summary judgment.

In addition, the January 29, 2007 notices were factually invalid from the outset. Moreover, the facts suggest, and discovery is likely to demonstrate, that the notices were sent in bad faith.

**B.    The January 29, 2007 Notices Were Invalid as a Matter of Fact and Law**

The January 29, 2007 Notice of Default and Notice of Termination were triggered by the removal by Novi list's supervisory board of the company's management board member and CEO, Mr. Zoran Borčić. (Mance Decl. ¶ 41.) The facts adduced by Novi list show that MDEF had an extremely close relationship with Mr. Borčić, who was the *de facto* representative of MDEF to the supervisory board, even though under Croatian law, as an employee, he was not entitled to sit on the supervisory board. (Mance Decl. ¶¶ 22, 24.)

The facts also show that Mr. Borčić was responsible for irregular dealings with outside contractors for Novi list, that payments to such contractors were not properly documented, that Mr. Borčić had a close relationship with the owners of such companies, and that Mr. Borčić had been keeping the contracts not in Novi list's offices, but at his home. (Mance Decl. ¶ 39.) When

Novi list commissioned an outside audit which revealed these irregularities, MDEF tried to prevent the audit from taking place, claiming that the audit would be too expensive. (*See* Mance Decl. ¶ 36.)  As the audit cost a mere $20,000, as compared to Novi list's annual income of approximately $30,000,000, MDEF's objection to the audit (that subsequently revealed improprieties by its close confidant), is extremely suspicious. (*See* Mance Decl. ¶ 40.)

In any event, in the January 29, 2007 Notices of Default and Termination, MDEF and MDLF asserted that the firing of Mr. Borčić was a violation of law.  From that day to this, MDEF has never managed to specify what law was violated. (Mance Decl. ¶ 42; DoličKi Decl. ¶ 3.)  The likely reason it cannot do so is that applicable Croatian law directly contradicts MDEF's assertions. (DoličKi Decl. ¶ 4.)

The Croatian Companies Act not only gives supervisory boards broad power to remove members of the company's management board (who are in effect the corporate officers), but specifically provides that such decisions are valid and final until and unless overruled by the sole court of competent jurisdiction. (DoličKi Decl. ¶ 4.)  Article 244, ¶ 2 of the Companies Act provides as follows:

> (2) The supervisory board of the company may revoke its decision on appointment of members of the management board or its chairman, provided that there is a substantial reason to do so …. The recall shall be considered valid until its invalidity is established by court decision. The recalling of a member or the chairman of the management board shall have no effect on the provisions of the contract concluded with the company.

(DoličKi Decl., Ex. A (emphasis added).)  Thus, under the Croatian Companies Act, a supervisory board is empowered to remove a corporate officer, and the decision removing him is final. The fired officer may still have a contract claim, but that claim is expressly separate from the board's lawful right to remove him.  This is hardly a revolutionary proposition.  Any

10

assertion that it would be a "violation of law" for an American company's board of directors to fire the company's CEO would be laughed out of court.

Moreover, after Mr. Borčić was removed, Novi list promptly applied to the sole court of competent jurisdiction, the Commercial Court of Rijeka, to formally remove Mr. Borčić from the Court Register as a management board member of Novi list. (Dolič"ki Decl. ¶ 6.) A judge of the Commercial Court entered a decision on January 9, 2007 approving such application and officially removed Mr. Borčić from the Court Register. (Doličcki Decl. ¶¶ 6-8.)

Novi list has presented the declaration of a member of the Croatian bar, noting that, just as under American law, a judgment is effective and valid when entered, and, under Article 244, the decision of a supervisory board removing a management board member is valid and final from the time it is made, unless a court subsequently rules otherwise. (Doličcki Decl. ¶¶ 1, 4.) Under both the law, and an actual Croatian court decision, Mr. Borčić's removal was not a "violation of law."

In short, the fundamental grounds upon which MDEF's and MDLF's January 29, 2007 Notices of Default and Termination were based are simply not true. This may explain why MDEF has always refrained from actually specifying what law was allegedly violated.

There is also every reason to believe that MDEF and MDLF actually knew that their January 29, 2007 notices were based on assertions that were untrue. MDEF and MDLF sent their notices on the same day that their close confidant, Mr. Borčić, filed his lawsuit in the Commercial Court, and MDEF's Amended Complaint herein actually references the Borčić complaint, identifying it by the date it bears, not the date it was filed in court. (Am. Compl. ¶ 31(d); *see* Doličcki Decl. ¶ 11.)

Discovery is needed to show what MDEF and MDLF knew and when they knew it. If, as

11

the facts suggest, MDEF or MDLF had actual knowledge of the Croatian Companies Act, and actual knowledge that their notices of default and termination stated grounds that were untrue, then they not only did not send the notices in good faith, but may have done so in actual bad faith, for purposes of trying to effect a forfeiture on grounds that they knew to be untrue.

C.    **The Covenant of Good Faith and Fair Dealing Negates MDEF's and MDLF's Alleged Default Notices**

Even if the Agreements gave MDEF the rights that it asserts (and the Agreements assuredly do not), MDEF could not invoke those rights in the absence of good faith, or in the presence of actual bad faith.  It is well-settled that an implied duty of good faith and fair dealing exists in contracts governed by New York law, and that such duty prohibits a party from taking steps, even within its literal rights under a contract, for the sole purpose of depriving its counterparty of the bargained-for fruits of the contract.  *Carvel Corp. v. Diversified Mgmt. Group, Inc.*, 930 F.2d 228, 230-33 (2d Cir. 1991).[3]

When these agreements were entered into, the employee-shareholders of Novi list gave up 30% of the company of which they formerly owned 100% in order to obtain some of the funds the company needed.  They did so in order to be able to acquire new printing equipment, at a time when the Croatian credit markets were closed to them (because of the newspaper's opposition to Franco Tudman) and the international credit markets were closed to them (because of the international community's opposition to Franco Tudman).  (Mance Decl. ¶ 9.)  They gave

---

[3] In *Carvel*, the Second Circuit held that a party can breach the implied obligation of good faith and fair dealing by using its contractual rights unreasonably.  Carvel sued a distributor after the distributor defaulted on promissory notes executed in connection with the parties' distributorship agreement.  The distributor counterclaimed, alleging that Carvel violated the covenant of good faith and fair dealing by frustrating the distributor's efforts to perform under the distributorship agreement.  The distributor presented evidence to show that Carvel rejected "proposed store locations and franchisees, refus[ed] to allow changes in store blueprints to accommodate Maryland Health Department requirements, and apparently [made] abrupt and unexplained decisions to reverse wholesale sales and advertising policies."  930 F.2d at 230-31.  The Second Circuit opined, "While the distributorship agreement gave Carvel considerable discretion … , this did not relieve Carvel of its duty to act in good faith."  *Id*. at 231.

12

up nearly one-third of their company at a price to MDEF that was a 60% discount from the company's audited book value. (Mance Decl. ¶ 17.) Under the Option Agreement, they fulfilled their obligations without any problems for seven years, in order to get back most of their company when the option was exercised. (Mance Decl. ¶ 20.)

Now, when all the loans to MDLF have been paid in full (Mance Decl. ¶ 19), when the shares that MDEF bought for $1 million have increased in value ten-fold to $10 million (Mance Decl. ¶ 4), and when Novi list's employee-shareholders are close to getting their company back, MDEF and MDLF have sent a series of default notices that would have the effect of cheating Novi list's employee-shareholders out of their many years of work. (*See* Mance Decl. ¶¶ 4-5.)

MDEF argues that a court may not read a good faith requirement into an unqualified, unilateral termination right (*i.e.*, a termination provision that allows a party to terminate for any reason or no reason at all). The cases cited by MDEF, however, are simply inapposite.[4] The case law is to the contrary. *See, e.g., Vineyard v. Martin*, 29 N.Y.S.2d 935, 938 (Sup. Ct. N.Y. Co. 1941) (denying motion to dismiss breach of contract action and finding triable issue of fact as to whether notice of termination was sent in bad faith, even though contract contained proviso that allowed defendants to terminate if, in their sole discretion, such termination would be expedient).

New York law does not permit a contractual termination clause to be exercised in bad faith for the purpose of extracting a forfeiture, which is exactly what MDEF is seeking to do

---

[4] *See Miller v. Forge Mench P'Ship, Ltd.*, No. 00 Civ. 4314 (MBM), 2001 U.S. Dist. LEXIS 13046, *4 (S.D.N.Y. Aug. 28, 2001) (rejecting argument that license agreement was ambiguous as to timing of payments and that parol evidence should be considered as an aid to interpretation); *Marmer Bros. Constr., LLC v. Midwest Steel, Inc.*, No. 99 Civ. 11681 (SAS), 2000 U.S. Dist. LEXIS 13381, *10-11 (S.D.N.Y. Sep. 18, 2000) (rejecting argument that construction subcontract was ambiguous as to whether it called for lump sum or unit based pricing structure); *Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 352 (S.D.N.Y. 1996) (termination clause gave both parties a right to terminate on twelve months written notice and was silent as to whether cause was required for termination).

here. As one of the employee-shareholders of Novi list has affirmed in opposition to this motion, it would be fundamentally unfair for MDEF to cancel the Option Agreement, when MDEF has done nothing for which it has not been repaid. (Drenjak Decl. ¶ 8.)  In *Zuckerwise v. Sorceron Inc.*, the court prevented a similar outcome. 735 N.Y.S.2d at 101.  A consultant, "whose sole compensation was the grant of an option to purchase shares exercisable in installments tied to specific events, allege[d] that her termination without cause, forcing an acceleration of the exercise of her option, effected a forfeiture of the option." *Id.*  The court concluded that the allegation that the defendant "withheld from [the consultant] the intended benefits of the parties' agreement sufficiently state[d] a claim for breach of the implied covenant of good faith and fair dealing." *Id.*[5]

Similarly, in *Travellers Int'l AG v. Trans World Airlines, Inc.*, 722 F. Supp. 1087 (S.D.N.Y. 1989), the court concluded that a contract termination was pretextual. *Id.* at 1096. Travellers, a tour operator, successfully sought an injunction prohibiting its contract partner, TWA, from terminating the parties' contract governing their cooperative efforts to market and sell tour packages.  Although the two companies had successfully worked together for many years, their harmonious relationship broke down after both companies experienced changes in management.  TWA came to believe that the contract unduly benefited Travellers, and it sent a termination notice to Travellers, asserting that Travellers had breached the contract in several ways, chief among them being an allegation that the departure of a substantial number of Travellers' executives violated a "key management team" clause in the contract. *Id.* at 1091-94.

---

[5] *See also Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234, 239-40 (S.D.N.Y. 1992) (holding claim that employer breached covenant of good faith and fair dealing by discharging salesman without paying sales commissions stated good cause of action); *Tripodo v. Chase Manhattan Bank, N.A.*, 576 N.Y.S.2d 760, 763 (N.Y. City Ct. 1991) (holding employee was entitled to tuition reimbursement for semester commenced prior to being laid off from work, even though tuition reimbursement agreement required employee to be "active staff member" at time of reimbursement).

The court found that TWA's grounds for termination were purely pretextual:

> TWA's motivation for terminating the contract was economic ....
> TWA's inclusion of grounds for termination which had no
> reasonable basis in fact, as well as the circumstances surrounding
> the issuance of the termination letter, including [TWA's] rebuffed
> attempt to purchase Travellers and TWA's preliminary meetings
> with [another tour package provider] concerning their provision of
> [tours] in place of Travellers, lead the Court to conclude that the
> reasons TWA advanced for terminating the Contract were indeed
> pretextual. <u>The true reason for TWA's termination centered on
> [TWA's] desire to obtain some of the benefits which Travellers
> enjoyed under the contract.</u>

722 F. Supp. at 1096 (emphasis added); *see also AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*,
No. 02 Civ. 1363 (PKL), 2003 WL 21203503, *9 (S.D.N.Y. May 22, 2003) (Leisure, J.) (holding
distributor's allegations that manufacturer and dealers colluded to eliminate distributor as a
"middle man" by pretextually terminating their agreements with the distributor sufficiently
supported a claim for breach of the implied covenant of good faith and fair dealing); *Ashland
Mgmt. Inc. v. Janien*, 604 N.Y.S.2d 912, 915 (1993) (holding party breached duty of good faith
and fair dealing by refusing to negotiate confidentiality agreement and using other party's
request for a confidentiality agreement as a pretext to terminate underlying agreement); *Fabcon
E., L.L.C. v. Steiner Bldg. Co. NYC, L.L.C.*, 814 N.Y.S.2d 561, 2005 WL 3592002, *14 (Sup. Ct.
Kings Co. 2005) (unpublished decision) (finding party's "recitation of ... alleged 'defaults' as
grounds for termination" of contract "was purely pretextual" and violated covenant of good
faith).

By characterizing the option as a "charitable grant" and hiding behind its own status as a
charitable enterprise (Pl.'s Mem. 15), MDEF hopes to mask the enormous financial windfall it
seeks. (*See* Mance Decl. ¶¶ 4-5.) Every option agreement involves a right to purchase below
market value. The employee-shareholders of Novi list have performed for seven years (Mance

15

Decl. ¶ 20), and MDEF should not be allowed to effect a forfeiture to itself of the fruits of their labors. Even if the contracts gave MDEF the rights it asserts (and they do not), MDEF cannot violate the covenant of good faith and fair dealing. *Carvel*, 930 F.2d at 231.[6]

## II.    MDEF HAS FAILED TO MEET ITS BURDEN OF PROVING THAT THE EVENTS OF DEFAULT ALLEGED IN ITS SECOND COUNT HAVE EVER TAKEN PLACE

The burden of proving that no disputed material facts exist concerning matters before the court on a motion for summary judgment rests with the moving party. *Nationwide Life Ins.*, 182 F.3d at 160. As shown above, all the alleged defaults other than the firing of Mr. Borčić occurred <u>after</u> the Credit Agreement with Riječki list had been paid off in full, and MDEF does not even arguably have a right to circumvent judicial review of the alleged grounds under the "sufficient evidence" clause. Rather, MDEF must prove, on the facts and on the law, that breaches occurred. On this summary judgment motion, it cannot do so.

MDEF demanded an extraordinary shareholders' meeting to be held in May 2007, so that it could put before the company's shareholders its objections to the firing of its close confidant Mr. Borčić, and to the commissioning of an outside audit which subsequently revealed serious irregularities in Mr. Borčić's dealings with outside contractors. (Mance Decl. ¶ 49.) MDEF asserts that Riječki list's inability to deliver a proxy for that meeting under the Shareholders' Agreement constitutes a breach.

Because by the time the proxy was demanded in April 2007, the Credit Agreement with

---

[6]  The question of whether the implied covenant of good faith and fair dealing has been breached is not susceptible to decision at the summary judgment stage. *Creative Waste Mgmt., Inc. v. Capitol Envt'l Servs., Inc.*, 429 F. Supp. 2d 582, 610 (S.D.N.Y. 2006) ("Whether the City acted arbitrarily or irrationally under the contract is an issue of fact not proper for summary judgment."); *O'Shanter Resources, Inc. v. Niagara Mohawk Power Corp.*, 915 F. Supp. 560, 568-69 (W.D.N.Y. 1996) (finding genuine issue of fact as to whether utility breached implied covenant of good faith and fair dealing by contriving "site-certainty" issue in context of ongoing buyout discussions; *see also Home & City Sav. Bank v. Rose Assocs. I, L.P.*, 572 N.Y.S.2d 458, 461 (3d Dep't 1991) (holding "one of the pivotal issues" in the case was whether the defendants terminated an acquisition agreement in good faith, and that was "a peculiarly factual issue[,]" which could not be resolved on summary judgment).

Riječki list had been terminated (*See* Mance Decl. ¶¶ 15 & 46), MDEF cannot rely on the "sufficient evidence" clause to establish a prima facie case of default. Thus, it must prove its allegations of default in the old fashioned way, by establishing through competent evidence that there was a breach.

At the time of the events at issue, Riječki list, through its Croatian counsel, informed MDEF that Croatian law prohibited what MDEF demanded, and that if MDEF attempted to act pursuant to the proxy that it demanded, it might invalidate any actions taken at the extraordinary shareholders' meeting that MDEF had been so keen to demand. (*See* Mance Decl. ¶ 52; Dolič
Decl. ¶¶ 16-18.) Despite that contemporaneous showing, MDEF has not supported its motion with any competent evidence that its demand for a proxy was lawful under Croatian law. That alone is sufficient grounds to deny the motion.[7]

In opposition to the motion, Novi list has adduced competent evidence, through the affidavit of a member of the bar of Croatia, that the proxy which MDEF demanded was unlawful. (Doličeki Decl. ¶¶ 1, 17-18.) Riječki list's Croatian counsel has noted that, under Croatian law, a proxy is considered a Power of Attorney, which is governed by the Croatian Law on Obligations ("Official Gazette" No. 35/2005) Articles 308-18. (Doličeki Decl. ¶ 18.) Under Croatian law, the holder of a Power of Attorney cannot use it against the issuer. This fundamental principle of Croatian law simply forbids the use of a Power of Attorney to vote

---

[7] Quoting *Kel Kim Corp. v. Central Markets, Inc.*, 524 N.Y.S.2d 384 (1987), MDEF argues that "[i]mpossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible." *Id.* at 385. That case is not analogous to the present case, and the principle applied there is inapplicable here. In *Kel Kim*, the court declined to issue a declaratory judgment excusing the inability of a lessee of a roller skating rink to obtain and maintain insurance coverage due to conditions in the insurance market in the late 1980s. *Id.* at 385-86. In the case at bar, on the other hand, Riječki list has always expressed its desire to abide by the "voting parity" obligation and has consistently expressed its willingness to work with MDEF to find a way to achieve voting parity in a way that complies with Croatian law. (Mance Decl. ¶ 52; Dolicki Decl. ¶ 17.) Riječki list's and MDEF's inability to resolve the voting parity issue is attributable to MDEF's failure to cooperate with Riječki list in good faith, rather than to an issue of factual or legal impossibility.

shares held by the issuer opposite to the votes cast by the issuer itself. (Dolički Decl. ¶ 18.)  In simple terms, MDEF could not, under Croatian law, use a proxy or Power of Attorney to vote contrary to Riječki list. (Dolički Decl. ¶ 18.)

Moreover, Croatian law forbids an owner of shares from dividing his votes.  A shareholder must either vote all of his shares, or none of his shares. (Dolički Decl. ¶ 28.)  Thus, even if Croatian law against using a Power of Attorney against the issuer did not exist, Croatian law against dividing a shareholders' votes is an absolute bar to the demands made by MDEF. For the same reason, neither could Riječki list "abstain" from voting a portion of its shares, as MDEF suggests. (Pl.'s Mem. 10.)

Although Novi list has not cross-moved for summary judgment, on the competent evidence now before this Court, Novi list is entitled to summary judgment.  The proxy that MDEF demanded was simply unlawful.  MDEF has not even tried to argue that it can declare a default and terminate a contract on the basis of a demand to engage in an act which was unlawful.  Should MDEF try in its reply papers to counter the evidence of Croatian law adduced by Novi list, it would simply be too late for MDEF to do so.  A party may not support a motion for summary judgment with evidence presented for the first time in reply papers.

Even without regard to the unlawfulness of the proxy and the vote-splitting under Croatian law, MDEF cannot show on the facts that there was a default.  The facts show that Riječki list made great efforts to find a solution that would preserve voting parity, regardless of the mechanism employed to do so. (Mance Decl. ¶¶ 52-53; Dolički Decl. ¶¶ 17-20.)  The shareholders' meeting could have been adjourned to allow a lawful alternative to be implemented.  The available record is clear, however, that MDEF rejected Riječki list's proposed solution and offered no real alternative to the unlawful proxy/vote-splitting. (Mance Decl. ¶ 53;

18

Dolički Decl. ¶¶ 21-22.)

Riječki list's attempts to provide a lawful solution fully accorded with the contract. Pursuant to Section 13.2 of the Shareholders' Agreement, if a provision in the agreement is found to be invalid or unenforceable, then the parties must work together and agree to a valid substitute provision to "accomplish as nearly as possible the purpose and intent" of the invalid or unenforceable provision.[8]  As a matter of law, since the Shareholders' Agreement provides for potential invalidity and requires the parties to cooperate in such instances, MDEF is not entitled to insist on literal compliance with an unenforceable provision.  Given the lengths to which Riječki list went to provide a lawful alternative, MDEF's flat rejection smacks of an attempt to create a default where none existed.  At the very least, it certainly raises a disputed issue of fact.

## III.    MDEF HAD NOTICE OF THE AUGUST 3, 2007 SHAREHOLDERS' MEETING AND THERE WAS NO BREACH

MDEF asserts that failure to comply with obligations regarding giving notice of the August 3, 2007 shareholders' meeting constituted a breach under Section 7.5 of the Shares Subscription Agreement (Mandel Decl., Ex. A).  As the Credit Agreement had been paid in full by the time of these alleged breaches in June 2007, MDEF cannot even arguably rely upon the "sufficient evidence" clause, and must prove its allegations by adducing competent evidence. Both on the law and the facts, MDEF's motion for summary judgment must fail.

MDEF has supported its motion only with the hearsay declaration of its New York-based officer, Mr. Harlan Mandel, asserting that MDEF first learned about the shareholders' meeting when its Croatian counsel happened to see reference to it in the Official Gazette of Croatia on

---

[8] Section 13.2 of the Shareholders' Agreement provides:  "If any of the provisions of this Agreement shall be declared or become null and void or be held invalid or unenforceable, such void, invalid or unenforceable provision, as the case may be, shall immediately be replaced by another provision to be agreed upon by the Parties, valid in form and substance and which shall in a legally correct manner accomplish as nearly as possible the purpose and intent of the void, invalid or unenforceable provision with regard to the interests of the Parties."

June 28, 2007.  (Mandel Decl. ¶ 37.)

But Novi list has introduced competent evidence showing that MDEF's assertion that it did not receive timely notice of the shareholders' meeting is factually untrue.  MDEF's representative on the company's supervisory board, Mr. Jaroslaw Gora, actually attended the supervisory Board meeting on June 19, 2007, at which the date for the August 3, 2007 shareholders' meeting was set, and at which the agenda of the meeting was discussed.  (Mance Decl. ¶ 54; Dolički Decl. ¶ 24.)  Thus, MDEF had actual notice of the upcoming meeting.

In addition, Novi list has not had the opportunity to conduct discovery as to what MDEF knew, and when it knew it.  (Schorr Decl. ¶¶ 1, 4-15.)  For example, Novi list is entitled to depose Mr. Gora to find out whether he in fact passed on the information to Mr. Mandel and MDEF.  (Schorr Decl. ¶ 15.)  If he did, it would show that MDEF's Notice of Termination was sent in bad faith.

Novi list has also introduced competent evidence that the superior right of advance notice that MDEF appears to be asserting is not permissible under Croatian law.  (Dolički Decl. ¶ 27.)[9] On July 11 and 12, 2007, written notice was simultaneously sent to all Novi list shareholders, as required under Croatian law.  (Dolički Decl. ¶ 26.)  Under Croatian law, it would actually be illegal to favor any one Novi list shareholder with advance notice.[10]  (Dolički Decl. ¶ 27.)

---

[9]  The case that MDEF cites on this issue is not applicable.  In *Point Productions A.G. v. Sony Music Entertainment, Inc.*, No. 93 Civ. 4001 (NRB), 2000 U.S. Dist. LEXIS 10066 (S.D.N.Y. July 19, 2000), the defendant terminated a licensing agreement with the plaintiff without first providing contractually-required written notice and a thirty-day cure period.  *Id.* at *13.  The present case is very different.  Whereas *Point Productions* concerned a defendant's wrongful termination of a contract without providing its contracting partner notice and an opportunity to cure, in the present case the situation is reversed.  MDEF claims that it can unilaterally terminate the parties' Shares Subscription Agreement based on Novi list's purported failure to provide it with early, preferential notice of a scheduled shareholders' meeting, even though MDEF already had actual notice of the meeting, the meeting was postponed in any event, and MDEF suffered no detriment.

[10]  This manner of providing notice to shareholders was also in keeping with Novi list's ordinary custom and practice for notifying its shareholders of upcoming shareholders' meetings.  (Mance Decl. ¶ 55; Dolički Decl. ¶ 26.)  Prior to this year, MDEF had never objected to the manner in which Novi list noticed its upcoming shareholders' meetings.  (*See* Mance Decl. ¶ 55; Dolički Decl. ¶ 26.)

MDEF itself also admits that, on June 20, 2007, the Official Gazette published lawful notice. (Pl.'s Mem. 20.)  MDEF has counsel on the ground in Croatia, but such counsel has not come forward to explain why they did not take timely notice of the Official Gazette.  (*See* Pl.'s Mem. 20.)  To the extent that MDEF was the victim of law office failure, it cannot allege lack of notice as a default by Novi list.

Likewise, in addition to the fundamental problem of MDEF's basing a declaration of default on a demand for an act which is not permissible, the contract under which MDEF argues negates the claims it makes here.  The Shares Subscription Agreement provides for the application of Croatian law[11] and calls for the exclusive jurisdiction of the Croatian courts to resolve any disputes.[12]

MDEF has not produced any evidence, much less competent evidence, that the rights it asserts are even valid or could exist under Croatian law.  Novi list has adduced competent evidence that the actions are not permissible.  (Mance Decl. ¶ 52; Dolički Decl. ¶¶ 16-18, 27.)  MDEF has certainly not proven that Novi list's alleged acts rise to the level of breach of contract under Croatian law.  *See Nationwide Life*, 182 F.3d 157, 160.

Finally, even though on the facts MDEF actually had timely notice, and on the law this Court should not usurp the exclusive jurisdiction of the court chosen in the contract, it is also true that MDEF admits that it has suffered absolutely no harm from the allegedly improper notice. (Pl.'s Mem. 20.)  The  shareholders' meeting originally scheduled for August 3, 2007 was not held.  (Mance Decl. ¶ 56.)  Rather, it was postponed after MDEF made its objections known.

---

[11]  Section 12 of the Shares Subscription Agreement states: "Governing Law.  This Agreement shall be governed by, and construed in accordance with, the laws of the Republic of Croatia."  (Mandel Decl., Ex. A.)

[12]  Section 13 of the Shares Subscription Agreement states: "Jurisdiction.  Any dispute, controversy or claim which may arise out of or in connection with this Agreement, or in the execution, breach, termination or invalidity thereof, shall be settled by a competent court in Croatia."  (Mandel Decl., Ex. A.)

(Mance Decl. ¶ 56.)  *See Gordon v. Dino De Laurentiis Corp.*, 529 N.Y.S.2d 777, 779 (1st Dep't 1988) (dismissing investor group's cause of action for breach of contract because it failed to allege how corporate defendant's alleged breach of confidentiality agreement caused investors any harm and contained only boilerplate allegations of injury).

## CONCLUSION

For all of the foregoing reasons, Defendant Novi list respectfully requests that this Court deny MDEF's motion for summary judgment.

Dated: New York, New York
       October 11, 2007

Respectfully submitted,

LOVELLS LLP

By: _____

Edward T. Schorr (ES-0290)
Gonzalo S. Zeballos (GZ-5994)
Derek J. Craig (DC-0999)

590 Madison Avenue
New York, New York 10022
Tel: (212) 909-0600
Fax: (212) 909-0660

*Attorneys for Defendant Novi list d.d.*