UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

MEDIA DEVELOPMENT EQUITY FUND, A NEW
YORK LIMITED LIABILITY COMPANY,

                    Plaintiff,

- against -

NOVI LIST D.D., A JOINT STOCK COMPANY
ORGANIZED UNDER THE LAWS OF THE
REPUBLIC OF CROATIA

                    Defendant.

-------------------------------------------------------------------x

07 Civ. 3624 (PKL)

**DECLARATION**      **OF**
**ZDENKO MANCE**

Ja, **ZDENKO MANCE**, ovime izjavljujem pod kaznenom odgovornošću kako slijedi:

1.    Ja sam predsjednik Nadzornog odbora Novog lista d.d. ("Novi List")[1], hrvatskog dioničkog društva, izdaje nezavisne hrvatske novine s tiražom od oko 50.000 primjeraka i Internetsku tiražu od oko 25.000 čitatelja. Dajem ovu Izjavu kako bi podržao suprotstavljanje Novog lista nastojanjima MDEF-a za dobivanje djelomične skraćene presude pri čemu MDEF želi profitirati na Opcijskom ugovoru za koji su Novi list i njegovi zaposlenici radili osam godina kako bi ga isplatili.

2.    Novi list je najveća nezavisna novina u Republici Hrvatskoj. Sjedište Novog lista je u Rijeci, Hrvatska, koja se nalazi na Jadranskoj obali otprilike nasuprot Venecije, Italija.

3.    Novi List je osnovan 1900. godine. Preživio je 45 godina komunizma, Hrvatski rat za nezavisnost te represivno razdoblje za vrijeme predsjednika Franje Tuđmana. Danas

---

[1] Izrazi pisani velikim slovima koriste se ovdje kako su definirani u odgovoru na tužbu u postupku za donošenje skraćene presude ako nije drugačije naznačeno.

Novi list ostaje nezavisna novina i nastavlja raditi kako bi ostvario novinarski i poslovni uspjeh.

4.       Poslovni uspjeh Novog lista se odražava u njegovoj tržišnoj vrijednosti, koja, prema konzervativnim procjenama, iznosi više od $35 miliona (€25 miliona). Kao što se prethodno navodi, to znači da MDEF vidi drugi interes, a ne vraćanje kredita danog Riječkom listu koji im je uredno otplaćen sa kamatama, odnosni MDEF želi svoj početnu investiciju koja je iznosila manje od $ 1,2 miliona (1,8 miliona DEM)², pretvoriti u iznos od više od $ 10 miliona u razdoblju od samo nešto preko osam godina. Tijekom tih osam godina, MDEF je također redovno dobivao isplaćene dividende koje sveukupno iznose otprilike $759,466.

5.       Zaposlenici Novog lista su radili izuzetno teško te su preuzeli veliki osobni rizik kako bi kupli dionice Novog lista u 1993. te ga zadržali nezavisnom novinom za vrijeme teških vremena u Republici Hrvatskoj kako za vrijeme tako i nakon rata za nezavisnost Hrvatske. Opcijski ugovor daje mogućnost Novom listu da vrati odnosno zadrži vlasništvo Novog lista kod ljudi koji su zaslužni za njegov uspjeh – njegovi novinari i ostali zaposlenici. Sada kada je kredit MDEF- a otplaćen i Novi list je financijski stabilan te ostaje urednički i politički nezavisan (a MDEF je profitirao višestruko po svim računicama), Novi list i njegovi zaposlenici su zaslužili pravo da imaju u vlasništvu novinu koju su izgradili.

6.       Bio sam predsjednik Uprave Novog Lista od 1. srpnja 1987. do 30. travnja 2005. te sam radio kao glavni urednik Novog Lista između 2000. i 2003. godine. Od kolovoza 2005. sam predsjednik Nadzornog odbora Novog Lista.

7.       Prije nego sam se zaposlio u Novom listu, bio sam voditelj Zavoda za društveno planiranje Skupštine Općine Rijeka. Kada sam došao u Novi list 1987. godine bio je državno poduzeće.

---

[2]   To je iznos koji je izračunat koristeći povijesni tečaj od .53780 izračunat od http://www.oanda.com/convert/fxhistory. Na dan 28. listopada 1999., 1,8 DEM imalo je protuvrijednost $968,040. Svi povijesni izračuni bili su izračunati koristeći tečaj sa navedene internetske stranice ako nije drugačije naznačeno.

8.    Novi List je privatiziran 1993. godine kada su ga za 4,148 milijuna njemačkih maraka kupili oko 334 postojećih i umirovljenih zaposlenika Novog Lista i to za otprilike DEM 4.1 miliona (otprilike $ 2,5 miliona). Iako je cijena bila prilično visoka u usporedbi sa prosječnom mjesečnom plaćom koja je u to vrijeme iznosila otprilike DEM 250 ($ 160) 184 zaposlenika koje sam predvodio je uzelo kredit od Riječke banke kako bi financirali kupnju udjela u listu. Tih 184 zaposlenika, uključujući i mene, ima vlasništvo nad otprilike 84% lista. Kredit Riječke banke je otplaćen 1999.

9.    Do 1999. postojao je snažan međunarodni pritisak protiv nepopularnog hrvatskog predsjednika Franje Tuđmana da siđe s vlasti, a koji je bio praćen strogo primjenjian ekonomskim sankcijama koje su onemogućile Novom listu pristup međunarđonim tržištima kapitala. Novi list također nije imao pristup financijama države jer je bio jedan od nekolicine javnih glasova protiv državne vlasti za vrijeme predsjednika Tuđmana. Za vrijeme vlasti predsjednika Tuđmana mnoge nezavisne novine poslovale su u teškim uvjetima.

10.    Novi list je mogao osigurati financiranje od strane države da je prestao biti na opozicijskoj strani, ali to nije učinio. Do kasnih 1990-ih Novi list je imao veliku potrebu za novim strojevima za štampanje, ali si novu opremu nije mogao priuštiti bez pristupa domaćim ili međunarodnim tržištima kapitala.

11.    Kasnih 1990-ih, u Hrvatskoj je bio aktivan Open Society Institute ("OSI"), nezavisna nedržavna organizacija koja je osnovana i vođena od strane Georga Sorosa. OSI je privukao krug važnih hrvatskih intelektualaca. Novi list  kao nezavisna novina je pružao potporu OSI koji je bio bojkotiran od strane većine državnih novina. Novi list je tiskao i druge nezavisne novine kao što su bili dnevni list Glas Istre i tjedne novine Feral Tribune. Feral Tribune imao je financijsku podršku OSI. Novi list je sam 1995. godine pokrenuo dnevnik

Karlovački list koji je izlazio u maloj tiraži, a potpomognut fiancijski od Novog lista. a namijenjen ratom devastiranom području Karlovačke regije.

12.    Budući da je OSI bio klijent Novog lista, bio je svjestan problema sa strojevima za štampanje. Pomoćnici gospodina Sorosa su pristupili Novom listu te mu ponudili pomoć u financiranju u zamjenu za udio u listu. Pregovori su bili vođeni s Media Development Loan Fund ("MDLF"), drugom institucijomn vođenom od strane Sorosa, a čija je primarna aktivnost investiranje u nezavisne novine u zemljama u razvoju.

13.    Jaroslaw Gora, Saša Vučinić, Harlan Mandel, zamjenik glavnog direktora u MDLF-u i vodeći ljudi u MDLF-u sastali su se sa manom te mi ponudili kompleksnu investicijsku shemu za Novi list i to na principu "uzmi ili ostavi". U vezi sa investicijskom shemom MDLF je osnovao društvo Media Development Equity Fund ("MDEF") koje će imati udjele u društvu Novi list.

14.    U isto vrijeme mali dioničari Novog lista, većina novinari i drugi zaposlenici Novog lista, su osnovali Riječki list d.o.o. ("Riječki list"), hrvatsko društvo sa ograničenom odgovornošću koje će držati udjele u Novom listu. Riječki list trenutno drži preko 50% dionica Novog lista.

15.    28. listopada 1999. su nastavno na prijedlog za investiciju MDLF-a, MDEF. Novi list i Riječki list sklopili niz ugovora (zajedno "ugovori")  uključujući:

- "Memorandum of Understanding" sklopljen između MDLF-a, MDEF-a, Novog lista i Riječkog lista koji je uključivao razne sporazume i uređivao vezu između njih.

- "Ugovor o upisu dionica" ("The Share Subscription Agreement,") koji je sklopljen između MDEF-a i Novog lista, a uređuje prodaju 18,190 novoizdanih dionica Novog lista MDEF-u.

- "Ugovor o kreditu" ("Credit Agreement") sklopljen između MDLF-a i Riječkog lista kojim je MDLF dao kredit dao kredit ("Kredit") Novom listu u iznosu od EUR 970,000 za kupnju trezorskih dionica Novog lista te dionica malih dioničara Novog lista. Svrha ugovora bila je da pomogne

4

Riječkom listu pri kupnji dionica Novog lista. Kredit je otplaćen sa kamatama 12. veljače 2007. te stoga Ugovor o kreditu nije više na snazi.

- "Shareholders Agreement." koji je potpisan između Riječkog lista i MDEF-a kako bi se uredila veza i kontrola nad poslovanjem Novog lista.

- "Option Agreement." koji je potpisan između MDEF-a i Novog lista te daje pravo Novom list na kupnju dvije trećine dionica Novog lista od MDEF-a ispo tržišne cijene opcije ("Opcija").

16.     Prema navedenim raznim ugovorima, dioničari zaposlenici Novog lista koji su stekli dionice u društvu imajući veliki osobni izdatak u 1993-oj godini, složili su se da prodaju MDEF-u 30% udjela za cijenu 1.8 miliona DEM (nešto ispod $1.2 miliona).

17.     Kupovna cijena koju je platio MDEF je odražavala cijenu po dionici od DEM 100 ($53.78) koja se temeljila na nominalnoj vrijednosti dionice za vrijeme privatizacije u 1993-oj godini[3]. Cijena po kojoj je MDEF kupio dionice u 1999-oj godini je predstavljala cijenu sa 60% popustom usporedivo prema knjigovodstvenoj vrijednosti dionice i 947.19 Kuna ($130.71) po dionici. (*Vidi pismo poslano faxom* Tinu Doličkom 2. listopada 2007. od Nade Prelic koje se prilaže kao Prilog A.)

18.     Ukupan trošak za cijelokupnu investiciju u novu štampariju je iznosio više od 10 miliona DEM (otprilike $ 7.8 miliona). Otprilike 50% tih sredstava je bilo osigurano kroz ugovore sa društvima pod kontrolom Sorosa  sa otprilike 1.8 miliona DEM (nešto ispod $ 1,2 miliona) koje je stavio na raspolaganje MDEF u zamjenu za kupnju dionica Novog lista te otprilike 3,4 miliona DEM (otprilike $ 2,65 miliona) koji su osigurani kroz bankovne zajmove dane od strane Austrijske banke (Raffeisenbank Austria d.d.), a za koje je dao garanciju Soros Economic Development Fund. Preostalih 50% troškova je bilo financirano od strane Novog lista.

---

[3] Temeljeno na cijeni od 380.18 Kuna po dionici kao što je navedeno u Prilogu A. cijena u US dolarima koju je platio MDEF za dionicu Novog lista iznosila je $52.44 - neznatno više nego je bila cijena po tečaju DEM.

19.    Kredit od MDEF-a Riječkom listu te kredit od Raffeissenbank Austria d.d. Novom listu su u cijelosti otplaćeni s kamatama. Nema otvorenih kredita niti od strane Novog lista niti Riječkog lista niti pak bilo kojeg društva pod kontrolom Sorosa.

20.    Riječki list, MDEF i MDLF su uspješno surađivali sedam godina prema Sporazumima i nije bilo niti jedan incidenta. Skoro tih svih sedam godina sam bio Predsjednik Uprave Novog lista i cijelo vrijeme sam imao dobar odnos sa MDLF/MDEF-om. Dodatno, za vrijeme tih sedam godina, nije bilo nikakvih velikih nesuglasica između Nadzornog odbora i MDEF-a.

21.    U travnju 2004. godine sam doživio moždani udar. Kao rezultat toga sam u travnju 2005. godine prijevremeno otišao sa dužnosti kao Predsjednik Uprave Novog lista. Moj prijašnji pomoćnik kroz nekoliko godina, Zoran Borčić, je bio izabran kao Predsjednik Uprave prema mojoj preporuci te sa jednoglasnom podrškom Nadzornog odbora . Nadao sam se da će gospodin Borčić uvesti Novi list u jedno novo razdoblje još većeg uspjeha te sam ponudio gosp. Borčiću moju punu podršku.

22.    MDEF je prije imao vrlo blisku vezu s gospodinom Borčićem koji dobro govori Engleski (što nije moj slučaj).

23.    Gospodin Jarosław Gora živi u Varšavi i ne govori hrvatski, te je gosp. Borčić zbog poznavanja jezika te dobrih odnosa sa MDLF-om redovita i isključiva veza između Uprave i Nadzornog odbora Novog lista te Riječkog lista.

24.    Kao član Uprave gosp. Borčić nije mogao zbog propisa hrvatskog prava biti i član Nadzornog odbora. Iako je prisustvovanje gosp. Borčića na sastancima Nadzornog odbora nije bilo u skladu sa zakonom Nadzorni odbor se nije protivio zbog želje da se zadrži dobar odnos sa MDEF-om.

25.    Gosp. Borčić je zadržao poziciju Predsjednika Uprave samo 18 mjeseci. U tom kratkom periodu su njegovi propusti kod vođenja Novog lista postali očiti.

26.    Između ostalog, dva su se dvije njegove odluke su se pokazale kao neprihvatljive za Nadzorni odbor.

27.    *Prvo*, Gosp. Borčić je za vrijeme Novogodišnje proslave na dan 14. prosinca 2006., na kojoj su bili prisutni klijenti Novog lista, oglašivači i druge poznate osobe iz javnog života (uključujući i gradonačelnika i Riječkog nadbiskupa) , da je Nadzorni odbor Novog lista odlučio prodati list. Ne samo da to nije bilo točno, već je bilo potpuno neprikladno tu temu iznositi na takvom događaju te je izazvalo negativan publicitet za Novi list. Također je izazvalo negativnu reakciju novinara i zaposlenika Novog lista koji se iznenađeni počeli bojati prodaje novina.

28.    *Drugo,* Gosp. Borčić vezao je Novi list potpisavši ugovor s tržišnim takmacem Europa Press Holdings ("EPH"). Prema uvjetima iz tog ugovora, Novi list je pristao da tiska dnevnu novinu EPH, Metro Express, te da proslijeđuje za svrhu objave u toj novini 4 stranice lokalnog sadržaja Novog lista dnevno za svaki broj Metro Expressa.

29.    Ugovor između EPH i Novog lista je izuzetno nepovoljan za Novi list iz više razločitih razloga. Objavljivanje članaka Novog lista u Metro Expressu, koji se besplatno dijeli u cijeloj Republici Hrvatskoj, odvlačio je kupce od kupnje Novog lista radi potrebe čitanja vijesti. Nadalje, Metro Express ne smatra se cijenjenom novinom već naprotiv suprotno, te su novinari Novog lista bili prestravljeni što se njihovi članci koji su pripremljeni na stručan i profesionalan način objavljuju u takvom listu.

30.    Konačno, cijena koja se ugovorila za objavljivanje tih članaka bila je neprihvatljivo niska — samo 1.000 Kuna ($176)[4] dnevno ili 20.000 Kuna mjesečno. To odgovara prihodu Novog lista od jedne stranice oglasa.

31.    U siječnju 2007., nadzorni odbor Novog Lista glasao je za otkaz gosp. Borčiću natpolovičnim većinom glasova (3:2), u cijelosti u skladu s hrvatskim ZTD-om, članak 244.

---

[4] Teemeljeno na prosječnom tečaju za siječanj 2007.

stavak 2. i Statutom Novog Lista (prilažu se kao Prilog B kopija originala te Engleski prijevod Odluke Nadzornog odbora Broj 1 od 5. siječnja 2007. o opozivu gosp. Borčića kao Predsjednika Uprave te sa obrazloženjem o razlozima njegova opoziva).

32.    Nastavno na opoziv gosp. Borčića, Nadzorni odbor Novog lista imenovao je gosp. Franju Butorca kao novog Predsjednika Uprave Novog lista. Gosp. Butorac ima više od dvadeset godina iskustva u izdavačkom poslu. On je još kao student radio nekoliko godina s Novim listom kao i drugim novinama u Hrvatskoj i tadašnjoj Jugoslaviji. Bio je Predsjednik Uprave izdavačke kuće Tiskara Rijeka, između 1987. i 1990., te Predsjednik Uprave druge izdavačke kuće Adamić, društva kćeri Novog lista, od 1995. do 2007.

33.    Nakon što je postao Predsjednik Uprave Novog lista, te čim je to ugovor sa Metro Expressom dozvolio, gosp. Butorac je raskinuo ugovor s Metro Expressom odnosno EPH u vezi redakcijske suradnje i povećao cijenu tiskanja Metro Expressa prema podršci novinara i urednika.

34.    Novi list je također uskoro otkrio da je gosp. Borčić ostavio društvo bez ikakvih dokaza odnosno dokumenata o stanju u društvu, a osobito da niti financijski niti pravni odjel nije imao kopije ugovora s vanjskim suradnicima. Zabrinut zbog nedostatka dokmentacije da bi se otkrilo pravo stanje društva, Predsjednik Uprave gosp. Butorac je naručio dubinsko snimanje društva. S odobrenjem Nadzornog odbora, u veljači 2007. gosp. Butorac je odabrao nezavisnu i respektabilnu revizorsku hrvatsku kuću Revizija Zagreb d.o.o. da ispita knjige i spise društva. Trošak te revizije je iznosio manje od $20.000, što je mali iznos za društvo koje je u 2006. godini imalo ukupan prihod od $30 miliona.

35.    MDEF su bili ljuti zbog glasovanja unatoč očigledne osnove za opoziv gosp. Borčića. Kao što je gore navedeno, MDEF/MDLF je slao Obavijest o kršenju ugovora 29. siječnja 2007. pri čemu je naveo da je opoziv gosp. Borčića suprotan hrvatskom pravu i

propisima. MDEF je poslao te Obavijesti na isti dan kada je gosp. Borčić uložio žalbu radi svojeg opoziva Trgovačkom sudu u Rijeci.

36.    Nakon što je MDEF/MDLF poslao Obavijesti o kršenju ugovora; Novi list je obavijestio MDEF/MDLF da je dao nalog za dubinsko snimanje. Predstavnik Nadzornog odbora MDEF-a, g. Gora i g. Harlan Mandel su se protivili dubinskom snimanju tvrdeći da novi predsjednik Uprave g. Butorac nije bio ovlašten dati nalog za istu i da Nadzorni odbor nije dao valjani nalog za to dubinsko snimanje. U vrijeme kada se MDEF protivio dubinskom snimanju gosp. Borčić je podigao tužbu na Trgovačkom sudu u Rijeci tražeći da se vrati na funkciju člana uprave.

37.    Unatoč protivljenu MDEF-a dubinsko snimanje je provedeno i otkrilo je niz nepravilnosti u vezi rukovođenja društvom od strane gosp. Borčića, uglavnom u ugovorima koje je g. Borčić sklopio s vanjskim suradnicima. (Izvješće o dubinskom snimanju zajedno s prijevodom nalazi se u Prilogu C odnosno D. U vezi s nepravilnostima koje su utvrdili revizori je bilo i to da nije bilo dokumentacije s vanjskim suradnicima kojima su izvršene znatne isplate u 2006. godini u odnosu na opis posla koji su izvršili, od koga su dobili ovlaštenje i da li je uopće izvršen neki rad ili ne. (Prilozi C i D pod str. 65-66, točke 20-24, 26.). Za neke od uključenih tvrtki se vjeruje da gosp. Borčić ima osobne odnose s vlasnicima.

38.    Revizori su posebice kritizirali vezu s glavnim ugovornim partnerom za područje IT-a, društvom IT NetCom d.o.o. ("NetCom"). Izvješće govori da ugovori nisu bili sklopljeni nakon provedenog natječaja. Gosp. Borčić je po zanimanju IT stručnjak te se vjeruje da je i prije imao veze sa društvima kao što je NetCom.

39.    Nakon što je gosp. Borčić otišao iz društva otkriveno je da nije ostavio izvorne evidencije u Novom Listu. Nakon što je pregledan ured gosp. Borčića te je ustanovljeno da je dokuentaciju o vanjskim dobavljačima nije držao u uredu već kod kuće.

40.    Da je MDEF/MDLF uspio sa svojim prigovorima protiv vanjske revizije na način da ju je spriječio ili spriječio objavu rezultata iste, nikada ne bismo dobili ovu informaciju o nepravilnostima u vezi vanjskih suradnika koje je angažirao gosp. Borčić. Novi list je o rezultatima revizije obavijestio Trgovački sud u Rijeci povodom tužbe g. Borčića kojom traži da se vrati na funkciju člana uprave.

41.    Kao što je gore navedeno, MDEF/MDLF je odgovorio na opoziv gosp. Borčića tako što je poslao "Obavijest o povredi ugovora" Riječkom listu 29. siječnja 2007. ("Obavijest o povredi ugovora"), kojom je ustanovio otkaz Ugovora o kreditu između MDLF-a i Riješkog lista.

42.    U Obavijesti o povredi ugovora MDEF/MDLF je tvrdio da otkaz gospodinu Borčiću predstavlja povredu nekoliko odredbi  Ugovora o kreditu uključujući i odredbu kojom se od Riječkog lista traži da postupa u skladu i da osigura da Novi list postupa u skladu s primjenjivim zakonima i propisima (ali MDEF/MDLF nije specificirao koji zakoni i propisi su povrijeđeni). MDEF/MDLF je također jednostrano stavio na naplatu nepodmireni dug Riječkog lista po Kreditnom ugovoru.

43.    Istovremeno je MDEF/MDLF poslao "Obavijest o otkazu" Novom Listu, u kojoj je naveo da je Riječki list prekršio Kreditni ugovor i da se MDEF-ovom obaviješću o tom navodnom kršenju te činjenicom da je gosp. Borčić opozvan, automatski raskid Ugovor o opciji. Kao što je gore navedeno, obje Obavijesti su poslane na isti dan kada je gosp. Borčić poslao svoju tužbu protiv Novog lista sudu.

44.    Na datum kada je MDEF/MDLF stavio na naplatu svoj zajam Riječkom listu, po zajmu je ostao neplaćen samo jedan obrok u iznosu od €102,000 (oko $ 140,000).  Ovaj obrok bi dospio u roku od samo nekoliko mjeseci, 30. 07.2007.

45.    U ime Riječkog lista, izjavio sam predstavnicima MDLF-a, uključujući gosp. Mandela, i predstavniku MDEF-a u Nadzornom odboru Novog Lista, gosp. Jarosławu Gora,

da je otkaz gosp. Borčiću bio uredan i u najboljem interesu Novog Lista. Pažljivo smo objasnili razloge za otkaz gosp. Borčiću. MDEF/MDLF je odbio povući svoju Obavijest o povredi Ugovora.

46.    Međutim, s obzirom na činjenicu da je preostao samo jedan obrok zajma i da bi taj obrok u svakom slučaju dospio na naplatu za nekoliko mjeseci Riječki list je odlučio jednostavno platiti zadnju ratu Kredita dana 12.02.2007. kako bi potpunim ispunjenjem svojih obveza ispravio eventualno kršenje po Kreditnom ugovoru.

47.    Plaćanje je izvršeno u roku od 10 dana od primitka Obavijesti o povredi Ugovora. MDEF je prihvatio plaćeni iznos te nikada nije opovrgnuo da plaćanje nije bilo izvršeno u roku danom u Obavijesti o povredi Ugovora.

48.    Nakon što je prihvatio plaćeni iznos bez prigovora, MDEF/MDLF nije dalje poduzimao nikakve radnje u vezi Obavijesti o povredi ugovora od 29. siječnja 2007. odnosno Obavijesti o raskidu Ugovora.

49.    U travnju 2007. MDEF/MDLF je tražio da se dioničarima Novog lista na izvanrednoj skupšini od 11.05.2007. predlože odluke kojima se izražava nezadovoljstvo s radnjama Nadzornog odbora i da se izglasa nepovjerenje članu Uprave gosp. Butorcu. U odluci nisu navedeni razlozi za ove odluke (engleski prijevod dnevnog reda izvanredne skupštine nalazi se u Prilogu E). Međutim MDEF/MDLF je ranije pojasnio da je jedan od razloga za ove odluke bilo davanje naloga gosp. Butorca za vanjsku reviziju i odobrenje revizije od strane Nadzornog odbora.

50.    Dana 12.04. 2007. ili otprilike tog dana, MDEF/MDLF je pisao Riječkom listu i tražio prema članku 5.4 Ugovora između dioničara punomoć kojom se MDEF opunomoćuje ("Punomoć") da ima dovoljan broj dionica s pravom glasa Riječkog lista  u Novom Listu koji bi MDEF izjednačio u broju glasova s Riječkim listom. (Kopija pisma MDEF-a od 12. 4.

11

2007. nalazi se kao Prilog H Izjavi Harlana Mandela kao podnesak tužitelja u postupku dobivanja skraćene presude).

51.    To je bilo prvi put u sedmogodišnjem odnosu između MDEF-a, Novog Lista i Riječkog lista da je MDEF izrazio takav zahtjev.

52.    Riječki list–odgovorio je MDEF i objasnio da Riječki list ne može dati Punomoć jer bi takav čin predstavljao povredu hrvatskog zakona i vjerojatno bi imao za posljedicu nevaljane glasove dane u skladu s Punomoći. Usprkos pokušaju da se iskoristi izvanredna Glavna skupština kako bi se spriječilo provođenje izvanredne revizije, Riječki list je potvrdio svoju namjeru da ispuni svoje obveze iz Shareholders' Agreementa te je predložio rješenje kako bi se MDEF dalo jednaka glasačka prava. (Kopija pisma Riječkog lista kojim odgovara MDEF-u nalazi se kap Prilog I Izjavi Harlana Mandela kao podnesak tužitelja u postupku dobivanja skraćene presude).

53.    Ja sam sastao sa gosp. Mandelom ponovno 26. travnja 2007. kako bismo pokušali riješiti pitanje Punomoći, ali on se nije složio niti sa jednim našim prijedlogom kako bi se riješila ta situacija.

54.    Dana 19.06.2007, Novi List je imao sjednicu Nadzornog odbora.  Jaroslow Gora, predstavnik MDEF-a je bio nazočan na sjednici na kojoj je najavljeno da će sljedeća sjednica Glavne Skupštine biti 03.08.2007. Osobe nazočne na sjednici od 19. lipnja uključujući i gosp. Goru, raspravili su dnevni red za sjednicu od 3. kolovoza i predložili su odluke koje će se donijeti na sjednici od 3. kolovoza.

55.    Sljedećeg dana, 20.06.2007., Novi List je također objavio najavu sljedeće skupštine od 3. kolovoza u Narodnim novinama Hrvatske, što je bila uobičajena praksa društva.  Pisana obavijest s pozivom na skupštinu istovremeno je poslana dioničarima Novog Lista, uključujući MDEF, 11. i 12. srpnja 2007. kurirskom poštom. U Prilogu 1 ovoj izjavi su istinite i točne kopije pisanih obavijesti poslanih dioničarima Novog Lista kurirskom poštom.

Davanje obavijesti na ovaj način je uobičajena praksa i postupak Novog Lista kojoj MDEF nikad nije prigovorio do ove godine.

56.    Ubrzo nakon toga, Novi List i ja smo obaviješteni da je MDEF dao prigovor na način na koji je MDEF-u dostavljena obavijest o skupštini od 3. kolovoza. MDEF prije nikada nije prigovarao o načinu dostave obavijesti o održavanju Glavne skupštine. Novi List je ponudio i složio se da se odgodi održavanje skupštine i ona nije bila održana.

U skladu s 28 U.S.C. § 1746, pod prijetnjom kaznene odgovornosti izjavljujem po zakonima Sjedinjenih Američkih Država da je naprijed navedeno istinito i točno.

Potpisano 10. listopada 2007.

Rijeka, Hrvatska

ZDENKO MANCE

13

*CERTIFIED TRANSLATION FROM CROATIAN LANGUAGE*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

MEDIA DEVELOPMENT EQUITY FUND, A NEW
YORK LIMITED LIABILITY COMPANY,

                            Plaintiff,

                - against -

NOVI LIST D.D., A JOINT STOCK COMPANY
ORGANIZED UNDER THE LAWS OF THE
REPUBLIC OF CROATIA,

                           Defendant.

------------------------------------------------------------------x

07 Civ. 3624 (PKL)

**DECLARATION OF
ZDENKO MANCE**

I, **ZDENKO MANCE**, hereby declare under penalty of perjury as follows:

      1.     I am the chairman of the supervisory board of Novi list d.d. ("Novi list"), a Croatian joint stock company that publishes an independent Croatian newspaper having a print circulation of approximately 50,000 copies and an Internet circulation of approximately 25,000 readers. I provide this declaration in support of Novi list's opposition to MDEF's motion for partial summary judgment whereby MDEF seeks to take away the benefit of an Option Agreement that Novi list and its employees worked eight years to earn.

      2.     Novi list is the largest independent paper in Croatia. Novi list's headquarters are in Rijeka, Croatia, which is located on the **Adriatic coast** more or less opposite to Venice, Italy.

------------------------------------------------

[1] Capitalized terms used herein are used as defined in Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment unless otherwise indicated.

1

*CERTIFIED TRANSLATION FROM CROATIAN LANGUAGE*

3.      Novi list was founded in 1900. It has survived 45 years of communism, the Croatian war of independence, and the oppressive presidency of Franjo Tudman. Today, Novi list remains independent and continues to achieve journalistic and business success.

4.      Novi list's financial success is reflected in its market worth, which is conservatively estimated at more than $35 million (€25 million). As noted below, this means that other than a loan to Riječki list, which has been paid off with interest, MDEF has seen an initial investment of just under $ 1.2 million, (1.8 million German marks ("DEM"))[2] turn into more than $10 million in just over eight years. During these eight years, MDEF has also received dividends of approximately $759,466.

5.      Novi list's employees worked extremely hard and took great personal risks to purchase Novi list in 1993 and keep it independent throughout the difficult times Croatia endured both during and after the Croatian war of independence. The Option Agreement provides a means for Novi list to revert to the ownership of the people responsible for its success – its journalists and other employees. Now that MDLF's loan has been paid off, and Novi list is financially stable and remains editorially and politically independent (and MDLF has profited handily by all accounts), Novi list and its employees have earned the right to own the newspaper that they built.

6.      I served as Novi list's CEO from July 1, 1987 to April 30, 2005, and as Novi list's Editor-in-Chief between 2000 and 2003. I have served as the Chairman of Novi list's supervisory Board since August 2005.

---

[2]   This amount was calculated using a historic conversion rate of .53780 calculated from http://www.oanda.com/convert/fxhistory. On October 28, 1999, DEM 1.8 million was worth $968,040. All historical currency conversions were derived using conversion rates from this website unless otherwise indicated.

*CERTIFIED TRANSLATION FROM CROATIAN LANGUAGE*

7.      Prior to my employment at Novi list, I was the general manager of the Institute for Regional Planning in Rijeka. When I joined Novi list in 1987, it was a state-owned enterprise.

8.      Novi list was privatized in 1993, when about 334 current and retired employees of Novi list purchased the paper for approximately DEM 4.1 million (approximately $2.5 million). Although the purchase price was quite expensive in relation to the average monthly salary at the time of approximately DEM 300 ($180) per month, 184 employees, led by me, secured a loan from Riječka Bank, to finance the purchase. These 184 employees, including myself, owned approximately 84% of the newspaper. The loan from Riječka Bank was paid off in 1999.

9.      By 1999, strong international pressure against Croatia's unpopular president, Franjo Tuđman, to step down from power led to undeclared but strictly applied economic sanctions that made it impossible for Novi list to access international capital markets. Nor could Novi list access financing from the State, as it was one of the few public voices of opposition to the Tuđman regime. During Tuđman's presidency, many other opposition newspapers folded.

10.     Novi list could have secured financing from the State had it abandoned its opposition stance, but it did not do so. By the late 1990s, Novi list found itself badly in need of new printing equipment, but it simply could not finance the purchase of the equipment, without access to the domestic or international capital markets.

11.     During the late 1990s, the Open Society Institute ("OSI"), an NGO incorporated and funded by George Soros, was active in Croatia. OSI attracted a circle of important Croatian intellectuals. Novi list, as an independent newspaper, provided an outlet for OSI, which had been boycotted by most of the state-owned papers. Novi list printed OSI's bulletins and other materials and distributed them nationally. Novi list printed also other independent newspapers such as daily newspaper Glas Istre and weekly newspaper Feral Tribune. Feral Tribune enjoyed

3

*CERTIFIED TRANSLATION FROM CROATIAN LANGUAGE*

the financial help of OSI. In 1995, Novi list started to print a daily newspaper Karlovački list which was printed in small number of copies and was distributed in the during the war devasted Karlovac region and had a financial help of Novi list.

12.    OSI was a client of Novi list, and it was aware of the problems with the printing machines.   Associates of Mr. Soros eventually approached Novi list and offered Novi list financing in exchange for equity in the newspaper.   Negotiations ensued with MDLF, another Soros-controlled institution whose primary activity is to invest in independent news media in developing countries.

13.    Jaroslaw Gora, Saša Vučinić, Harlan Mandel, Deputy Managing Director of MDLF and leading people from MDLF, eventually met with me and proposed a complex investment scheme to Novi list on a "take it or leave it" basis.   In furtherance of its investment scheme, MDLF incorporated MDEF to serve as a vehicle for holding Novi list shares.

14.    At about the same time, Novi list's small shareholders, mostly journalists and other Novi list employees, formed Riječki list d.o.o. ("Riječki list"), a Croatian limited liability company, to serve as a holding company for Novi list shares.   Riječki list currently holds just over 50% of Novi list's outstanding shares.

15.    On October 28, 1999, in furtherance of MDLF's investment proposal, MDLF, MDEF, Novi list, and Riječki list entered into a series of agreements (collectively, the "Agreements") including:

> •    The "Memorandum of Understanding," entered into among MDLF, MDEF, Novi list, and Riječki list outlining their various agreements and the relationships among them.

4

*CERTIFIED TRANSLATION FROM CROATIAN LANGUAGE*

- The "Share Subscription Agreement," entered into between MDEF and Novi list, providing for the sale to MDEF of 18,190 newly-issued shares of Novi list.

- The "Credit Agreement," entered into between MDLF and Riječki list, providing a loan (the "Loan") from MDLF to Riječki list of €970,000 to be used for the purchase of Novi list shares from Novi list's treasury and from small shareholders of Novi list. The purpose of the Loan was assist Riječki list with the purchase of Novi list shares. The Loan was paid off, with interest, on February 12, 2007, and the Credit Agreement is no longer in force.

- The "Shareholders Agreement," entered into between Riječki list and MDEF to govern their relationship and control over Novi list's affairs.

- The "Option Agreement," entered into between MDEF and Novi list granting Novi list the right to two-thirds of MDEF's shares in Novi at a below-market option price (the "Option").

16.    Pursuant to the various agreements, Novi list's employee owners, who had acquired their stake in the company at great personal expense in 1993, agreed to give up a 30% equity stake to MDEF for a price of 1.8 Million DEM (just under $1.2 million).

17.    MDEF's purchase price reflected a per share value of DEM 100 ($53.78) per share, based on the nominal per share value in the 1993 privatization.[3] The price at which MDEF purchased the shares in 1999 represented a 60% discount over the audited book value of 947.19 Kuna ($130.71) per share. (*See* Letter faxed to Tin Dolički on October 2, 2007 from Nada Prelic attached as Exhibit A.).

18.    The total cost of the new printing facility was more than 10 million DEM (approximately $7.8 million). About 50% of this total was secured through the agreements with Soros-controlled entities, with 1.8 million DEM (just under $1 million) provided by MDLF

---

[3] Based on the price of 380.18 Kuna per share set forth in Exhibit A, the US dollar price paid by MDEF per share of Novi list was $52.44 - slightly less than the DEM conversion rate.

through the purchase of Novi list shares, and approximately DEM 3.4 million (approximately $2.65 million) from a commercial loan secured from an Austrian bank (Raffeisenbank Austria d.d.) and guaranteed by the Soros Economic Development Fund. The remaining 50% of the cost was independently financed by Novi list.

19.    Both the loan from MDLF to Riječki list and the loan from Raffeissenbank Austria d.d. to Novi list have been paid in full with interest. There are no outstanding loans due from either Novi list or Riječki list to any Soros entity.

20.    For seven years, Novi list, Riječki list, MDEF, and MDLF successfully operated under the Agreements without incident. During the majority of this seven-year period, I managed and ran Novi list, and for most of this time I enjoyed a good relationship with MDLF/MDEF. In addition, during that seven-year period there were no major conflicts between the supervisory board and MDEF.

21.    In April 2004 I suffered a stroke. As a result, in April 2005, I had to prematurely step down from my role as Novi list's CEO. My former assistant of several years, Zoran Borčić, was elevated to the CEO position upon my recommendation and with the unanimous support of the supervisory board. I hoped that Mr. Borčić would lead Novi list into a new period of even greater success, and I, too, offered Mr. Borčić my full support.

22.    MDEF previously had a very close relationship with Mr. Borčić, who is fluent in English (which I am not).

23.    Mr. Jaroslaw Gora lives in Warsaw and does not speak Croatian and therefore Mr. Borčić was, owing to English language knowledge and good relationship with MDLF, the

regular and exclusive link between the Novi list's Management and Supervisory Board and Riječki list.

24.    As a Novi list management board member, Mr. Borčić could not, as a matter of Croatian law, also serve on Novi list's supervisory board.  Although Mr. Borčić's acting on MDEF's behalf at meetings of the supervisory board was improper, Novi list wanted to maintain good relations with MDEF and did not object.

25.    Mr. Borčić held the CEO's post for only eighteen months.  In that short time, his shortcomings as the head of Novi list became clear.

26.    Among other things, two acts by him proved to be unacceptable to the Novi list supervisory board.

27.    First, Mr. Borčić announced during the company's annual New Years' party on December 14, 2006, attended by Novi list clients, advertisers, and other important public figures (including both the mayor and the archbishop of Rijeka), that Novi list's supervisory board had decided to put the newspaper up for sale.  Not only was this false, it was a completely inappropriate subject for this setting, and it led to bad publicity for Novi list.  It also sparked a negative reaction from Novi list's journalists and staff who suddenly feared for the stability of the paper.

28.    Second, Mr. Borčić bound Novi list to a contract with competing publisher, European Press Holdings ("EPH").  Under the terms of that agreement, Novi list agreed to print EPH's free daily, Metro Express, and to include 4-5 pages from Novi list in each edition of Metro Express.

29.    The deal with EPH was a disaster for Novi list for a variety of reasons.  The publication of Novi list articles in Metro Express, which is distributed free of charge throughout

*CERTIFIED TRANSLATION FROM CROATIAN LANGUAGE*

Croatia, served as a disincentive for consumers to purchase Novi list from the newsstands. Moreover, Metro Express is not considered a prestigious publication, but rather the opposite, and Novi list's journalists were incensed that their intellectual work product was being published in such a forum.

30.     Finally, the price agreed to for the publication of these articles was unacceptably low—a mere 1,000 Kuna ($176)[4] per day or 20,000 Kuna ($3,520) per month. This compares to a price of one advertisement page in Novi list.

31.     On January 5, 2007, the Novi list supervisory board voted in favor of Mr. Borčić's termination by a simple majority of votes (3:2), in accordance with Article 244, Para. 2 of the Croatian company law and Novi list's Articles of Association. (Attached as Exhibit B hereto is a copy of the original, and an English translation, of supervisory board Resolution No. 1 of January 5, 2007, terminating Mr. Borčić as a member of the managing board and setting forth in detail the reasons for his termination.)

32.     Following Mr. Borčić's dismissal, Novi list's Supervisory Board appointed Franjo Butorac to serve as Novi list's CEO. Mr. Butorac has more than twenty years of experience in the publishing industry. He started his career as a journalist at Novi list. He was the General Manager of a publishing company, Tiskara Rijeka, between 1987 and 1990, and the General Manager of another publishing company, Adamic, from 1995 to 2007.

33.     After becoming the Novi list CEO, as soon as the Metro Express contract allowed, Mr. Butorac terminated the Metro Express i.e. EPH contract regarding the editorial

---

[4] Based on the average conversion rate for the month of January 2007.

cooperation and increased the price for printing Metro Express, much to the relief of Novi list's journalists and editors.

34.    Novi list also soon discovered that Mr. Borčić had departed the company without leaving reliable records as to the condition of Novi list.  In particular, neither the financial nor legal departments had copies of the agreements with outside contractors.  Concerned that he did not have a reliable way of determining the status of the company, Novi list's CEO Mr. Butorac ordered that an outside audit should take place.  With the approval of the supervisory board, in February 2007, Mr. Butorac commissioned an independent and respected Croatian audit firm, Revizija Zagreb d.o.o., to examine the company's books and records.  The cost of this audit was less than $20,000, a small amount for a company whose total operating income in 2006 was approximately $30 million.

35.    MDEF/MDLF reacted angrily to the dismissal of Mr. Borčić.  As described below, MDEF/MDLF sent the Notices of Termination and Default on January 29, 2007, claiming that Mr. Borčić's dismissal was a violation of Croatian laws and regulations.  MDEF and MDLF sent these notices on the same day as Mr. Borčić's filing his wrongful dismissal case in the Commercial Court of Rijecka.

36.    After MDEF sent the Notice of Termination, Novi list informed MDEF that it had commissioned an outside audit.  MDEF's supervisory board representative, Mr. Gora, and Mr. Harlan Mandel objected to the audit, insisting that the new CEO Mr. Butorac did not have authority to order it and that the supervisory board had not properly authorized it.  At the time of MDEF's objections to the audit, Mr. Borčić's lawsuit was pending in the Commercial Court in Rijeka, seeking his reinstatement as a management board member.

9

37.    Despite MDEF's objections, the audit was conducted, and it revealed a number of irregularities regarding Mr. Borčić's management of the company, principally in contracts that Mr. Borčić made with outside suppliers. (The audit report together with a translation is attached as Exhibits C and D, respectively.) Among the irregularities found by the auditors were that contracts with outside suppliers who received substantial payments in 2006 were undocumented as to what work was done, who authorized it, or indeed whether any work was done at all. (Exhibits C and D at. pp. 65-66. paras. 20-24, 26.). Some of the firms involved were ones with whom Mr. Borčić was believed to have a personal relationship with the owners.

38.    The auditors in particular criticized the relationship with the company's principal IT contractor, NetCom d.o.o. ("NetCom"). The report stated that the contracts did not appear to have been awarded through a competitive bidding process. Mr. Borčić's background is in IT, and he is believed to have prior relationships with contractors such as NetCom.

39.    After Mr. Borčić had left office it was discovered that he had been keeping the records about certain of these outside suppliers not in the company's offices, but at his home.

40.    Had MDLF's/MDEF's objections to the outside audit succeeded in either preventing the audit, or the disclosure of its results, this information about the irregularities as to the outside contractors hired by Mr. Borčić might never have been obtained. Novi List has brought the results of the audit to the attention of the Commercial Court in Rijeka, in Mr. Borčić's lawsuit seeking to be reinstated as a management board member.

41.    As noted, MDEF/MDLF responded to the dismissal of Mr. Borčić by sending a so-called "Notice of Default" to Riječki list on January 29, 2007, which purported to terminate the Credit Agreement between MDLF and Riječki list.

42.     In the Notice of Default, MDEF/MDLF claimed that Mr. Borčić's termination violated several provisions of the Credit Agreement, including covenants requiring Riječki list to comply with, and to ensure Novi list's compliance with, applicable laws and regulations. MDLF did not specify what laws and regulations might have been violated. MDLF also unilaterally accelerated Riječki list's outstanding debt under the Credit Agreement.

43.     At the same time, MDEF/MDLF sent a purported "Notice of Termination" to Novi list, alleging that Riječki list had breached the Credit Agreement and that MDLF's notice of that purported breach, as well as the fact of Mr. Borčić's dismissal, automatically terminated the Option Agreement. As noted, both of these notices were sent the same day Mr. Borčić filed his case against Novi list.

44.     As of the date that MDEF/MDLF accelerated its loan to Riječki list, just one installment of only €102,000 (approximately $140,000.00) remained outstanding under the loan. That installment would have come due within just a few months, on July 30, 2007.

45.     On behalf of Riječki list, I pleaded with MDEF/MDLF's representatives, including Mr. Mandel, and MDEF's representative on Novi list's Supervisory Board, Jaroslaw Giora, that Mr. Borčić's termination was proper and in the best interests of Novi list. I carefully explained the reasons for Mr. Borčić's dismissal. MDEF/MDLF declined to withdraw their Notice of Default.

46.     Considering the fact that only one installment remained on the loan, and since that installment would come due in several months in any event, Riječki list decided to simply pay the final installment on the Loan, and did so on February 12, 2007. It did so in order to avoid any possible dispute under the Credit Agreement by fully discharging its obligations.

11

47.    The payment was made within ten days of the receipt of the Default Notice. MDLF accepted that payment and never suggested that it had not been made within the time specified in the Default Notice.

48.    After receiving that payment without objection, MDLF took no further action regarding the January 29, 2007 Default Notice or Termination Notice.

49.    In April 2007, MDEF/MDLF sought to place before the shareholders of Novi list, at an extraordinary shareholders' meeting on May 11, 2007, resolutions expressing dissatisfaction with the actions of the supervisory board, and expressing a vote of no-confidence in management board member Mr. Butorac. The resolution does not specify the grounds for these resolutions. (An English version of the Agenda for the extraordinary shareholders meeting is attached hereto as Exhibit E.) However, MDEF/MDLF had previously made clear that the commissioning of the audit by Mr. Butorac, and the approval of it by the supervisory board, were two grounds for these resolutions.

50.    On or about April 12, 2007, MDEF wrote to Riječki list and demanded a power of attorney for the special shareholders meeting granting MDEF a proxy (the "Proxy") to vote a sufficient number of Riječki list's shares in Novi list to give MDEF voting parity with Riječki list. (A copy of MDEF's April 12 letter is attached as Exhibit H to the Declaration of Harlan Mandel in Support of Plaintiff's Motion for Partial Summary Judgment.)

51.    This was the first time in the seven-year relationship between MDEF, Novi list, and Riječki list that MDEF made such a request.

52.    Riječki list wrote back to MDEF and explained that Riječki list could not grant the Proxy because such an act would violate Croatian law and would probably render infirm any

*CERTIFIED TRANSLATION FROM CROATIAN LANGUAGE*

votes made pursuant to the Proxy. Despite the attempt to use a shareholders' meeting to block the audit, Riječki list reaffirmed its intent to honor its obligations under the Shareholders' Agreement and proposed a work-around that would give MDEF voting parity. (A copy of Riječki list's letter responding to MDEF is attached as Exhibit I to the Declaration of Harlan Mandel in Support of Plaintiff's Motion for Partial Summary Judgment.)

53.     I met with Mr. Mandel again on April 26, 2007 to try to resolve the Proxy issue, but he would not agree to any of our proposals to resolve the impasse.

54.     On June 19, 2007, Novi list held a meeting of its supervisory board. Jaroslaw Gora, MDEF's representative, attended that meeting, during which it was announced that the next shareholders' meeting would take place on August 3, 2007. Those attending the June 19th meeting, including Mr. Gora, discussed an agenda for the August 3 meeting, and they proposed a list of issues to be decided at the August 3 meeting.

55.     The following day, on June 20, 2007, Novi list also published an announcement for the upcoming August 3 meeting in the Official Gazette of Croatia, as was the company's typical practice. Novi list sent written notice, with an invitation to the meeting, to all Novi list shareholders, including MDEF, on July 11 and 12, 2007, by courier. (Attached as Exhibit F are true and correct copies of the written notices sent to Novi list's shareholders by courier.) Provision of notice in this manner is, and has been, Novi list's customary practice and procedure.

*CERTIFIED TRANSLATION FROM CROATIAN LANGUAGE*

56.     Shortly thereafter, it came to Novi list's and my attention that MDEF objected to the manner in which notice of the August 3 meeting was given to MDEF. MDEF has never objected to the manner in which notice was given for previous shareholders' meetings. Novi list offered to and agreed to postpone the shareholders' meeting, and such meeting has not taken place.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed on October 10, 2007
Rijeka, Croatia

*(signature illegible)*
**ZDENKO MANCE**

---

*No.117/07*

*I, Katica Vujević-Jolić sworn court interpreter for English and German language, reappointed by the decision No. 4Su-297/07 of 8 March 2007 of the President of the County Court of the City of Zagreb, hereby certify that the above translation fully complies with the Croatian original.*

*11.10.2007*

14