UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

Media Development Equity Fund, a New York Limited
Liability Company,

                       Plaintiff,

          -against-

Novi list d.d., a joint stock company organized
under the laws of the Republic of Croatia,

                    Defendant.
-------------------------------------------------------------------------x

**07 CV 3624 (PKL)**

**DEFENDANT'S
COUNTER-STATEMENT
IN OPPOSITION TO
PLAINTIFF'S
<u>RULE 56.1 STATEMENT</u>**

Pursuant to Local Civil Rule 56.1(b) of this Court, Defendant Novi list d.d. ("Novi list")

respectfully submits the following statement in response to Plaintiff's Statement of Undisputed

Material Facts dated August 10, 2007 ("Plaintiff's Statement"), and to identify material facts as

to which Novi list contends there are genuine issues to be tried.  Novi list reserves all of its rights

under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and any other

applicable laws or rules to object to the admissibility of any of the testimony or documents

referred to in Plaintiff's Statement.

      This Counter-Statement responds to Plaintiff's Statement paragraph by paragraph.  Novi

list objects to and/or controverts each of Plaintiff's statements below in whole or in part except

where the word "agree" is used, and, where appropriate, said agreement is qualified and Novi

list's objections to admissibility are noted.  Novi list also sets forth below additional material

facts as to which there exist genuine triable issues requiring denial of summary judgment.

    A.     **Parties and Interested Non-Parties**

    1.     MDLF is a public charity that provides low-cost financing to independent news

media in emerging democracies. (Mandel Decl. at ¶ 4.)

**Response:**

Novi list neither admits nor denies paragraph 1, as it lacks sufficient information and/or

knowledge concerning MDLF's organizational status and purpose and would need to take

discovery in order to respond to the assertions contained in paragraph 1. Novi list also notes,

however, that this statement is immaterial to the issues on which Plaintiff is moving for summary

judgment. Accordingly, Novi list has no burden to identify evidence controverting it. *See* Fed.

R. Civ. P. 56(e); Local R. 56.1.

2.     MDEF was formed by MDLF in order to make a significant equity investment in
defendant Novi List, as a result of which MDEF is now the second largest shareholder in Novi
List, and owns 30% of Novi List's stock. (Mandel Decl. at ¶ 4.)

**Response:**

Novi list does not dispute the statements in paragraph 2 concerning the shareholding, but

notes that the investment was approximately $1.2 million in a company that is now worth over

$35 million. (Mance Decl. ¶ 4.)

3.     Defendant Novi List is the largest independent newspaper in Croatia,
headquartered in Rijeka, the third largest city in Croatia. (Mandel Decl. at ¶ 5.)

**Response:**

Novi list does not dispute the statements in paragraph 3.

4.     Novi List approached MDLF for financial assistance to address its problems. The
agreements at issue in this action were entered into as a result. (Mandel Decl. at ¶ 5.)

**Response:**

Novi list disputes paragraph 4 and asserts that Associates of George Soros approached

Novi list and offered Novi list financing in exchange for an equity interest in the newspaper.

(Mance Decl. ¶ 12.) Novi list acknowledges that ensuing negotiations with MDLF, on a "take it

or leave it" basis, resulted in the agreements at issue in this action. (Mance Decl. ¶¶ 13, 15.)

5.      Non-party Rijecki List is Novi List's largest shareholder, with 50.002% Novi List's stock, which was largely purchased with funds borrowed from MDLF. (Mandel Decl. at ¶ 6.)

**Response:**

Novi list does not dispute the statements in paragraph 5. Novi list also notes, however, that this statement is immaterial to the issues on which Plaintiff is moving for summary judgment. Accordingly, Novi list has no burden to identify evidence controverting it. *See* Fed. R. Civ. P. 56(e); Local R. 56.1. Furthermore, any funds borrowed from MDLF have been repaid in full. (Mance Decl. ¶ 19.)

6.      Rijecki List was created, through assistance from MDLF, for the purpose of stabilizing ownership in Novi List and ensuring that Novi List could maintain its editorial independence as well as pursue sound governance and management practices. (Mandel Decl. at ¶ 6.)

**Response:**

Novi list agrees that Riječki list was created to stabilize ownership in Novi list and ensure that Novi list could maintain its editorial independence but disputes that Riječki list was created for Novi list's pursuit of sound governance and management practices. (*See* Mance Decl. ¶ 14.)

**B.    MDLF's Financial Assistance to Novi list**

7.      Starting in 1996, MDLF began to provide Novi List with critical financial assistance, including two loans to Novi List that were repaid without incident. (Mandel Decl. at ¶ 7.)

**Response:**

Novi list disputes the statements in paragraph 7. MDLF did not provide funding to or invest in Novi list until 1999. (*See* Mance Decl. ¶¶ 8-15.) Novi list also notes that the statements contained in paragraph 7 are immaterial to the issues on which Plaintiff is moving for summary judgment. Accordingly, Novi list has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1.

3

8.      In 1999, Novi List again approached MDLF seeking financial assistance to ensure its continued independence.  (Mandel Decl. at ¶ 7.)

**Response:**

Novi list disputes paragraph 8 and asserts that associates of George Soros approached

Novi list and offered Novi list financing in exchange for an equity interest in the newspaper.

(Mance Decl. ¶ 12.)  Negotiations ensued with MDLF, another Soros-controlled institution.

(Mance Decl. ¶ 12.)  Harlan Mandel, Deputy managing Director of MDLF, eventually met with

Novi list's CEO, Zdenko Mance, and proposed a complex investment scheme to Novi list on a

"take it or leave it" basis.  (Mance Decl. ¶ 13.)  Novi list notes, moreover, that it sought financing

primarily to obtain a new printing press to replace old equipment.  (*See* Mance Decl. ¶¶ 10, 12.)

9.      Novi List also needed MDLF funds to replace aging and outmoded equipment. Banks approached by Novi List for financing required Novi List's shares as security for the loan, and Novi List feared that collateralizing the shares could compromise editorial independence. (Mandel Decl. at ¶ 8.)

**Response:**

Novi list does not dispute the statements in paragraph 9 but states further that although it

needed funds it obtained only about half of the money that it needed from MDLF and the Soros

guaranty.  (Mance Decl. ¶ 18.)

10.     MDLF worked closely with Novi List's journalists and managers to create a financial package that would address Novi List's needs for new capital and a more stable ownership structure.  (Mandel Decl. ¶ 9.)

**Response:**

Novi list disputes paragraph 10 and states that MDLF proposed a complex investment

scheme to Novi list on a "take it or leave it" basis.  (Mance Decl. ¶ 13.)  Novi list also notes that

MDLF's investment in Novi list has appreciated handsomely to both MDLF's and MDEF's

benefit.  (*See* Mance Decl. ¶ 5.)  Novi list also states that the financial package proposed by

MDLF served to finance the purchase of printing equipment -- not the establishment of a

management structure at Novi list, which was already well established by 1999. (*See* Mance Decl. ¶ 10.)

11.    MDEF was formed as a vehicle to provide a capital infusion to Novi List, and to hold 30% of its shares. (Mandel Decl. ¶ 9.)

**Response:**

Novi list agrees that MDEF was formed as a vehicle for MDLF to invest in Novi list and that MDEF holds approximately 30% of Novi list's shares. (Mance Decl. ¶¶ 13, 16.)

12.    Rijecki List was formed, and largely funded with money borrowed from MDLF, so that small shareholders who wished to sell their Novi List shares could do so without jeopardizing Novi List's independence. (Mandel Decl. ¶ 9.)

**Response:**

Novi list agrees that its small shareholders, mostly journalists and other Novi list employees, formed Riječki list to serve as a holding company for Novi list shares in part to ensure that Novi list could maintain its editorial independence. (*See* Mance Decl. ¶ 14.)  Novi list agrees that Riječki list was funded in part by a loan from MDLF.  (Mance Decl. ¶ 15.)

13.    Novi List issued 18,190 new shares, bringing the total number of issued Novi List shares to 60,000, and MDEF purchased all of these newly issued shares pursuant to a Share Subscription Agreement, dated October 28, 1999 (the "Shares Subscription Agreement"). (Mandel Decl. at ¶ 10 and Exh. A.)

**Response:**

Novi list does not dispute the statements in paragraph 13.  Novi list points out further that Novi list's employee -- owners, who had acquired their stake in Novi list at great personal expense in 1993, agreed to grant MDEF a 30% equity stake in Novi list in return for a price of 1.8 million DEM (just under $1 million), at a discount of 60% from audited book value. (Mance Decl. ¶¶ 16-17.)

14.    The Shares Subscription Agreement required, among other things, that, "[a]s long as" MDEF remains a shareholder in Novi List, Novi List "Shall, on or before the date that it gives official notice to its shareholders of any shareholders meeting, furnish" MDEF "with notice

of such meeting and the agenda thereof" in writing.  (*See* Shares Subscription Agreement, Section 7.5.)

**Response:**

Novi list agrees that the quoted language appears in the Shares Subscription Agreement

but otherwise respectfully refers the Court to the full text of the Shares Subscription Agreement

for context.  (Mandel Decl., Ex. A)

15.     Rijecki List was formed for the limited purpose of purchasing Novi List shares, both from the Novi List treasury, and from small shareholders.  (Mandel Decl. at ¶ 11.)

**Response:**

Novi list agrees that Riječki list was formed to purchase Novi list shares from Novi list's

treasury and from small shareholders of Novi list.

16.     MDLF loaned Rijecki List money to fund those purchases, and the parties to that loan entered into a Credit Agreement, dated October 28, 1999 (the "Credit Agreement"). (Mandel Decl. at ¶ 11 and Exh. B.)

**Response:**

Novi list agrees that MDLF loaned Riječki list money to partially finance Riječki list's

purchases of Novi list shares and that MDLF and Riječki list entered into the Credit Agreement

dated October 28, 1999.  (Mance Decl. ¶ 15.)

17.     Rijecki List and MDEF entered into a Shareholders' Agreement, dated October 28, 1999 (the "Shareholders' Agreement").  (Mandel Decl. at ¶ 12 and Exh. C.)

**Response:**

Novi list does not dispute the statements in paragraph 17.

18.     The Shareholder's Agreement requires Rijecki List to provide MDEF a Proxy to ensure MDEF would always have equal voting rights at any Novi List shareholder meeting.  (*See* Shareholders' Agreement, Section 5.4.)

**Response:**

Novi list acknowledges that Section 5.4 of the Shareholders' Agreement provides that:

(a) MDEF and Riječki list should "have equal number of votes in the Shareholders' Meeting[]";

and (b) "[s]hould Riječki list come to hold more voting shares in the Company than [MDEF], Riječki list … accepts to grant [MDEF] a proxy to vote whatever number of Riječki list's shares are necessary to achieve parity in the number of votes held by Riječki list and [MDEF]." Novi list otherwise objects to paragraph 18 because paragraph 18 presents a conclusion of law rather than a statement of material fact and, as such, is both argumentative and conclusory. Novi list also respectfully refers the Court to the full text of the Shareholders' Agreement for context (Mandel Decl., Ex. C) and notes that Riječki list could not grant the power of attorney demanded by MDEF under paragraph 5.4 of the Shareholders' Agreement because such an act would be violative of Croatian law and would probably render any votes made pursuant to such a power of attorney infirm under Croatian law. (Dolički Decl. ¶¶ 17-18.)

19.    MDEF and Novi List also entered into an Option Agreement, dated October 28, 1999 (the "Option Agreement"). (Mandel Decl. at ¶ 13 and Exh. D.)

**Response:**

Novi list agrees with paragraph 19.

20.    The Option Agreement permits Novi List to purchase two-thirds of MDEF's Novi List shares at below market prices provided certain conditions are satisfied. (Mandel Decl. at ¶ 14 and Exh. D.)

**Response:**

Novi list does not dispute the statements in paragraph 20.

21.    As a transfer of an asset by MDEF to Novi List at a below-market price, MDEF's sale of shares to Novi List pursuant to the Option Agreement would be a charitable grant. (*See* 26 C.F.R. 53.4945-6(c).)

**Response:**

Novi list objects to paragraph 21 because it presents a conclusion of law rather than a statement of material fact and is both argumentative and conclusory. To the extent a response is required, Novi list responds that it lacks knowledge and information to know if paragraph 21 is

true. The statements in paragraph 21 are non sequiturs, as any option agreement in any corporate

context involves a right to purchase shares at below market prices, which would not render it a

"charitable grant." Novi list also notes that the statements contained in paragraph 21 are

immaterial to the issues on which Plaintiff is moving for summary judgment. Accordingly, Novi

list has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R.

56.1.

22.     Under the express terms of the Option Agreement the Option Agreement
automatically terminates upon a breach of any of the provisions of the Credit Agreement or any
of the other aforementioned agreements. (*See* Option Agreement, Article 7.)

**Response:**

Novi list disputes the statements in paragraph 22 and states further that neither Novi list

nor Riječki list breached any of the agreements referred to in paragraph 22. (*See* Mance Decl. ¶¶

41-48.) Novi list also respectfully refers the court to the full text of the Option Agreement for

context. In particular, Novi list disputes the meaning ascribed by MDEF to the term

"automatic," and states that no agreement can be deemed to be breached unless the allegation of

breach is factually true.

23.     The Option Agreement provides that, with regard to breaches of the Credit
Agreement, notice of default by MDLF to Rijecki List constitutes sufficient evidence of any such
breach. (*See* Option Agreement, § 7.2.)

**Response:**

Novi list disputes the statements in paragraph 23 and states further that Riječki list did

not breach the Credit Agreement. (*See* Mance Decl. ¶¶ 41-48.) Novi list also respectfully refers

the court to the full text of the Option Agreement for context. (Mandel Decl., Ex. D) In

particular, Novi list disputes the meaning ascribed by MDEF to the term "sufficient evidence,"

and states that such term at most operates only as a prima facie showing, which falls in the face

of evidence that the allegations of breach are factually or legally untrue or incorrect.

24.     Each of the aforementioned agreements contained certain affirmative covenants (the "Governance Covenants") that Novi List or Ri</ecki List, respectively, were obligated to abide by and which were designed to ensure sound corporate governance and MDEF's continued involvement in Novi List's affairs. (Mandel Decl. at ¶ 19 and Exh. A, § 7 (Shares Subscription Agreement), Exh. B., Article V (Credit Agreement); Exh. C., § 5 (Shareholders' Agreement), and Exh. D, Article V (Option Agreement).)

**Response:**

Novi list does not dispute the statements in paragraph 24 but states further that neither

Novi list nor Riječki list breached any of the agreements referred to in paragraph 24. Novi list

also respectfully refers the court to the full texts of the referenced agreements for context.

### C.     Breaches Resulting in Termination of the Option Agreement

25.     Led by Novi List's former CEO Zdenko Mance, Novi List engaged in various acts that MDLF and MDEF considered to be in violation of the Governance Covenants. (Mandel Decl. at ¶¶ 22-25.)

**Response:**

Novi list disputes paragraph 25 and denies that it violated the so-called "Governance

Covenants" in any way. (*See* Mance Decl. ¶¶ 41-48.)

#### 1.     Notice of Default

26.     On January 29, 2007 MDLF sent a Notice of Default to Rijecki List pursuant to the express terms of the Credit Agreement. (Mandel Decl. at ¶ 26.)

**Response:**

Novi list agrees that MDLF sent a so-called "Notice of Default" to Riječki list on or

about January 29, 2007 but states that Riječki list did not default under the Credit Agreement and

that said "Notice of Default" was unwarranted, pretextual, and factually and legally untrue. (*See*

Mance Decl. ¶¶ 41-48.) Novi list further states that MDLF declined to enumerate in the alleged

"Notice of Default" precisely what Croatian laws and regulations might have been violated by

Riječki list or Novi list. (Mance Decl. ¶ 42.) Novi list requires discovery of whether MDLF had

any actual knowledge that a breach of law had occurred, prior to its sending the "Notice of

9

Default," or if, in fact, it had actual knowledge that no breach of law had occurred.  (Schorr Decl. ¶¶ 4, 9.)  MDEF, moreover, admits that "fact disputes may exist over whether MDLF was correct that an Event of Default existed under the terms of the Credit Agreement."  (Pl.'s Mem. 16.)

27.    The Notice of Default specified that Rijecki List failed to adhere to its obligations contained in Article V of the Credit Agreement regarding the governance of Novi List. (Mandel Decl. at ¶ 26.)

**Response:**

Novi list acknowledges that said "Notice of Default" alleges that Riječki list failed to observe certain covenants contained in Article V of the Credit Agreement by taking actions to terminate Novi list's CEO for cause and to appoint a successor CEO.  (*See* Mance Decl. ¶¶ 41-43, 46.)  Novi list further states, however, that Riječki list did not default under the Credit Agreement and that said "Notice of Default" was unwarranted and pretextual.  (*See* Mance Decl. ¶¶ 41-48.)  MDEF, moreover, admits that "fact disputes may exist over whether MDLF was correct that an Event of Default existed under the terms of the Credit Agreement."  (Pl.'s Mem. 16.)  Novi list requires discovery of whether MDLF had any actual knowledge that a breach of law had occurred, prior to its sending the "Notice of Default," or if, in fact, it had actual knowledge that no breach of law had occurred.  (Schorr Decl. ¶¶ 4, 9.)

28.    The Notice of Default also specified that Novi List had failed to honor its obligations under Section 5.1 of the Option Agreement.  (Mandel Decl. at ¶ 26.)

**Response:**

Novi list acknowledges that said "Notice of Default" alleged Novi list failed to abide by Section 5.1 of the Option Agreement by taking actions to terminate Novi list's CEO for cause and appoint a successor CEO.  (*See* Mance Decl. ¶ 42.)  Novi list states further, however, that Novi list complied with Section 5.1 of the Option Agreement and that said "Notice of Default" was unwarranted and pretextual.  (*See* Mance Decl. ¶¶ 41-48.)  Novi list requires discovery of

whether MDLF had any actual knowledge that a breach of law had occurred, prior to its sending

the "Notice of Default," or if it, in fact, had actual knowledge that no breach of law had occurred.

(Schorr Decl. ¶¶ 4, 9.)

29.    On January 29, 2007, MDEF sent a Notice of Termination to Novi List, informing
Novi List that that the Option Agreement had been automatically terminated due to the issuance
of a Notice of Default to Rijecki List. (Mandel Decl. at ¶ 26.)

**Response:**

Novi list agrees that MDEF sent a so-called "Notice of Termination" to Novi list on or

about January 29, 2007 but states that Rijecki list did not default under the Credit Agreement,

that Novi list did not breach any of the provisions of the Option Agreement, and that said

"Notice of Termination" was unwarranted and pretextual. (*See* Mance Decl. ¶¶ 41-48.) MDEF,

moreover, admits that "fact disputes may exist over whether MDLF was correct that an Event of

Default existed under the terms of the Credit Agreement." (Pl.'s Mem. 16.) Furthermore, Novi

list requires discovery of whether MDEF had any actual knowledge that a breach of law had

occurred, prior to its sending the "Notice of Termination," or if, in fact, it had actual knowledge

that no breach of law had occurred. (Schorr Decl. ¶ 4, 9.)

30.    Rijecki List did not contest the Notice of Default nor the existence of the Events
of Default described therein. (Mandel Decl. at ¶ 27.)

**Response:**

Novi list disputes paragraph 30 and states that Rijecki list protested MDLF's sending of

the purported "Notice of Default." (Mance Decl. ¶ 45.) MDEF, moreover, admits that "fact

disputes may exist over whether MDLF was correct that an Event of Default existed under the

terms of the Credit Agreement." (Pl.'s Mem. 16.) Novi list further states that it cured any

default by full payment of all outstanding amounts within the time specified in the "Notice of

Default" and that MDLF accepted such payment and did not contest the timeliness thereof and

thereafter took no further action regarding the "Notice of Default." (Mance Decl. ¶¶ 46-48.)

31.    Rijecki List paid the amounts due under the Credit Agreement as demanded in the Notice of Default. (Mandel Decl. at ¶ 27.)

**Response:**

Novi list agrees that Riječki list paid the final installment due under the Credit

Agreement. Novi list states further that only one installment remained on the loan at the time it

was accelerated by MDLF and, since that installment would come due in several months in any

event, Riječki list decided to simply pay the final installment on the Loan on February 12, 2007

to cure any possible default under the Credit Agreement by fully discharging its obligations.

(Mance Decl. ¶ 46.) To the extent that the payment of the final installment could be deemed to

have been made in response to the "Notice of Default" rather than to preempt it, Novi list states

that the payment was made within the ten-day cure period set forth in the letter, which prevents

any alleged default by Riječki list from becoming an Event of Default as that term is defined in

the Credit Agreement. (Mance Decl. ¶ 47.)

### 2.    Failure to Deliver Proxy

32.    MDEF and other minority shareholders called for an extraordinary shareholders meeting to be held on May 11, 2007. (Mandel Decl. at ¶ 28.)

**Response:**

Novi list does not dispute the statements in paragraph 32.

33.    On April 12, 2007, MDEF invoked its express right under the Shareholders' Agreement for a proxy to vote the number of shares required to achieve parity with the number of votes held by Rijecki List. (Mandel Decl. at ¶ 28.)

**Response:**

Novi list agrees that on or about April 12, 2007, for the first time in the relationship

between MDEF and Riječki list, MDEF demanded a power of attorney giving MDEF a proxy to

vote a sufficient number of Riječki list's shares in Novi list to give MDEF voting parity with

12

Riječki list at an upcoming shareholders' meeting. (Mance Decl. ¶¶ 50-51; Dolič,ki Decl. ¶ 14.) Novi list states further that Riječki list's counsel explained to MDEF that Riječki list could not grant the proxy demanded by MDEF because to do so would violate Croatian law and would probably render infirm any votes made pursuant to such a proxy. (Dolič,ki Decl. ¶ 16)

34.    Rijecki List refused to issue the proxy. (Mandel Decl. at ¶ 29.)

**Response:**

Novi list disputes paragraph 34. Novi list notes that within a week of MDEF's demand for the power of attorney, Riječki list's Croatian counsel, Tin Dolič,ki, wrote to MDEF and explained that Riječki list could not grant the power of attorney demanded by MDEF under paragraph 5.4—which had been drafted by MDEF's Croatian counsel—because such an act would violate Croatian law and would probably render any votes made pursuant thereto infirm under Croatian law. (Dolički Decl. ¶ 16.) More specifically, Mr. Dolički noted that Croatian law does not permit the transfer of voting rights separately from the shares themselves. (Dolički Decl. ¶ 17.) In that same letter, Mr. Dolički emphasized that Riječki list intended "to act in accordance with the Shareholders' Agreement[,]" wished "to ensure that the entire Clause 5 (Voting Powers) [be] fully implemented[,]" and further recognized "the intention of the Shareholders' Agreement that both Shareholders have [an] equal number of votes" at shareholders' meetings. (Dolički Decl. ¶ 17.) On behalf of Riječki list, Mr. Dolički proposed a work-around solution for the problem and suggested that MDEF's and Riječki list's representatives should discuss his proposal at a preliminary meeting, in advance of the shareholders' meeting, as contemplated by Paragraphs 5.1 and 5.2 of the Shareholders' Agreement. (Dolič.ki Decl. ¶ 19.) Had MDEF accepted Mr. Dolički 's proposal, the voting parity impasse could have been averted. (Dolič.ki Decl. ¶ 21.) But MDEF was insistent that the power of attorney, despite its legal flaws, be enforced as written. (Dolič.ki Decl. ¶ 21.) On April

23, 2007, MDEF's Croatian counsel formally rejected Mr. Dolički's proposal, slightly adjusted MDEF's request for the power of attorney, and repeated MDEF's demand that Riječki list execute it. (Dolički Decl. ¶ 22.) MDEF and Riječki list met again on April 26, 2007, but they could not resolve their impasse over this issue. (Dolički Decl. ¶ 23.)

35.    On April 19, and again on April 26, MDEF was told by Rijecki List that MDEF would not be provided with a proxy as required by the parties' agreement. (Mandel Decl. at ¶¶ 29-30.)

**Response:**

Novi list disputes paragraph 35. Novi list notes that Riječki list's Croatian counsel explained to MDEF why the proxy rights could not be issued as demanded by MDEF, expressed Riječki list's intention to act in accordance with the Shareholders' Agreement and implement the "voting parity" provision in the Shareholders' Agreement, and proposed a work-around solution to the problem in good faith. (Mance Decl. ¶¶ 52-53; Dolički Decl ¶¶ 16-21.) Riječki list's attempts to provide a lawful solution fully accorded with the Shareholders' Agreement. Pursuant to Section 13.2 of the Shareholders' Agreement, if a provision in the agreement is found to be invalid or unenforceable, then the parties must work together and agree to a valid substitute provision to "accomplish as nearly as possible the purpose and intent" of the invalid or unenforceable provision. Novi list notes that Riječki list's attempts to sort out this issue with MDEF were rejected by Novi list. (Mance Decl. ¶ 53; Dolički Decl. ¶ 20.)

36.    On July 12, MDEF again invoked its express right under the Shareholders' Agreement for a proxy to vote the number of shares required to achieve parity with the number of votes held by Rijecki List, this time in connection with the general assembly shareholders meeting scheduled for August 3, 2007. (Mandel Decl. at ¶ 35.)

**Response:**

Novi list acknowledges that on July 12, MDEF again demanded Riječki list issue a power of attorney to MDEF for voting a certain number of Riječki list's shares in Novi list to give

MDEF voting parity with Riječki list at the shareholders' meeting scheduled for August 3, 2007. Novi list states further that Mr. Zdenko Mance responded to MDEF's request on July 23, 2007, explaining, "The Assembly of Riječki list … discussed the request and passed a decision which states that the request … may not be granted because it is not in accordance with the Croatian regulations …. [,]" as and for the same reasons that Riječki list's Croatian counsel had previously explained to MDEF.  (Mandel Decl., Ex. K.)

37.    Rijecki List again refused to issue the proxy.  (Mandel Decl. at ¶ 36.)

**Response:**

Novi list disputes paragraph 37.  Novi list states that Riječki list's Croatian counsel explained to MDEF why the proxy rights could not be issued as demanded by MDEF, expressed Riječki list's intention to act in accordance with the Shareholders' Agreement and implement the "voting parity" provision in the Shareholders' Agreement, and proposed a work-around solution to the problem in good faith.  (Mance Decl. ¶ 52; Dolički Decl. ¶¶ 16-20; Mandel Decl., Ex. K.)

### 3.    Failure to Furnish Written Notice of General Assembly Shareholder Meeting

38.    On June 20, 2007, as required by law, the Official Gazette of Croatia published notice that Novi List's annual shareholder meeting would be held on August 3, 2007.  (Mandel Decl. at ¶ 37.)

**Response:**

Novi list does not dispute the statements in paragraph 38.

39.    Novi List failed to provide MDEF with written notice on or before June 20, the date that official notice was provided to shareholders, as required by the Share Subscription Agreement.  (Mandel Decl. at ¶ 37.)

**Response:**

Novi list disputes paragraph 39.  For example, Novi list disputes that formal notice of the shareholders' meeting was not provided to MDEF before June 20, 2007 and states that MDEF

came to have actual knowledge that a shareholders' meeting was scheduled for August 3, 2007, in advance of June 20, 2007, in a manner that was, and is, Novi list's customary practice and procedure and to which MDEF had never objected. (Mance Decl. ¶ 55; Doliĉki Decl. ¶ 26.) MDEF's representative on Novi list's supervisory board, Jaroslaw Gora, attended the June 19, 2007 meeting of Novi list's supervisory board, during which it was announced that the next meeting of the supervisory board would be held on August 3, 2007. (Mance Decl. ¶ 54; Doliĉki Decl. ¶ 24) Those attending the June 19, 2007 meeting, including Mr. Gora, discussed the agenda for the proposed August 3 meeting, and they proposed decisions to be made at the proposed August 3 meeting. (Mance Decl. ¶ 54.) Written notice, with an invitation to the meeting, was sent simultaneously to all of Novi list's shareholders, including MDEF, on July 11 and 12, 2007 by courier. (Mance Decl. ¶ 55.) Additionally, Novi list requires discovery on the question of MDEF's actual knowledge of the date and the agenda for the proposed August 3 meeting, given Mr. Gora's attendance at the June 19, 2007 supervisory board meeting. (Schorr Decl. ¶ 13.)

## NOVI LIST'S STATEMENT OF
## ADDITIONAL, DISPUTED MATERIAL FACTS

Novi list hereby submits the following additional material facts as to which there exist genuine issues to be tried:

40.    Novi list, Rijeĉki list, MDEF, and MDLF successfully operated without incident under the agreements at issue for more than seven years, until early 2007. (Mance Decl. ¶ 20.)

41.    Novi list is financially stable and editorially independent today and continues to achieve journalistic and business success. (Mance Decl. ¶ 3.)

42.     Novi list was privatized in 1993, when approximately 334 current and retired employees of the company purchased the paper for approximately 4.1 million German marks (DEM) (approximately $2.5 million).  (Mance Decl. ¶ 8.)

43.     The Option Agreement provides a means for Novi list to revert to the ownership of the people that are responsible for its success -- its journalists and employees who worked extremely hard and took great personal risks to purchase Novi list in 1993 and keep it independent throughout the difficult times in Croatia during and after the Croatian war of independence.  (Mance Decl. ¶ 5; See Drenjak Decl. ¶ 8.)

44.     Novi list's market value at present is conservatively estimated to be more than $35 million (€25 million).  (Mance Decl. ¶ 4.)  The appreciation of Novi list's market value has benefited all of Novi list's shareholders.  (*See* Mance Decl. ¶¶ 4-5.)

45.     MDEF's only investment in Novi list, an equity purchase in 1999 for a total purchase price of just under $1 million (1.8 million DEM), has appreciated in value to more than $10 million.  (Mance Decl. ¶ 4.)  During the past eight years, MDEF has also received dividends from Novi list of approximately $759,466 (Mance Decl. ¶ 4.)

46.     The price at which MDEF purchased its Novi list shares in 1999 represented a 60% discount over the audited book value of 947.19 Kuna ($130.71) per share.  (Mance Decl. ¶ 17.)

47.     The termination of Novi list's former CEO Zoran Borčić by a 3-2 vote of Novi list's Supervisory Board was proper in all respects and was in Novi list's best interest.  (Mance Decl. ¶ 31, 45.)

48.     While serving as Novi list's CEO, Mr. Borčić falsely and inappropriately announced, during the company's annual New Year's party on December 14, 2006, which was attended by Novi list's clients, advertisers, and other important public figures (including the mayor and the bishop of Rijeka), that Novi list's supervisory board had decided to put the newspaper up for sale. (Mance Decl. ¶ 27.) As a result of this false announcement, Novi list's journalists and staff began to fear for the paper's stability. (Mance Decl. ¶ 27.)

49.     While serving as Novi list's CEO, Mr. Borčić bound Novi list to a disadvantageous contract with a competing publisher, European Press Holdings ("EPH"), whereby Novi list obligated itself to print EPH's free daily, Metro Express, and to include 4-5 Novi list articles in each edition of Metro Express. (Mance Decl. ¶ 28; See Drenjak Decl. ¶¶ 2-3.)

50.     The publication of Novi list articles in Metro Express, which is distributed free of charge throughout Croatia, served as a disincentive for consumers to purchase Novi list from the newsstands. (Mance Decl. ¶ 29; See Drenjak Decl. ¶¶ 2, 4.) Also, Metro Express is not considered to be as prestigious a publication as Novi list, and Novi list's journalists were incensed that their intellectual work-product was being published in such a forum. (Mance Decl. ¶ 29; See Drenjak Decl. ¶¶ 5-6.) Furthermore, the price agreed to for the publication of these articles was unacceptably low. (Mance Decl. ¶ 30.)

51.     MDEF enjoyed a very close relationship with Mr. Borčić. (Mance Decl. ¶ 22.)

52.     Mr. Borčić regularly attended supervisory board meetings for MDEF when MDEF's representative on the supervisory board, Mr. Jaroslaw Gora, could not -- a frequent occurrence. (Mance Decl. ¶ 23.)

53.     Riječki list did not breach the Credit Agreement.  (Mance Decl. ¶¶ 42-43, 46.)

54.     MDLF's purported "Notice of Default" sent to Riječki list was unwarranted, pretextual, and in bad faith.  (*See* Mance Decl. ¶¶ 41-48.)  The "Notice of Default" did not cite to any Croatian law that was violated as the result of Mr. Borčić's termination, which was valid, as a matter of law.  (Mance Decl. ¶ 42; Dolički Decl. ¶ 3.)

55.     Riječki list pleaded with MDLF's representatives, including Mandel, and MDEF's representative on Novi list's Supervisory Board, Jaroslaw Gora, that Mr. Borčić's termination was proper and in the best interests of Novi list and carefully explained to them the reasons for Mr. Borčić's dismissal.  (Mance Decl. ¶ 45.)

56.     As of the date that MDLF accelerated its loan to Riječki list, just one installment of only €194,000 (approximately $250,000) remained outstanding under the loan and would have come due within just a few months.  (Mance Decl. ¶ 44.)

57.     By tendering payment of the final payment due under the Credit Agreement, Riječki list discharged its obligations thereunder and cured any purported "default" before it could become an "Event of Default" under the Credit Agreement.  (*See* Mance Decl. ¶ 46.)

58.     After receiving that payment without objection, MDEF took no further action regarding the January 29, 2007 Default Notice or Termination Notice.  (Mance Decl. ¶ 48.)

59.     Novi list's Supervisory Board's appointment of Franjo Butorac as Mr. Borčić's successor was proper in every respect and Mr. Butorac is qualified to hold the position of CEO. (Mance Decl. ¶ 32.)

60.     Following Mr. Borčić's termination, Novi list discovered that Mr. Borčić had departed the company without leaving reliable records as to the Novi list's financial condition. (Mance Decl. ¶ 34.)

61.     Mr. Butorac was concerned about the lack of records, and he ordered, with the supervisory board's approval, an outside audit.  (Mance Decl. ¶ 34.)

62.     MDEF placed before Novi list's shareholders a resolution attempting to block the audit ordered by Mr. Butorac.  (Mance Decl. ¶ 35.)

63.     MDEF's attempt to block the audit was unsuccessful, and the audit was conducted, revealing a number of irregularities regarding Mr. Borčić's management of Novi list. (Mance Decl. ¶ 37.)

64.     Novi list did not breach the Option Agreement.  (Mance Decl. ¶¶ 41-48.)

65.     MDEF's purported "Notice of Termination" sent to Novi list was unwarranted, pretextual, and in bad faith.  (*See* Mance Decl. ¶¶ 41-48.)

66.     Novi list requires discovery from MDEF on the issue of whether at the time MDEF and MDLF sent the "Notice of Termination" and "Notice of Default," respectively, they had *See*n or were aware of the contents of the complaint filed by Mr. Borčić in the Commercial Court of Rijeka, *See*king to challenge his removal from the Court Register; or whether MDEF or MDLF had knowledge of the decision of the Commercial Court approving Novi list's application to remove Mr. Borčić from the Court Register. (Schorr Decl. ¶ 9.)

67.     Novi list requires discovery from MDEF on the issue of whether MDEF or MDLF

have made any promises or arrangements with Mr. Borčić, either in return for his filing his complaint in the Commercial Court of Rijeka, or in any other regard, such as his putting Novi list "in play" by announcing, falsely, that the supervisory board had decided to sell it.  (Schorr Decl. ¶ 16.)

68.    Riječki list could not grant the power of attorney demanded by MDEF under paragraph 5.4 of the Shareholders' Agreement because such an act would be violative of Croatian law and would probably render any votes made pursuant to such a power of attorney infirm under Croatian law.  (Mance Decl. ¶ 52.)

69.    Paragraph 5.4 of the Shareholders' Agreement was drafted by MDEF's Croatian counsel.  (Doličiki Decl. ¶ 15.)

70.    Croatian law does not permit the voting rights associated with shares of stock in a Croatian company to be separated and transferred separately from the shares themselves. (Doličiki Decl. ¶ 17.)

71.    The alternative "voting parity" mechanism proposed by Riječki list would have achieved a result substantially equivalent to the "voting parity" proxy demanded by MDEF.  (*See* Doličiki Decl. ¶¶ 20-21.)

72.    MDEF deliberately refused to accept the "voting parity" mechanism proposed by Riječki list in order to improperly terminate the Option Agreement.  (*See* Doličiki Decl. ¶¶ 21-22.)

73.    Had MDEF's representatives worked together in good faith with Riječki list's Croatian counsel, they could have reached a workable solution to the "voting parity" issue.

(Doličeki Decl. ¶ 21.)

74.    Riječki list did not breach the Shareholders' Agreement by failing to deliver the
power of attorney requested by MDEF.  (Mance Decl. ¶ 52.)

75.    Neither Novi list nor Riječki list violated any of the so-called "Corporate
Governance" covenants contained in the Shares Subscription, Credit, Shareholders' and Option
Agreements.  (Mance Decl. ¶¶ 41-48.)

76.    On June 19, 2007, Novi list held a meeting of its supervisory board, which was
attended by Jaroslaw Gora, MDEF's representative on Novi list's supervisory board.  (Mance
Decl. ¶ 54.)

77.    During the June 19, 2007 meeting of Novi list's supervisory board, it was
announced that the next meeting of the supervisory board would take place on August 3, 2007.
(Mance Decl. ¶ 54.)

78.    During the June 19, 2007 meeting of Novi list's supervisory board, the attendees,
including Mr. Gora, discussed an agenda for the upcoming August 3 meeting.  (Mance Decl. ¶
54.)

79.    Written notice of the shareholders' meeting scheduled for August 3, 2007 was
sent simultaneously to all of Novi list's shareholders, including MDEF, on July 11 and 12, 2007
by courier.  (Mance Decl. ¶ 55.)  Provision of notice in this manner was and is Novi list's
customary practice and procedure, to which MDEF had never objected.  (Mance Decl. ¶ 55.)

80.    Under Croatian law it would be illegal to favor any one shareholder over other

shareholders by providing to it advance notice of a shareholders' meeting or notice in a manner that was substantively different from the manner in which notice was provided to the other shareholders. (Dolički Decl. ¶ 27.)

81. Shortly after it learned that MDEF objected to the manner in which it was given notice of the scheduled August 3, 2007 shareholders' meeting, Novi list offered to and did, in fact, agree to postpone the August 3, 2007 shareholders' meeting; consequently, MDEF could not have been deprived of any substantive right or damaged in any way. (*See* Mance Decl. ¶ 56.)

Additional material facts as to which there exist genuine issues to be tried are contained in the Declarations accompanying Novi list's opposition papers.

Dated:  New York, New York
       October 11, 2007

                                       Lovells LLP

                                       By: _____

                                         Edward T. Schorr (ES-0290)
                                         Gonzalo S. Zeballos (GZ-5994)
                                         Derek J. Craig (DC-0999)
                                         *Attorneys for Defendant*
                                         *Novi list d.d.*
                                         590 Madison Avenue
                                         New York, New York 10022
                                         (212) 909-0600
                                         Fax: (212) 909-0660