MORRISON & FOERSTER LLP
James E. Hough (JH 1066)
David S. Brown (DB 5276)
1290 Avenue of the Americas
New York, NY 10104-0050
212.468.8000
Attorneys for Plaintiff
Media Development Equity Fund LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
:
Media Development Equity Fund, a New York :
Limited Liability Company, :      07 CV 3624 (PKL)
:
Plaintiff, :
:
-against- :
:
Novi List d.d., a joint stock company organized under :
the laws of the Republic of Croatia, :
:
Defendant. :
------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | IRRELEVANT FACTS THAT WARRANT REBUTTAL | 3 |
| | A. Background | 3 |
| | B. Initial Share Price | 3 |
| | C. MDEF Did Not Oppose A Proper, Open and Transparent Audit | 4 |
| | D. The Croatian Commercial Court's Registry Entry Regarding Borcic's Termination Was Not an Adjudication on the Merits | 4 |
| III. | ARGUMENT | 5 |
| | A. MDLF's Notice of Default Terminated the Option Agreement | 5 |
| | B. Rijecki List's Refusal to Provide A Proxy Is Not Disputed or Excused | 8 |
| | C. Novi List Concedes It Failed to Provide Written Notice As Required | 9 |
| IV. | CONCLUSION | 10 |

...

# TABLE OF AUTHORITIES

## CASES

*AIM Int'l Trading L.L.C. v. Valcucine S.P.A.*,
   No. 02 Civ. 1363 (PKL), 2003 WL 21203503 (S.D.N.Y. May 22, 2003) ......... 8

*Ashland Mgmt. Inc. v. Janien*,
   604 N.Y.S.2d 912 (1993) ......... 8

*Carey v. Crescenzi*,
   923 F.2d 18 (2d Cir. 1991) ......... 8

*Carvel Corp. v. Diversified Mgmt. Group, Inc.*,
   930 F.2d 228 (2d Cir. 1991) ......... 8

*Fabcon E. L.L.C. v. Steiner Bldg. Co. NYC, L.L.C.*,
   814 N.Y.S.2d 561, 2005 WL 3592002 (Sup. Ct. Kings County 2005) ......... 8

*HRH Constr. L.L.C. v. Fid. & Guar. Ins. Co.*,
   2005 U.S. Dist. LEXIS 13737, (S.D.N.Y. 2005) ......... 7

*Miller v. Forge Mench Pshp. Ltd.*,
   2001 U.S. Dist. LEXIS 13046 (S.D.N.Y. 2001) ......... 6

*Mount Vernon Fire Ins. Co. v. Jones by Brooks*,
   1997 U.S. Dist. LEXIS 19454 (S.D.N.Y. 1997) ......... 7

*Thompson v. Gjivoje*,
   896 F.2d 716 (2d Cir. 1990) ......... 6

*Travellers Int'l AG v. Trans World Airlines, Inc.*,
   722 F. Supp. 1087 (S.D.N.Y. 1989) ......... 8

*Vineyard v. Martin*,
   29 N.Y.S.2d 935 (Sup. Ct. N.Y. County 1941) ......... 8

*Zuckerwise v. Sorceron Inc. et al.*,
   289 A.D.2d 114 (1st Dept. 2001) ......... 8

## MISCELLANEOUS

*Black's Law Dictionary* (6th ed. 1990) ......... 6

*Black's Law Dictionary* (7th ed. 1990) ......... 6

ny-780767

I.  **PRELIMINARY STATEMENT**

Defendant Novi List's ("Novi List") opposition papers contain a great deal of irrelevant and immaterial information, but fail to dispute the pertinent material facts.

<u>Count I</u>:  Novi List agrees that Media Development Loan Fund ("MDLF") sent a Notice of Default to Rijecki List, evidencing MDLF's view that certain defaults existed. Novi List agrees that the Option Agreement provides that "*a copy of the notice of default by MDLF to [Rijecki List] shall constitute sufficient evidence of any such breach.*"[1] These undisputed facts alone support automatic termination of the Option Agreement. Instead of disputing material facts, Novi List makes a predictable, but unavailing, effort to rely on factual disputes about if the Credit Agreement was, in fact, breached. Those disputes are immaterial to Count I: as a matter of law, the Option Agreement automatically terminates if MDLF sends a Notice of Default.

Novi List argues that discovery is required into MDLF's good faith, but proffers only rank speculation to support the request. The undisputed record contains ample evidence of a good faith concern over whether Novi List followed proper Croatian procedures in removing its former CEO and hiring his replacement. The discovery requested by Novi List cannot alter the indisputable fact that such good faith concerns existed.

Novi List admits that Rijecki List chose not to dispute the Notice of Default, and instead paid the full amount due under the Credit Agreement. Contrary to Novi List's argument, however, such payment did not "cure" the existing defaults because, under the plain language of Article VII of the Credit Agreement, Article V breaches are not subject to cure. Rijecki List's decision to pay was an admission of breach, not a cure.

---

[1] *See* Option Agreement, § 7.2; Defendant Novi List's Memorandum of Law in Opposition to Plaintiff MDEF's Motion for Summary Judgment, dated October 11, 2007 ("Novi List Brief"), at 5.

1

Count II: Novi List admits the Shareholders' Agreement requires Rijecki List to provide MDEF a proxy, and that Rijecki List refused to comply with that obligation. Novi List does not contend that it was impossible to deliver the proxy, nor could such an argument succeed given New York law on impossibility as a defense to a breach of contract claim. Instead, Novi List's tries to excuse Rijecki List's breach by characterizing the proxy as "illegal" under Croatian law. But even under defendant's view, the proxy is not illegal; Croatian law (as advocated by Novi List) merely permits a shareholder to challenge a proxy vote that differs from the votes cast by the beneficial share owner.[2] MDEF's Croatian counsel disputes this view, but this dispute need not be addressed or resolved here. By refusing to give the proxy, Rijekci List reserved for itself the decision on whether MDEF's intended use was permitted under Croatian law. The proper course would have been to provide the proxy, and, if its use was deemed improper, to challenge that use in a Croatian court. Having chosen not to proceed in this manner, Rijecki List breached the Shareholders' Agreement, which terminated the Option Agreement. Moreover, the Shareholders' Agreement is governed by New York law, not Croatian law. Under New York law, the proxy required by the Shareholders' Agreement is not "illegal," it is commonplace.

Count IV: Novi List admits the Share Subscription Agreement requires that MDEF be given written notice of each shareholders meeting on the same date official notice is given to other shareholders, and that no written notice was provided until well after the official notice was published. Novi List disingenuously argues it complied with this obligation based on July 11 and 12, 2007 notices sent to MDEF and other shareholders. Novi List fails to disclose that those notices were sent only *after* MDEF notified Novi List of its failure to provide written notice.

---

[2] Rijecki List fails to disclose that it is the only shareholder that would be likely to raise such a challenge, and ignores the fact that it could avoid the supposedly "illegal" situation by voting its shares in the same manner as MDEF votes the proxy shares.

Novi List also seeks to rely on Croatian law to the effect that common shareholders cannot be treated unequally. MDEF does not seek unequal treatment. MDEF is entitled to receive written notice at the same time that official notice is provided to other shareholders of a shareholders meeting. Novi List could comply with both this notice provision, and Croatian law, by providing written notice to all shareholders at the same time, and in the same manner. Instead, Novi List breached its notice obligation under the Share Subscription Agreement.

## II. IRRELEVANT FACTS THAT WARRANT REBUTTAL

### A. Background

Novi List denies that its relationship with MDLF began in 1996. This denial is curious, and easily disproved. Submitted herewith are copies of loan agreements between MDLF and Novi List dated July and October 1996.[3] Novi List also falsely states that an unnamed "associate" of George Soros initiated contact with Novi List in 1999 concerning the transactions at issue. Mr. Soros had no involvement initiating the 1999 transaction, as Zdenko Mance himself acknowledged in the Croatian press. (Mandel Reply Decl. at ¶ 5.)

### B. Initial Share Price

Novi List misleadingly states that MDEF purchased its 30% stake in Novi List at 60% below share book value. This is not the case. The shares were valued based on discounted cash flow projections created with assistance from Novi List's management, which is the most widely accepted method of valuing a company. Rijecki List also bought shares at essentially the same price. MDEF did not get a sweetheart deal: it paid fair market value. (Mandel Reply Decl. at ¶¶ 6-7.)

---

[3] Declaration of Harlan Mandel in Support of MDEF's Reply Memorandum of Law, dated October 24, 2007 ("Mandel Reply Decl.") at ¶ 4.

3

### C.    MDEF Did Not Oppose A Proper, Open and Transparent Audit

Unlike American law, Croatian law provides significant protections for corporate executives against arbitrary and unjustified actions by a Supervisory Board. Article 244, Paragraph 2 of the Croatian Companies Act, states:

> The supervisory board of the company may revoke its decision on appointment of members of the management board or its chairman, provided that there is a substantial reason to do so. ***Substantial reasons shall be in particular: gross violation of duty, incapacity to perform business activities of the company or being voted no confidence unless it is done for obviously unfounded reasons.*** The recall shall be considered valid until its invalidity is established by court decision. The recalling of a member or the chairman of the management board shall have no effect on the provisions of the contract concluded with the company. (Emphasis added.)[4]

MDEF continues to believe that the Supervisory Board should have engaged counsel to advise whether "substantial reasons" existed for Zoran Borcic's termination *before* voting on the subject.[5] Novi List's own counsel agreed with MDEF at the time. (Mandel Reply Decl. at ¶ 9.)

MDEF did not oppose an audit of the company. MDEF believes that Mr. Mance ordered an audit to support, post-hoc, the "substantial reasons" for Mr. Borcic's termination. MDEF believed (and continues to believe) that any audit should be conducted pursuant to a written engagement letter, and should follow generally accepted practices for an impartial, open and transparent audit. Mr. Mance refused to conduct the audit in this way, which casts significant doubt on its findings. (Mandel Reply Decl. at ¶¶ 33-39.)

### D. The Croatian Commercial Court's Registry Entry Regarding Borcic's Termination Was Not an Adjudication on the Merits

Novi List creates the misleading impression that a registry entry by the Croatian Commercial Court concerning management termination is an adjudication of the merits of the

---

[4] The bolded portion was omitted from Novi List's quotation of the same statute. (Novi List Brief at 10.)

[5] *See* MDEF's Amended Complaint, dated July 18, 2007 ("Amended Complaint") at 10-11.

termination. (Novi List Brief at 11.) In Croatia, this court is in charge of corporate registration and as part of this function maintains an official registry of people authorized to act on behalf of a public company. There is no analog in the US court system. When a manager leaves a company—for whatever reason—the company must notify the competent court, which then removes the name of that manager from the registry. This is essentially a ministerial function not a determination of the merits of whether a manager has been improperly terminated. (Declaration of Tarja Krehic-Djuranovic in Support of MDEF's Reply Memorandum of Law, dated October 23, 2007, ("Krehic-Djuranovic Decl.") at ¶¶ 9-14.) As noted by Novi List,[6] Mr. Borcic filed a lawsuit in the Croatian courts challenging his removal as having been accomplished without the requisite "substantial reasons." It is that lawsuit, not the court registry, which will determine whether Croatian law was followed in Mr. Borcic's termination.

III.    ARGUMENT

    A.    **MDLF's Notice of Default Terminated the Option Agreement**

Novi List does not dispute that MDLF sent a Notice of Default under the Credit Agreement, nor that doing so constitutes "sufficient evidence" under the terms of the Option Agreement to effect an automatic termination of the Option Agreement. Instead, Novi List argues that: (i) the Notice of Default creates merely a rebuttable presumption that the Option Agreement is terminated; (ii) any breach was cured by payment of the full amount due as a result of the acceleration of the loan; and (iii) discovery is required to explore MDLF's possible "bad faith." None of these contentions hold water.

    (i) *"Sufficient evidence" is not merely a rebuttable presumption.* Novi List's contention that "sufficient evidence" should be read as "prima facie evidence" is unsupported and illogical.

---

[6] Declaration of Tin Dolicki in Support of Defendant Novi List's Opposition Brief, dated October 10, 2007 ("Dolicki Decl.") at ¶ 10.

5

The purpose of the § 7.2 in the Option Agreement was to *avoid* disputes about whether defaults existed by setting a bright line test. To read "sufficient evidence" as "prima facie evidence" would render the "automatic termination" provision a nullity. Novi List agreed to automatic termination based on a Notice of Default, and must live with those terms now.[7]

The definition of "sufficient evidence" in Black's Law Dictionary does not support Novi List's proposed construction, although Novi List misquotes that authority to argue otherwise.[8] Black's (6th Edition) defines "sufficient evidence" as "adequate evidence; such evidence in character, weight, or amount, as will legally justify the judicial or official action demanded; *according to the circumstances, it may be 'prima facie' or 'satisfactory' evidence*." (Emphasis added.) "Satisfactory evidence" is defined as "the amount of proof which ordinarily satisfies an unprejudiced mind beyond a reasonable doubt." Later editions of Black's, including the 7th Edition which was published 1999 (the same year the Option Agreement was executed), no longer refer to prima facie evidence as an alternate meaning for "sufficient evidence." "Sufficient evidence," as used in the Option Agreement, means evidence sufficient to automatically terminate the Option Agreement. No authority supports an alternate construction.

(ii) *The defaults were not "cured" by accelerated repayment of Rijecki List's loan.* Novi List disingenuously uses an ellipsis in its quotation of the operative provision of the Credit Agreement to support its incorrect argument that its breaches were "cured" by repayment:

> 7.01(c): the Borrower [Rijecki List] shall fail to observe or perform any covenant or agreement contained in this Agreement or any other Loan Document ***(other than those covered by clause (a) or (b) above)*** for 15 days after written notice

---

[7] *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990) ("In determining a motion for summary judgment involving the construction of contractual language, a court should accord that language its plain meaning giving due consideration to 'the surrounding circumstances [and] apparent purpose which the parties sought to accomplish.'") (citation omitted); *Miller v. Forge Mench Pshp. Ltd.*, 2001 U.S. Dist. LEXIS 13046 (S.D.N.Y. 2001) ("Under New York law, words and phrases in a contract are given their plain meaning.")

[8] Novi List Brief at 5-6.

thereof has been given to the Borrower [Rijecki List] by the Lender [MDLF]. (**Emphasis added.**)[9]

The Notice of Default was based, in part, on breaches of Article V, which is not subject to 701(c), because such a breach falls within Section 7.01(b). Novi List repaid the loan in accelerated fashion because it was required to do so after being notified of defaults. Repayment was not a cure for defaults that were, by agreement of the parties, not subject to a cure period.

(iii) *Discovery into the bona fides of the Notice is not justified.* Novi List contends it requires discovery on the *bona fides* of the Notice of Default to determine (i) if MDLF "had actual knowledge" that the acts complained of were breaches of applicable law; and (ii) if MDEF was aware of Borcic's complaint and/or the registry court's decision described above.[10] These contentions are nothing more than an effort to forestall summary judgment by manufacturing grounds for unwarranted discovery.[11] *See Mount Vernon Fire Ins. Co. v. Jones by Brooks*, 1997 U.S. Dist. LEXIS 19454, *10 (S.D.N.Y. 1997) ("bare assertion" that evidence is in the moving party's hands "is insufficient to justify a [summary judgment] denial . . . under Rule 56(f)."); *HRH Constr. L.L.C. v. Fid. & Guar. Ins. Co.,* 2005 U.S. Dist. LEXIS 13737, *21 (S.D.N.Y. 2005) ("Conclusory allegations of possible collusion . . . 'are insufficient to meet defendants' burden to raise a question of material fact as to bad faith.'")

"Actual knowledge" of breaches of law is not the relevant inquiry. What matters is whether MDLF had a good faith basis to believe that Novi List and/or Rijecki List had breached

---

[9] Novi List Brief at 7. The bolded portion was omitted by Novi List.

[10] Rule 56.1 Affidavit of Edward Schorr, dated October 11, 2007 at ¶¶ 4, 9.

[11] Novi List makes the puzzling statement that "MDEF argues that a court may not read a good faith requirement into an unqualified, unilateral termination right." (Novi List Brief at 13.) MDEF made no such argument. Novi List's description (at footnote 4) of MDEF's cases as "inapposite" is equally confused. Novi List seeks to distinguish these cases based on factors unrelated to the propositions for which MDEF cited them.

7

any covenants when the Notices of Default were sent. The Amended Complaint sets out in detail the basis for MDEF's assertions of default, and there is no suggestion in the record that it did not believe, in good faith, that these defaults existed. (*See, e.g.*, Amended Complaint at 10-12; *see also* Mandel Reply Decl. at ¶¶ 8-21.) Moreover, even assuming MDEF had knowledge of Borcic's lawsuit, such knowledge would not negate MDLF's good faith.[12] To the contrary, MDEF's good faith concerns about the lack of a permissible basis to terminate Mr. Borcic are bolstered by the fact that he and his counsel share the view his termination as unlawful. Finally, as noted above, the registry court action was merely ministerial. Since it was not an adjudication of the merits of Mr. Borcic's termination, knowledge of that "decision" has no bearing on whether MDLF acted in good faith. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (granting summary judgment where "defendants' bald assertion, completely unsupported by evidence, did not satisfy their burden [and] certainly did not 'present[] a sufficient disagreement to require submission to a jury'")[13]

### B.  Rijecki List's Refusal to Provide A Proxy Is Not Disputed or Excused

Novi List concedes that the Shareholders' Agreement requires Rijecki List to issue a proxy, that MDEF demanded one, and that Novi List did not provide one. Despite these

---

[12] As detailed in the Declaration of Harlan Mandel at paragraph 9, the possibility of suit by Mr. Borcic was openly discussed during Supervisory Board meetings by numerous parties prior to the suit being filed, including Novi List's counsel and Mr. Borcic himself.

[13] Novi List's "bad faith" cases are inapposite: MDEF does not dispute its obligation to act in good faith. The cases are also easily distinguishable. In *Carvel Corp. v. Diversified Mgmt. Group, Inc.* 930 F.2d 228, 230-33 (2d Cir. 1991), the court failed to give a required jury charge regarding the duty of good faith. In *Travellers Int'l AG v. Trans World Airlines, Inc.*, 722 F. Supp. 1087 (S.D.N.Y. 1989), TWA admitted the reasons stated for contract termination were pretexual. *AIM Int'l Trading L.L.C. v. Valcucine S.P.A.*, No. 02 Civ. 1363 (PKL), 2003 WL 21203503, *9 (S.D.N.Y. May 22, 2003) denied a motion for summary judgment because the parties did not comply with Local Civil Rule 56.1. *Vineyard v. Martin*, 29 N.Y.S.2d 935, 938 (Sup. Ct. N.Y. County 1941) was a motion to dismiss a complaint, not a summary judgment decision. *Ashland Mgmt. Inc. v. Janien*, 604 N.Y.S.2d 912, 915 (1993) and *Fabcon E. L.L.C. v. Steiner Bldg. Co. NYC, L.L.C.*, 814 N.Y.S.2d 561, 2005 WL 3592002, *14 (Sup. Ct. Kings County 2005) both concern findings regarding breaches of the covenant of good faith and fair dealing following a full fact trial. *Zuckerwise v. Sorceron Inc. et al.*, 289 A.D.2d 114 (1st Dept. 2001) concerned an employee dismissal without cause.

concessions, Novi List contends that Rijecki List did not breach the Shareholders' Agreement because MDEF bears a burden of proving that "its demand for a proxy was lawful under Croatian law." (Novi List Brief at 17.) This argument is unsupported by authority or logic, and is plainly wrong. MDEF's burden on this motion is simply to show that Rijecki List breached its obligation to provide a proxy. MDEF has done so.

Rijecki List contends MDEF's intended use of the proxy would be contrary to Croatian law. MDEF's Croatian counsel disagrees with that conclusion. (Mandel Reply Decl. at ¶¶ 27, 28.) Even if Rijecki List's view were correct, the proper manner of proceeding would *not* be to withhold the proxy. Instead, Rijecki List should have complied with its obligation to provide the proxy as required by the Shareholders' Agreement. If MDEF used it in a potentially improper manner, any Novi List shareholder with standing could have challenged its use in a Croatian court.[14] Rijecki List, however, reserved unto itself the judgment of whether MDEF's planned use of the proxy complied with Croatian law. This Court should not reward such an obvious usurpation of Croatian court jurisdiction to decide disputed interpretations of Croatian law.[15]

### C.    Novi List Concedes It Failed to Provide Written Notice As Required

Novi List concedes that on June 20, 2007, general shareholders received notice, through publication in the Official Gazette of Croatia, that the General Assembly Shareholders' Meeting was to be held on August 3, 2007. Novi List also concedes that it did not provide written notice of the August 3 Shareholders meeting to MDEF until July 11, 2007—the day *after* MDEF

---

[14] Rijecki List's purported concern about a possible shareholder challenge is most likely a pretext, since Rijecki List is the only shareholder likely to challenge MDEF's use of the proxy. Rijecki List's true concern was to thwart MDEF's ability to affect the outcome of the shareholder vote.

[15] MDEF did not "reject[]" Rijecki List's proposal of a temporary transfer of shares as an alternative to the proxy. (Novi List Brief at 18-19; Dolicki Decl. at ¶¶ 19-23.) MDEF believed that the proposal for a temporary transfer of shares was made too late to be effective given the date of the shareholder meeting and the inherent delay in registering ownership of the transferred shares. (Dolicki Decl., Ex. E)

9

complained about Novi List's breach of its obligation to provide written notice. Novi List proffers two excuses for its failure. First, Novi List contends that MDEF received the required notice because Jaroslaw Gora attended a Supervisory Board meeting on June 19, 2007 at which the shareholders meeting was discussed. This argument fails: the Share Subscription Agreement plainly requires Novi List to provide *written* notice to MDEF's office in New York, and the minutes from that meeting show that no firm date had been set for the next meeting. (Mandel Reply Decl. at ¶¶ 40-44.) Discovery about whether MDEF had notice of the meeting through Mr. Gora's attendance at the June 19 meeting, or otherwise, is irrelevant and unnecessary.

Second, Novi List argues that it cannot be held to the obligation to provide MDEF with notice because Croatian law—which governs the Share Subscription Agreement—prohibits unequal treatment of common shareholders. This argument fails because nothing prevents Novi List from providing other shareholders written notice at their addresses the same time it provides written notice to MDEF at its address. Indeed, Novi List apparently did so in this instance—on July 11 and 12—but only *after* MDEF complained about the lack of written notice. (Popovic Decl. at ¶¶ 5-6.) To comply with its obligations under both the Share Subscription Agreement and Croatian law, Novi List simply had to provide written notice to MDEF and the other common shareholders at the same time it published notice of the meeting in the Official Gazette of Croatia. Having failed to do so, Novi List breached the Share Subscription Agreement.

## IV.  CONCLUSION

Plaintiff respectfully requests that the Court grant summary judgment in favor of MDEF on Counts I, II and IV of the Amended Complaint.

Dated: New York, NY
       October 25, 2007

MORRISON & FOERSTER LLP

By: _____
James E. Hough (JH 1066)
David S. Brown (DB 5276)

Attorneys for Plaintiff
Media Development Equity Fund LLC
1290 Avenue of the Americas
New York, NY 10104-0050
212.468.8000