MORRISON & FOERSTER LLP
James E. Hough (JH 1066)
David S. Brown (DB 5276)
1290 Avenue of the Americas
New York, NY 10104-0050
212.468.8000
Attorneys for Plaintiff
Media Development Equity Fund LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

Media Development Equity Fund, a New York Limited Liability Company,

              Plaintiff,

    -against-

Novi List d.d., a joint stock company organized under the laws of the Republic of Croatia

              Defendant.

------------------------------------------------------------ x

**DECLARATION OF HARLAN MANDEL IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

07 CV 3624 (PKL)

I, HARLAN MANDEL, declare as follows:

1. I am Deputy Chief Executive Officer of Plaintiff Media Development Equity Fund ("MDEF"), a New York LLC.

2. I submit this declaration in support of MDEF's reply brief in support of its motion for partial summary judgment. The facts in this declaration are based on my personal knowledge and the documents described herein.

3. Accompanying this Declaration is an Appendix of Exhibits that contains the documentary evidence submitted in support of this motion. The Exhibits are lettered and are referred to in this Declaration by Exhibit letter.

## Background

4.  The business relationship between Media Development Loan Fund ("MDLF") and Defendant Novi List ("Novi List") pre-dates the 1999 agreements at issue in this case (the "1999 Agreements"). In 1996, for instance, MDLF and Novi List entered into two separate credit agreements: (i) a July 12, 1996 credit agreement in the amount of $400,000 to finance development of Novi List's informational structure (the "July 1996 Credit Agreement") and (ii) an October 10, 1996 credit agreement in the amount of $200,000 to finance the second phase of the development of Novi List's informational structure (the "October 1996 Credit Agreement"). After these agreements were executed, MDLF and Novi List communicated on a monthly basis regarding monitoring of the loans. Attached at Exhibit A are true and correct copies of the July and October 1996 Credit Agreements.

5.  George Soros, who provided initial funding to MDLF through the Open Society Institute charitable organization that he founded, had no involvement in initiating or approaching Novi List with regard to the 1999 Agreements. Zdenko Mance, then CEO and Editor-in-Chief of Novi List, acknowledged as much in responding to a competitor's accusations, made on the eve of the transactions, that Mr. Soros was purchasing Novi List. In a press release dated September 22, 1999, Mr. Mance denied Mr. Soros' involvement and deplored his competitor's tactic as facile manipulation: "[a]s for the news that Soros is buying Novi List, I consider it a part of [a competitor's] political manipulation. Namely, we are dealing here with that political insinuation/opinion that holds that just by linking Soros' name to someone, that someone gets compromised." Attached at Exhibit B is a true and correct copy of a translation of the September 22, 1999 press release.

6. As part of the complex financial package agreed to between and among MDLF, MDEF, Novi List and Rijecki List in 1999, MDEF purchased a 30% stake in Novi List pursuant to the Share Purchase Agreement. To arrive at a fair price for the Novi List shares, MDLF and Novi List developed a comprehensive business plan projecting Novi List's future performance. Based on that business plan, MDLF prepared a discounted cash flow analysis for Novi List, which is the most widely accepted method of valuing a company. The share price paid by MDEF (which was also essentially the same the price paid by Rijecki List for share purchases) was based on this valuation. MDEF purchased the shares at a fair market value.

7. Novi List gives the impression that a discount off the book value was discussed at the time the transactions were negotiated in 1999 but it was not. Novi List's calculation of a "discount" off the book value was made only in connection with the present lawsuit. No investor would consider use of book value in valuing an on-going concern.

**Notice of Default & Notice of Termination**

8. Toward the end of the December 8, 2006 Novi List Supervisory Board meeting, Mr. Mance, President of Novi List's Supervisory Board and a representative of Rijecki List, made an unexpected and improper effort to terminate Zoran Borcic as the CEO of Novi List. Mr. Mance's proposal, which was not included on the agenda, was a particular surprise because Novi List performed extremely well in 2006, Mr. Borcic's first full year as CEO. In fact, Novi List was the only major Croatian newspaper that did not suffer a decline in circulation during 2006.

9. Mr. Mance's proposal was greeted with vigorous dissent at the meeting. Eleonora Marac, Novi List's counsel, raised strong procedural objections to the proposed removal and opined that under Croatian law a CEO could only be terminated for substantial and limited

reasons. Ms. Marac also stated that she was "obligated to warn the [Supervisory Board] members" about "the legal consequences in case of a claim, which is to be expected" by Mr. Borcic against Novi List following an improper termination. She also stated that it was necessary to prepare paperwork supporting the decision and that that paperwork be distributed to the Supervisory Board in time for review in advance on any votes on the issue. Josip Bursic, another Supervisory Board member, also warned against a likely suit by Mr. Borcic and cautioned that the group "not make a mistake which will be at the expense of this company." During this meeting, Mr. Borcic informed the Supervisory Board that an improper termination would "give[] me grounds for legal action and compensation for damages"; he "warn[ed] the members of the SB that [the proposed termination] is not in accordance with legal regulations and that the members will bear consequences." Attached at Exhibit C is a true and correct copy of relevant translated minutes from December 8, 2006 Supervisory Board meeting.

10. Following this meeting, MDEF learned that Mr. Mance had placed Mr. Borcic's termination on the agenda for a Supervisory Board meeting to be held on December 21, 2006. On December 13, 2006, MDEF wrote to Mr. Mance as Director of Rijecki List, with copies to all other Supervisory Board members, to express its "deep concern" with efforts to terminate Mr. Borcic during December 8, 2006 Supervisory Board meeting. MDEF stated in detail that it was seriously concerned with both the process and legal implications of firing Mr. Borcic. MDEF requested that Mr. Mance provide MDEF and other Supervisory Board members with written materials regarding grounds for Mr. Borcic's termination well in advance of the December 21, 2006 meeting. Attached at Exhibit D is a true and correct copy of MDEF's December 13, 2006 letter to Mr. Mance.

11. On December 19, 2006, MDEF again wrote to Mr. Mance expressing concern and frustration that Mr. Mance had failed to provide the requested documentation with regard to the decision to terminate Mr. Borcic and had failed to respond to MDEF's offer to meet in advance of the December 21, 2006 Supervisory Board meeting. Attached at Exhibit E is a true and correct copy of MDEF's December 19, 2006 letter to Mr. Mance.

12. A Supervisory Board meeting was held on December 21, 2006 and Mr. Mance again tried to force a vote on Mr. Borcic's termination. No documents were provided to support the termination. MDEF again expressed its concern with Mr. Mance's efforts to terminate Mr. Borcic and the legal consequences faced by Novi List for an improper termination. At the conclusion of the meeting, it was agreed that the Supervisory Board would obtain an opinion from an independent legal advisor before taking any action with regard to Mr. Borcic. Attached at Exhibit F is a true and correct copy of relevant translated minutes from the December 21, 2006 Supervisory Board meeting.

13. Following this meeting, MDEF learned that Mr. Mance had placed Mr. Borcic's termination on the agenda for a Supervisory Board meeting to be held on January 5, 2007. On December 29, 2006, MDEF again wrote to Mr. Mance to stress the importance of obtaining independent counsel to review the facts regarding Mr. Borcic and to offer assistance with regard to this process. Attached at Exhibit G is a true and correct copy of MDEF's December 29, 2006 letter to Mr. Mance.

14. On January 4, 2007, MDEF wrote to Mr. Mance again to state that "the process that you have engaged in to achieve your goal of terminating Mr. Borcic . . . has not met the requirements of Croatian law, and carries significant risk of legal liabilities for the company and members of the Supervisory Board." MDEF further warned Mr. Mance that "[w]e believe your

actions and the Supervisory Board process that you have engineered stand in clear breach of the obligations of Novi list and Rijecki list under their agreements with MDEF and MDLF to conduct the business of Novi list with due diligence and in compliance with law." Attached at Exhibit H is a true and correct copy of MDEF's January 4, 2007 letter to Mr. Mance.

15. On January 5, 2007, without obtaining any opinion from independent counsel on whether Mr. Borcic's termination was permitted under Croatian law, Novi List's Supervisory Board voted 3 to 2 to terminate Mr. Borcic. Despite repeated requests, no documents were provided to support Mr. Borcic's termination. MDEF opposed the termination. Attached at Exhibit I is a true and correct copy of translated minutes from January 5, 2007 Supervisory Board meeting.

16. At the January 5, 2007 meeting, the Supervisory Board of Novi List voted to appoint Franjo Butorac as successor CEO. MDEF considers Mr. Butorac unqualified for the job. He has never managed, nor even worked for, a newspaper, and he has no support among the journalists at Novi List. Prior to his appointment, he ran a small, academic book publisher. His primary qualification appears to be a willingness to follow instructions given by Mr. Mance.

17. No supporting materials were provided to the Supervisory Board in support of Mr. Butoras's appointment, not even a resume or biographical information. Although Croatian law does not impose any particular requirements on this type of appointment process, it is customary for a company of Novi List's size to explore several different candidates before undertaking an appointment of this level of importance. Failure to do so constitutes in MDEF's view, a lack of due diligence.

18. As anticipated by Novi List's counsel, and discussed openly during Supervisory Meetings by Mr. Borcic and others, on January 26, 2007, Mr. Borcic sued Novi List for

terminating him, in violation of Croatian law, from his position as CEO. That suit is now pending in the Croatian courts.

19. MDEF was thus generally aware that Mr. Borcic planned to sue Novi List over his termination and was aware (as were other members of Novi List and the Supervisory Board) of this possibility prior to January 26, 2007 when Mr. Borcic filed suit.

20. On January 29, 2007 MDLF delivered a Notice of Default to Rijecki List pursuant to the express terms of the Credit Agreement. The Notice of Default specifies that Rijecki List failed to adhere to its obligations contained in Article V of the Credit Agreement regarding the governance of Novi List. The Notice of Default also specified that Novi List had failed to honor its obligations under Section 5.1 of the Option Agreement which required Novi List, among other things, to conduct its business with due diligence and efficiency, in compliance with all applicable laws, and in conformity with the general practice of independent, non-partisan, pluralistic, tolerant and responsible media. That same day, MDEF sent a Notice of Termination to Novi List, informing Novi List that the Option Agreement had been automatically terminated due to the issuance of a Notice of Default to Rijecki List. Attached at Exhibits J and K are true and correct copies of the Notice of Default and Notice of Termination, respectively.

21. Based on the events described above, among other reasons, MDEF delivered the Notice of Default on January 29, 2007 based on its good faith belief that Novi List and/or Rijecki List had breached the covenants described in the notice. As stated above, these beliefs had also been voiced by Novi List's own counsel.

22. The Notice of Default required Rijecki List to repay the amounts outstanding under the Credit Agreement within 10 days. Rijecki List did not contest the Notice of Default nor the existence of the Events of Default described therein. Instead, on February 12, 2007,

Rijecki List complied with the Notice of Default and paid in full the amounts due under the Credit Agreement. Rijecki List did not state at the time that it made this accelerated payment that the payment was intended to cure any breaches.

### Breaches of Article V of the Credit Agreement Cannot be Cured

23. The Credit Agreement provides a 15 day cure period for certain breaches. Specifically, Credit Agreement § 7.01(c) describes an event of default as where "the Borrower [Rijecki List] shall fail to observe or perform any covenant or agreement contained in this Agreement or any other Loan Document *(other than those covered by clause (a) or (b) above)* for 15 days after written notice thereof has been given to the Borrower [Rijecki List] by the Lender [MDLF]." (Emphasis added.) Clause (b) is an event of default where "the Borrower shall fail to observe or perform any covenant contained in Article V" of the Credit Agreement.

24. The Notice of Default delivered to Rijecki List on January 29, 2007 by MDLF details several breaches including Rijecki List's failure to adhere to its obligations contained in Article V of the Credit Agreement, which is not subject to the 15 day cure period.

### Rijecki List Failed to Deliver a Voting Proxy as Required

25. In April 2007, MDEF and other minority shareholders called for an extraordinary shareholders meeting to be held on May 11, 2007, and placed several critical issues on the agenda. Attached at Exhibit L is a true and correct copy of the May 11, 2007 Agenda of Extraordinary General Assembly. On April 12, 2007, MDEF invoked its express right under the Shareholders' Agreement for a proxy to vote the number of shares required to achieve parity with the number of votes held by Rijecki List. Attached at Exhibit M is a true and correct copy of the April 12, 2007 MDEF letter to Rijecki List.

26. Rijecki List refused to issue the proxy. Rijecki List has offered different justifications for this refusal. By letter dated April 19, 2007, counsel for Rijecki List—the same attorney that represented Rijecki List in negotiating the Shareholders' Agreement with MDEF—while acknowledging Rijecki List's obligation to provide the proxy and voting parity to MDEF, now claimed that the proxy demanded was impermissible under Croatian law because voting rights could not be transferred without transfer of the shares themselves. Attached at Exhibit N is a true and correct copy of the April 19, 2007 Rijecki List letter to MDEF.

27. On April 23, 2007, Croatian counsel for MDEF wrote to Rijecki List refuting each argument raised by Rijecki List's counsel and setting forth its bases for concluding that the proxy was permissible under Croatian law. Attached at Exhibit O is a true and correct copy of the April 23, 2007 letter to Rijecki List.

28. During a meeting in Rijeka on April 26, 2007, between MDEF and Rijecki List at which Rijecki List's counsel was present and MDEF's Croatian counsel joined by phone, Rijecki List's counsel argued that it is not possible for the proxy grantor and the proxy holder to appear at the same shareholders meeting and to vote differently and that any votes cast under these circumstances would be vulnerable to a claim of invalidity. I am advised that the positions taken by Rijecki List with regard to the proxy are incorrect under Croatian law and that the proxy can be validly issued under Croatian law.

29. At the April 26 meeting, Rijecki List proposed a temporary transfer of shares as an alternative means to provide MDEF with voting parity, but, when pressed, conceded such a temporary transfer could not be effected in time for the May 11 General Assembly, because there was not adequate time to call a meeting of Rijecki List's shareholders to approve such a transfer.

Rijecki List never offered to extend the date for the General Assembly to allow time for the proposed transfer of shares.

30. On May 11, 2007, the extraordinary shareholders meeting called by MDEF and other minority shareholders was held. Rijecki List failed to provide the required proxy to MDEF. Rijecki List also failed to pursue several options that would have honored MDEF's rights, including (i) Rijecki List could have abstained from voting part of its shares to provide parity, (ii) Rijecki List could have voted all of its shares in the manner voted by MDEF, and/or (iii) Rijecki List could have refrained from legally challenging any shareholder vote it deemed improper by virtue of use of the shareholder voting proxy.

31. On July 12, MDEF again invoked its express right under the Shareholders' Agreement for a proxy to vote the number of shares required to achieve parity with the number of votes held by Rijecki List, this time in connection with the general assembly shareholders meeting scheduled for August 3, 2007. Attached at Exhibit P is a true and correct copy of the July 12, 2007 MDEF letter to Rijecki List.

32. Rijecki List again refused to issue the proxy, and failed to seek approval of a temporary transfer of shares—an alternative means of effecting voting parity that Rijecki List previously had proposed but declined to pursue based on purported timing issues. Attached at Exhibit Q is a true and correct copy of the July 23, 2007 Rijecki List letter to MDEF.

### MDEF Did Not Oppose An Open, Transparent Audit

33. On January 29, 2007 MDEF met with Mr. Butorac, the newly appointed CEO. During this meeting, Butorac informed MDEF that he intended to undertake a special audit of Novi List. MDEF also learned at or around the time of the meeting that the special audit had already begun.

34.     On February 1, 2007 MDEF wrote to Mr. Butorac regarding the audit. MDEF did not object to an audit but raised certain procedural concerns with regard to special audit that had been ordered by Mr. Butorac. MDEF raised these concerns "[i]n order to ensure that the company acts in accordance with the law, under which only the shareholders meeting can determine the auditor." MDEF also asked to be provided with a copy of any audit report generated. Attached at Exhibit R is a true and correct copy of MDEF's February 1, 2007 letter to Mr. Butorac.

35.     As described more fully in the Declaration of Elena Popovic, the audit was raised during the February 14, 2007 Supervisory Board meeting. During the meeting, Jaroslaw Gora raised concerns regarding procedural aspects of the audit but did not object to auditing the company.

36.     On March 6, 2007 MDEF wrote to Mr. Butorac to seek clarification as to the special audit being conducted to ensure that "the company acts in accordance with law." Attached at Exhibit S is a true and correct copy of MDEF's March 6, 2007 letter to Mr. Butorac.

37.     On April 23, 2007, MDEF wrote to Mr. Butorac to request a copy of the audit report that MDEF understood had been provided to Mr. Butorac weeks earlier. Attached at Exhibit T is a true and correct copy of MDEF's April 23, 2007 letter to Mr. Butorac.

38.     As noted above, MDEF and other minority shareholders called for an extraordinary shareholders meeting to be held on May 11, 2007, and placed several critical issues on the agenda, including an evaluation of the work of Mr. Butorac. MDEF sought a vote on Mr. Butorac, in part, because of its procedural objections to the manner in which Mr. Butorac commissioned the special audit. MDEF did not oppose an audit of the company. Attached at

Exhibit U is a true and correct copy of translated minutes from the May 11, 2007 Extraordinary General Assembly Board meeting.

39. MDEF never objected to conducting an audit, but MDEF believed (and continues to believe) that any audit should be conducted pursuant to a written engagement letter, and should follow generally accepted practices for an impartial, open and transparent audit. Mr. Butorac's refusal to conduct the audit in this way casts significant doubt on the reliability of its findings.

**Novi List Failed to Furnish Written Notice of General Assembly Shareholder Meeting**

40. During a June 19, 2007 Supervisory Board meeting, August 3, 2007 was discussed as a potential date for the annual General Assembly meeting. Mr. Mance stated that "*if everything is running smoothly*, on 3 August 2007 we will have the annual General Assembly." (Emphasis added.) August 3, 2007 was not "set" during the June 19 meeting as a date for the annual General Assembly. Attached at Exhibit V is a true and correct copy of translated minutes from June 19, 2007 Supervisory Board meeting.

41. On June 20, 2007, as required by law, the Official Gazette of Croatia published notice that Novi List's annual shareholder meeting would be held on August 3, 2007.

42. Under the express terms of the Shares Subscription Agreement, Novi List is required, "[a]s long as" MDEF is a shareholder, to furnish MDEF with written notice of any shareholders meeting including its agenda "on or before the date that it gives official notice to its shareholders." The specific requirement that written notice be communicated to MDEF in New York by Novi List was not arbitrary. It was agreed to by the parties to ensure that MDEF, with offices in New York, would not be unduly prejudiced vis-à-vis Croatian shareholders with regard to notice. This notice provision is important because, once shareholder notice is published,

shareholders have 10 days from that date to add items to the meeting agenda as a matter of right, whereas, any later change or addition to the agenda had to be accepted by majority vote of the shareholders.

43.    Novi List failed to provide MDEF with written notice on or before June 20, and MDEF learned of the shareholders meeting from its counsel in Croatia who, on June 28, read the notice published in the Official Gazette.

44.    Novi List sent written notices sent to MDEF and other shareholders on July 11 and 12, 2007, but by this time the 10 day window to add or change the shareholder agenda as a matter of right had passed.

45.    On July 30, for other reasons, Rijecki List agreed to adjourn the date of the August 3 general assembly shareholders meeting.

I declare under penalty of perjury that the foregoing is true and correct.

Executed October 24, 2007.

_____
Harlan Mandel

ny-782056