UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

Media Development Equity Fund, a New York Limited Liability Company,

                Plaintiff,

     -against-

Novi List d.d., a joint stock company organized under the laws of the Republic of Croatia

                Defendant.

------------------------------------------------------------------- x

**PLAINTIFF'S REPLY TO DEFENDANT'S STATEMENT OF ADDITIONAL, DISPUTED FACTS**

07 CV 3624 (PKL)

Plaintiff Media Development Equity Fund ("MDEF") replies as follows to Defendant Novi List's ("Novi List") Statement of Additional, Disputed Material Facts, which is set forth as paragraphs 40-81 of Novi List's Counter-Statement in Opposition to Plaintiff's Rule 56.1 Statement. Paragraph 1-29 of Novi List's Counter-Statement in Opposition to Plaintiff's Rule 56.1 Statement respond to MDEF's Rule 56.1 Statements and as such no additional response is required.

40. Novi list, Riječki list, MDEF, and MDLF successfully operated without incident under the agreements at issue for more than seven years, until early 2007. (Mance Dec1. ¶ 20.)

**Response:**

MDEF disputes paragraph 40 and notes that the statements contained in this paragraph are immaterial to the issues on which MDEF is moving for summary judgment. Accordingly, MDEF has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1.

41. Novi list is financially stable and editorially independent today and continues to achieve journalistic and business success. (Mance Decl. ¶ 3.)

**Response:**

The statements contained in paragraph 41 are immaterial to the issues on which MDEF is moving for summary judgment. Accordingly, MDEF has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1.

42.   Novi list was privatized in 1993, when approximately 334 current and retired employees of the company purchased the paper for approximately 4.1 million German marks (DEM) (approximately $2.5 million). (Mance Decl. ¶ 8.)

**Response:**

MDEF denies knowledge or information sufficient to form a response to paragraph 42. MDEF notes that the statements contained in this paragraph are immaterial to the issues on which MDEF is moving for summary judgment. Accordingly, MDEF has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1.

43.   The Option Agreement provides a means for Novi list to revert to the ownership of the people that are responsible for its success -- its journalists and employees who worked extremely hard and took great personal risks to purchase Novi list in 1993 and keep it independent throughout the difficult times in Croatia during and after the Croatian war of independence. (Mance Decl. ¶ 5; *See* Drenjak Decl. ¶ 8.)

**Response:**

MDEF disputes paragraph 43 as argumentative and conclusory. MDEF notes that the statements contained in this paragraph are immaterial to the issues on which MDEF is moving for summary judgment. Accordingly, MDEF has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1.

44.   Novi list's market value at present is conservatively estimated to be more than $35 million (€25 million). (Mance Decl. ¶ 4.) The appreciation of Novi list's market value has benefited all of Novi list's shareholders. (*See* Mance Decl. ¶¶ 4-5.)

**Response:**

MDEF denies knowledge or information sufficient to form a response to paragraph 44. MDEF notes that the statements contained in this paragraph are immaterial to the issues on which MDEF is moving for summary judgment. Accordingly, MDEF has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1.

45.    MDEF's only investment in Novi list, an equity purchase in 1999 for a total purchase price of just under $1 million (1.8 million DEM), has appreciated in value to more than $10 million. (Mance Decl. ¶ 4.) During the past eight years, MDEF has also received dividends from Novi list of approximately $759,466 (Mance Decl. ¶ 4.)

**Response:**

The statements contained in paragraph 45 are immaterial to the issues on which MDEF is moving for summary judgment. Accordingly, MDEF has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1.

46.    The price at which MDEF purchased its Novi list shares in 1999 represented a 60% discount over the audited book value of 947.19 Kuna ($130.71) per share. (Mance Decl ¶ 17.)

**Response:**

The statements contained in paragraph 46 are immaterial to the issues on which MDEF is moving for summary judgment. Accordingly, MDEF has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1.

47.    The termination of Novi list's former CEO Zoran Borčić by a 3-2 vote of Novi list's Supervisory Board was proper in all respects and was in Novi list's best interest. (Mance Decl. ¶ 31, 45.)

**Response:**

MDEF disputes paragraph 47 and notes that the statements contained in this paragraph are immaterial to the issues on which MDEF is moving for summary judgment. Accordingly,

MDEF has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1. The relevant issue is whether MDLF held a good faith belief that Novi List failed to follow proper procedures in terminating Mr. Borcic and in appointing his successor. The record is replete with evidence of that good faith belief. (Declaration of Harlan Mandel in Support of MDEF's Reply Memorandum of Law, dated October 24, 2007 ("Mandel Reply Decl.") at ¶¶ 8-21.)

48.     While serving as Novi list's CEO, Mr. Borčić falsely and inappropriately announced, during the company's annual New Year's party on December 14, 2006, which was attended by Novi list's clients, advertisers, and other important public figures (including the mayor and the bishop of Rijeka), that Novi list's supervisory board had decided to put the newspaper up for sale. (Mance Decl. ¶ 27.) As a result of this false announcement, Novi list's journalists and staff began to fear for the paper's stability. (Mance Decl. ¶ 27.)

**Response:**

MDEF denies knowledge or information sufficient to form a response to paragraph 48. MDEF notes that the statements contained in this paragraph are immaterial to the issues on which MDEF is moving for summary judgment. Accordingly, MDEF has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1. The relevant issue is whether MDLF held a good faith belief that Novi List failed to follow proper procedures in terminating Mr. Borcic and in appointing his successor. The record is replete with evidence of that good faith belief. (Mandel Reply Decl. at ¶¶ 8-21.)

49.     While serving as Novi list's CEO, Mr. Borčić bound Novi list to a disadvantageous contract with a competing publisher, European Press Holdings ("EPH"), whereby Novi list obligated itself to print EPH's free daily, Metro Express, and to include 4-5 Novi list articles in each edition of Metro Express. (Mance Decl. ¶ 28; *See* Drenjak Decl. ¶¶ 2-3.)

**Response:**

MDEF disputes paragraph 49 and notes that the statements contained in this paragraph are immaterial to the issues on which MDEF is moving for summary judgment. Accordingly, MDEF has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1. The relevant issue is whether MDLF held a good faith belief that Novi List failed to follow proper procedures in terminating Mr. Borcic and in appointing his successor. The record is replete with evidence of that good faith belief. (Mandel Reply Decl. at ¶¶ 8-21.)

50.     The publication of Novi list articles in Metro Express, which is distributed free of charge throughout Croatia, served as a disincentive for consumers to purchase Novi list from the newsstands. (Mance Decl. ¶ 29; *See* Drenjak Decl. ¶¶ 2, 4.) Also, Metro Express is not considered to be as prestigious a publication as Novi list, and Novi list's journalists were incensed that their intellectual work-product was being published in such a forum. (Mance Decl. ¶ 29; *See* Drenjak Decl. ¶¶ 5-6.) Furthermore, the price agreed to for the publication of these articles was unacceptably low. (Mance Decl. ¶ 130.)

**Response:**

MDEF disputes paragraph 50 and notes that the statements contained in this paragraph are immaterial to the issues on which MDEF is moving for summary judgment. Accordingly, MDEF has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1. MDEF states, however, that during Borcic's tenure as CEO of Novi List, Novi List recorded record profits. (Mandel Reply Decl. at ¶ 8.) The relevant issue is whether MDLF held a good faith belief that Novi List failed to follow proper procedures in terminating Mr. Borcic and in appointing his successor. The record is replete with evidence of that good faith belief. (Mandel Reply Decl. at ¶¶ 8-21.)

51.     MDEF enjoyed a very close relationship with Mr. Borčić. (Mance Decl. ¶ 22.)

**Response:**

The statements contained in paragraph 51 are immaterial to the issues on which MDEF is moving for summary judgment. Accordingly, MDEF has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1.

52.    Mr. Borčić regularly attended supervisory board meetings for MDEF when MDEF's representative on the supervisory board, Mr. Jaroslaw Gora, could not -- a frequent occurrence. (Mance Decl. ¶ 23.)

**Response:**

MDEF disputes paragraph 52 and notes that the statements contained in this paragraph are immaterial to the issues on which MDEF is moving for summary judgment. Accordingly, MDEF has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1.

53.    Riječki list did not breach the Credit Agreement. (Mance Decl. ¶¶ 42-43, 46.)

**Response:**

MDEF disputes paragraph 53. The relevant issue is whether MDLF held a good faith belief that Novi List failed to follow proper procedures in terminating Mr. Borcic and in appointing his successor. The record is replete with evidence of that good faith belief. (Mandel Reply Decl. at ¶¶ 8-21.)

54.    MDLF's purported "Notice of Default" sent to Riječki list was unwarranted, pretextual, and in bad faith. (*See* Mance Decl. ¶¶ 41-48.) The "Notice of Default" did not cite to any Croatian law that was violated as the result of Mr. Borčić's termination, which was valid, as a matter of law. (Mance Decl. ¶ 42; Doličbi Decl. ¶ 3.)

**Response:**

MDEF disputes paragraph 54. The relevant issue is whether MDLF held a good faith belief that Novi List failed to follow proper procedures in terminating Mr. Borcic and in

6

appointing his successor. The record is replete with evidence of that good faith belief. (Mandel Reply Decl. at ¶¶ 8-21.)

55. Riječki list pleaded with MDLF's representatives, including Mandel, and MDEF's representative on Novi list's Supervisory Board, Jaroslaw Gora, that Mr. Borčić's termination was proper and in the best interests of Novi list and carefully explained to them the reasons for Mr. Borčić's dismissal. (Mance Decl. ¶ 45.)

**Response:**

MDEF disputes paragraph 55. The relevant issue is whether MDLF held a good faith belief that Novi List failed to follow proper procedures in terminating Mr. Borcic and in appointing his successor. The record is replete with evidence of that good faith belief. (Mandel Reply Decl. at ¶¶ 8-21.)

56. As of the date that MDLF accelerated its loan to Riječki list, just one installment of only €194,000 (approximately $250,000) remained outstanding under the loan and would have come due within just a few months. (Mance Decl. ¶ 44.)

**Response:**

MDEF agrees with paragraph 56, and notes that the Notice of Default sent to Novi List was effective and triggered an acceleration of the loan repayment.

57. By tendering payment of the final payment due under the Credit Agreement, Riječki list discharged its obligations thereunder and cured any purported "default" before it could become an "Event of Default" under the Credit Agreement. (*See* Mance Decl. ¶ 46.)

**Response:**

MDEF disputes paragraph 57, and states that by the clear terms of the Credit Agreement the defaults were not "cured" by the repayment. (MDEF's Reply Brief in Support of its Motion for Partial Summary Judgment, dated October 25, 2007 ("MDEF Reply Brief") at 6-7.)

58. After receiving that payment without objection, MDEF took no further action regarding the January 29, 2007 Default Notice or Termination Notice. (Mance Decl. ¶ 48.)

7

**Response:**

MDEF disputes paragraph 58. Following the Notice of Default and Termination Notice, MDEF sued Novi List to protect MDEF's rights. MDEF notes that the statements contained in this paragraph are immaterial to the issues on which MDEF is moving for summary judgment. Accordingly, MDEF has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1.

59.     Novi list's Supervisory Board's appointment of Franjo Butorac as Mr. Borčić's successor was proper in every respect and Mr. Butorac is qualified to hold the position of CEO. (Mance Decl. ¶ 32.)

**Response:**

MDEF disputes paragraph 59. The relevant issue is whether MDLF held a good faith belief that Novi List failed to follow proper procedures in terminating Mr. Borcic and in appointing his successor. The record is replete with evidence of that good faith belief. (Mandel Reply Decl. at ¶¶ 8-21.)

60.     Following Mr. Borčić's termination, Novi list discovered that Mr. Borčić had departed the company without leaving reliable records as to the Novi list's financial condition. (Mance Decl. ¶ 34.)

**Response:**

MDEF disputes paragraph 60 and notes that the statements contained in this paragraph are immaterial to the issues on which MDEF is moving for summary judgment. Accordingly, MDEF has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1.

61.     Mr. Butorac was concerned about the lack of records, and he ordered, with the supervisory board's approval, an outside audit. (Mance Decl. ¶ 34.)

**Response:**

MDEF disputes paragraph 61 and states that Mr. Butorac's motive in ordering the audit was that it was an post-hoc justification for Mr. Borcic's improper removal. (Mandel Reply Decl. at ¶¶ 33-39.)

62. MDEF placed before Novi list's shareholders a resolution attempting to block the audit ordered by Mr. Butorac. (Mance Decl. ¶ 35.)

**Response:**

MDEF disputes paragraph 62 and states that MDEF believed (and continues to believe) that any audit should be conducted pursuant to a written engagement letter, and should follow generally accepted practices for an impartial, open and transparent audit, but that the audit ordered and conducted by Mr. Butorac failed to meet these standards. MDEF did not place any resolution before Novi List shareholders seeking to block the audit order by Mr. Butorac. (Mandel Reply Decl. at ¶¶ 33-39.)

63. MDEF's attempt to block the audit was unsuccessful, and the audit was conducted, revealing a number of irregularities regarding Mr. Borčić's management of Novi list. (Mance Decl. ¶ 37.)

**Response:**

MDEF disputes paragraph 63. MDEF did not attempt to block any audit. (Mandel Reply Decl. at ¶¶ 33-39.)

64. Novi list did not breach the Option Agreement. (Mance Decl. ¶¶ 41-48.)

**Response:**

MDEF disputes paragraph 64. (Mandel Reply Decl. at ¶¶ 8-22; MDEF Reply Brief at 5-10.)

65.     MDEF's purported "Notice of Termination" sent to Novi list was unwarranted, pretextual, and in bad faith. (*See* Mance Decl. ¶¶ 41-48.)

**Response:**

MDEF disputes paragraph 65. The relevant issue is whether MDLF held a good faith belief that Novi List failed to follow proper procedures in terminating Mr. Borcic and in appointing his successor. The record is replete with evidence of that good faith belief. (Mandel Reply Decl. at ¶¶ 8-21.)

66.     Novi list requires discovery from MDEF on the issue of whether at the time MDEF and MDLF sent the "Notice of Termination" and "Notice of Default," respectively, they had *See*n or were aware of the contents of the complaint filed by Mr. Borčić in the Commercial Court of Rijeka, *See*king to challenge his removal from the Court Register; or whether MDEF or MDLF had knowledge of the decision of the Commercial Court approving Novi list's application to remove Mr. Borčić from the Court Register. (Schorr Decl. ¶ 9.)

**Response:**

MDEF disputes this paragraph as conclusory and argumentative and states that MDEF has no burden to identify evidence in response.

67.     Novi list requires discovery from MDEF on the issue of whether MDEF or MDLF have made any promises or arrangements with Mr. Borčić, either in return for his filing his complaint in the Commercial Court of Rijeka, or in any other regard, such as his putting Novi list "in play" by announcing, falsely, that the supervisory board had decided to sell it. (Schorr Decl. ¶ 16.)

**Response:**

MDEF disputes this paragraph as conclusory and argumentative and states that MDEF has no burden to identify evidence in response.

68.     Riječki list could not grant the power of attorney demanded by MDEF under paragraph 5.4 of the Shareholders' Agreement because such an act would be violative of Croatian law and would probably render any votes made pursuant to such a power of attorney infirm under Croatian law. (Mance Decl. ¶ 52.)

**Response:**

MDEF disputes paragraph 68 and states that the Proxy Agreement as contemplated by paragraph 5.4 of the Shareholders' Agreement can be legally issued. (MDEF Reply Brief at 8-9; Mandel Reply Decl. at ¶¶ 25-32.)

69.  Paragraph 5.4 of the Shareholders' Agreement was drafted by MDEF's Croatian counsel. (Dolički Decl. ¶ 15.)

**Response:**

The statements contained in paragraph 69 are immaterial to the issues on which MDEF is moving for summary judgment. Accordingly, MDEF has no burden to identify evidence controverting them. *See* Fed. R. Civ. P. 56(e); Local R. 56.1.

70.  Croatian law does not permit the voting rights associated with shares of stock in a Croatian company to be separated and transferred separately from the shares themselves. (Dolički Decl. ¶ 17.)

**Response:**

MDEF disputes paragraph 70. (MDEF Reply Brief at 8-9; Mandel Reply Decl. at ¶¶ 25-32.)

71.  The alternative "voting parity" mechanism proposed by Riječki list would have achieved a result substantially equivalent to the "voting parity" proxy demanded by MDEF. (*See* Dolički Decl. ¶¶ 20-21.)

**Response:**

MDEF disputes paragraph 71 and states that the "voting parity" mechanism proposed by Rijecki List was unnecessary and Rijecki List conceded that such a temporary transfer could not be effected in time for the May 11 General Assembly. (Mandel Reply Decl. at ¶ 29.)

72. MDEF deliberately refused to accept the "voting parity" mechanism proposed by Riječki list in order to improperly terminate the Option Agreement. (*See* Doličcki Decl. ¶¶ 21-22.)

**Response:**

MDEF disputes paragraph 72. (Mandel Reply Decl. at ¶ 29.)

73. Had MDEF's representatives worked together in good faith with Riječki list's Croatian counsel, they could have reached a workable solution to the "voting parity" issue. (Dolički Decl. ¶ 21.)

**Response:**

MDEF disputes paragraph 73 and states that MDEF's and MDLF's repeated good faith efforts to resolve disputes with Rijecki List's counsel have been frustrated. (Mandel Reply Decl. at ¶ 25-32.)

74. Riječki list did not breach the Shareholders' Agreement by failing to deliver the power of attorney requested by MDEF. (Mance Decl. ¶ 52.)

**Response:**

MDEF disputes paragraph 74. (MDEF Reply Brief at 9-10.)

75. Neither Novi list nor Riječki list violated any of the so-called "Corporate Governance" covenants contained in the Shares Subscription, Credit, Shareholders' and Option Agreements. (Mance Decl. ¶¶ 41-48.)

**Response:**

MDEF disputes paragraph 75. The relevant issue is whether MDLF held a good faith belief that Novi List failed to follow proper procedures in terminating Mr. Borcic and in appointing his successor. The record is replete with evidence of that good faith belief. (Mandel Reply Decl. at ¶¶ 8-21.)

76. On June 19, 2007, Novi list held a meeting of its supervisory board, which was attended by Jaroslaw Gora, MDEF's representative on Novi list's supervisory board. (Mance Decl. ¶ 54.)

Response:

MDEF agrees that on June 19, 2007 Novi List held a supervisory board meeting and that the meeting was attended by Mr. Gora.

77.	During the June 19, 2007 meeting of Novi list's supervisory board, it was announced that the next meeting of the supervisory board would take place on August 3, 2007. (Mance Decl. ¶ 54.)

Response:

MDEF disputes paragraph 77 but agrees that during the June 19 meeting the date of August 3, 2007 was discussed as a potential date for the next supervisory board meeting but that the meeting was not officially set during the June 19 meeting. (Mandel Reply Decl. at ¶ 40.)

78.	During the June 19, 2007 meeting of Novi list's supervisory board, the attendees, including Mr. Gora, discussed an agenda for the upcoming August 3 meeting. (Mance Decl. ¶ 54.)

Response:

MDEF disputes paragraph 78 and states that Novi List failed to provided written notice regarding the August 3, 2007 General Assembly meeting as required. (Mandel Reply Decl. at ¶ 40-44.)

79.	Written notice of the shareholders' meeting scheduled for August 3, 2007 was sent simultaneously to all of Novi list's shareholders, including MDEF, on July 11 and 12, 2007 by courier. (Mance Decl. ¶ 55.) Provision of notice in this manner was and is Novi list's customary practice and procedure, to which MDEF had never objected. (Mance Decl. ¶ 55.)

Response:

MDEF agrees that it received written notice following the July 11 and July 12 notices that were sent by Novi List but MDEF states that those notices were sent only after MDEF notified Novi List that it had failed to comply with the notice provisions in the Share

13

Subscription Agreement. The July 2007 written notices did not discharge Novi List's obligations under the Share Subscription Agreement. (Mandel Reply Decl. at ¶¶ 40-44.)

80. Under Croatian law it would be illegal to favor any one shareholder over other shareholders by providing to it advance notice of a shareholders' meeting or notice in a manner that was substantively different from the manner in which notice was provided to the other shareholders. (Dolički Decl. ¶ 27.)

**Response:**

MDEF disagrees with the suggestion that the notice requirement contained in the Share Subscription Agreement required differential shareholder treatment. Novi List could have fulfilled its obligation under that agreement by simultaneously mailing notices to all shareholders. (Mandel Reply Decl. at ¶ 40-44; MDEF Reply Brief at 10.)

81. Shortly after it learned that MDEF objected to the manner in which it was given notice of the scheduled August 3, 2007 shareholders' meeting, Novi list offered to and did, in fact, agree to postpone the August 3, 2007 shareholders' meeting; consequently, MDEF could not have been deprived of any substantive right or damaged in any way. (*See* Mance Decl. ¶ 56.)

**Response:**

MDEF agrees that the August 3, 2007 shareholders' meeting was postponed.

Dated: New York, NY
       October 25, 2007

MORRISON & FOERSTER LLP

By: _____
James E. Hough (JH 1066)
David S. Brown (DB 5276)

Attorneys for Plaintiff
Media Development Equity Fund LLC
1290 Avenue of the Americas
New York, NY 10104-0050
212.468.8000

ny-781771